BEFORE THE
UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GREENFIRST FOREST PRODUCTS INC. AND GREENFIRST FOREST PRODUCTS (QC) INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*. | Court No. 22-00097 |

## COMPLAINT

Pursuant to Rule 3(a)(3) of the Rules of the United States Court of International Trade, Plaintiff, GreenFirst Forest Products Inc. ("GFFP") and GreenFirst Forest Products (QC) Inc. ("GFFP (QC)") (collectively "GreenFirst" or "Plaintiff"), by and through its attorneys, alleges herein as follows.

## NATURE OF THE ACTION

1. This action contests the Department of Commerce's (the "Department") unlawful refusal to initiate a changed circumstances review ("CCR") to determine whether GreenFirst Forest Products (QC) Inc. is the successor-in-interest to Rayonier A.M. Canada G.P. ("RYAM"). Letter from the Department, "Request for Reconsideration of Decision Not to Initiate" dated Feb. 24, 2022; Letter from the Department, "Countervailing Duty Changed Circumstances Review Request" dated Nov. 16, 2021 (included at **Attachment A**).

2. Prior to August 2021, GreenFirst did not produce lumber, whereas RYAM, a global forest products company, owned and operated a Canadian lumber business. As a

Canadian producer of lumber, RYAM was subject to the *Softwood Lumber from Canada* countervailing duty ("CVD") order. RYAM was never individually examined by the Department. It was not selected as a respondent in the original investigation or in the first, second, or third administrative reviews of that order. RYAM filed timely review requests for each of these administrative reviews and was assigned the non-selected companies rate — a rate calculated based on the weighted average of the individually examined companies' rates — along with hundreds of other non-selected Canadian lumber producers/exporters.

3. In August 2021, GreenFirst acquired the entirety of RYAM's lumber and newsprint operations — *i.e.*, 6 lumber mills, 1 newsprint mill, all its inventory, including consignment inventory at customer locations, over 1,400 employees, all supplier and vendor relationships, and all customers. In effect, the acquisition shifted what was the entirety of RYAM's lumber business to GreenFirst. Essentially, if on the day before the acquisition a customer purchased lumber, "RYAM" would have issued the invoice but if it was purchased the day after the acquisition, "GreenFirst" would issue the invoice.

4. GreenFirst requested that the Department conduct a CCR to determine that GreenFirst is the successor-in-interest to RYAM. This is necessary under the Department's practice so that a business that has only changed its ownership or name can receive the same duty rate as its previous incarnation. Otherwise, the successor entity is assigned the "all-others" rate from the original investigation. In this case, the same lumber that had been subject to RYAM's 6.32% non-selected company rate is now subject to GreenFirst's 14.19% "all-others" rate.

5. The Department declined to initiate and conduct a changed circumstances review. Instead, the Department cited its "significant change" practice as justification for not initiating a

CCR by presuming that there had been a significant change "that could have affected the nature and extent of respondent's level of subsidization." This blanket bar to initiation presumes that the cash deposit rate at issue was calculated based on facts specific to the former producer/exporter. The Department's decision ignored that RYAM's rate was *not* calculated based on facts specific to it.

6. As a result of the Department's refusal to initiate the CCR, GreenFirst — despite owning and operating the formerly RYAM lumber production business — will be unable to obtain a successor-in-interest determination from the Department and must pay the all-others rate, a rate more than double that of the rate that had applied to RYAM and hundreds of other non-selected companies. By unreasonably relying upon an inapplicable practice, the Department created an insurmountable bar for obtaining a successor-in-interest determination and has caused GreenFirst to suffer millions of dollars of injury.

## JURISDICTION

7. This Court has jurisdiction over this proceeding pursuant to 28 USC § 1581(i)(1)(B) and (D). Specifically, the Department's refusal to initiate the CCR was made under section 751 of the Tariff Act of 1930, as amended (19 USC § 1675(b)) but is not enumerated as a determination under 19 USC § 1516a(a). Additionally, the basis of GreenFirst's CCR request, *i.e.*, GreenFirst's successor-in-interest claim, will not be subject to the Department's review in any other proceeding. Therefore, jurisdiction is not, and could not be, available under any other provision of 28 USC § 1581.

8. Alternatively, if jurisdiction is available under a different provision of 28 USC § 1581, the Court has jurisdiction over this action under 28 USC § 1581(i)(1)(B) and (D) because the remedy provided under such a provision would be manifestly inadequate. Specifically, even

if GreenFirst's successor-in-interest claim could be subject to the Department's review in a future proceeding, such action by the Department would not occur for many years and would require GreenFirst to post countervailing duty deposits at a rate significantly higher than the rate correctly applicable to RYAM and the other non-selected companies, *i.e.*, the 14.19% "all-others" rate instead of the 6.32% rate.

## TIMELINESS OF ACTION

9. A plaintiff must commence an action under 28 USC § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 USC § 2636(i). The instant action contests the Department's denial of Plaintiff's requests to initiate a changed circumstance review and find it the successor-in-interest to RYAM. The Department issued its rejection memorandum on November 16, 2021 and issued its refusal to reconsider that determination on February 24, 2022. This Summons and Complaint, therefore, are timely filed within the time specified in 28 USC § 2636(i), having been filed within two years after GreenFirst's cause of action accrued.

## STANDING

10. Plaintiff has standing because it is "adversely affected or aggrieved by agency action within the meaning of" the Administrative Procedures Act ("APA"). 5 USC § 702; *see also* 28 USC § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). The Department's wrongful denial of Plaintiff's request to initiate a changed circumstance review adversely affected and aggrieved Plaintiff by prohibiting a successor-in-interest determination and forcing Plaintiff to pay duty deposits at the 14.19% all-others rate instead of RYAM's 6.32% rate.

4

## PROCEDURAL HISTORY

**A. RYAM's Status in the Proceedings and GreenFirst's Lumber Acquisition**

11. On January 3, 2018, the Department issued a CVD order on *Certain Softwood Lumber Products from Canada* ("*Softwood Lumber from Canada*"). *Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347 (Jan. 3, 2018). Commerce has since initiated four administrative reviews of the CVD order. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 13,252 (March 9, 2022); *Certain Softwood Lumber Products from Canada: Preliminary Results, Partial Rescission, and Preliminary Intent To Rescind, in Part, the Countervailing Duty Administrative Review*, 2020, 87 Fed. Reg. 6,500 (Feb. 4, 2022) ("*Softwood Lumber from Canada 2020 Prelim*"); *Certain Softwood Lumber Products from Canada: Notice of Amended Final Results of the Countervailing Duty Administrative Review, 2019*, 87 Fed. Reg. 1,114 (Jan. 10, 2022); *Certain Softwood Lumber Products From Canada: Final Results of the Countervailing Duty Administrative Review, 2017-2018*, 85 Fed. Reg. 77,163 (Dec. 1, 2020). However, because Commerce only individually examines the largest two or three companies from the hundreds of Canadian lumber producers, and RYAM was never among the largest Canadian lumber producers, RYAM has only ever been assigned the "non-selected" rate. *Id*. The non-selected rate has been based on a weighted average of the subsidy rates calculated for the individually examined companies, which most recently was 6.32%. *Certain Softwood Lumber Products from Canada: Notice of Amended Final Results of the Countervailing Duty Administrative Review, 2019*, 87 Fed. Reg. 1,114 (Jan. 10, 2022).

12. RYAM owned and operated six lumber mills until August 28, 2021, when GFFP (QC) — a previously non-producing entity — acquired 100 percent ownership of RYAM's six lumber mills and assets and began employing RYAM's employees and management team.

5

## B. GreenFirst's Request for a CCR and the Department's Refusal to Initiate

13. In light of the transfer of ownership and operation of RYAM's six lumber mills to GFFP (QC), and consistent with routine Department practice, on October 4, 2021, GreenFirst requested that the Department initiate and conduct a changed circumstances review pursuant to 19 USC § 1675(b) to determine that GFFP (QC) is the successor-in-interest to RYAM for the purpose of assigning CVD cash deposit rates. In its request GreenFirst explained that the newly named company was essentially the same as the previous company. Specifically, GreenFirst provided a full narrative response accompanied by supporting documentation concerning (1) the similarity of management and ownership between RYAM and GFFP (QC); (2) the continuity of production facilities as between RYAM and GFFP (QC); (3) that GFFP (QC) maintains the same supplier relationships as RYAM; and (4) that GFFP (QC) maintains the same customer base as RYAM. In addition, GreenFirst provided translated financial statements of both GreenFirst and RYAM. GreenFirst further reported that under RYAM, subject merchandise was entering the United States under the then 7.42 percent *ad valorem* non-selected companies rate (*Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 76,519 (Nov. 30, 2020)) but since GreenFirst acquired RYAM's lumber business, it has been shipping subject merchandise to the United States under the 14.19 percent *ad valorem* all-others cash deposit rate.

14. On November 16, 2021, the Department refused to initiate a changed circumstance review. Citing a practice it created in *Pasta from Turkey*, the Department dismissed GreenFirst's request on the grounds that a significant change had taken place, that it would be "inappropriate to affirm a cash deposit rate that had been calculated during a pervious time-period based on a significantly different factual pattern," and that GFFP (QC)'s cash

deposit rate "can only be decided based on a full analysis of a complete record compiled in the course of an administrative review."

15.  On January 18, 2022, GreenFirst filed a request that the Department reconsider its request to initiate and conduct a changed circumstances review of its acquisition of RYAM's lumber business.  GreenFirst explained to the Department that its *Pasta from Turkey* practice is premised upon a company having been individually examined.  GreenFirst also reminded the Department that RYAM has never been individually examined, that the cash deposit rate at issue is the non-selected companies rate (calculated based on a weighted average of the selected companies rate) and that the Department would not conduct the successor-in-interest analysis in a future administrative review, nor would it calculate a level of subsidization based on GreenFirst's own information.  Thus, GreenFirst demonstrated that the practice the Department relied upon does not apply to GreenFirst's "fact pattern."

16.  GreenFirst also noted that the Department's denial failed to identify the "significant change" that could impact the level of subsidization it concluded had occurred.  Rather, the Department's letter simply enumerates "examples of changes that we normally consider to be significant" and concludes that "GFFP QC's purchase of the newsprint mill and six sawmills from RYAM constitutes a 'significant' change under the CCR practice set forth in *Pasta from Turkey*."

17.  Finally, GreenFirst noted that even under the *Pasta from Turkey* practice, the Department was compelled to initiate a changed circumstance review because GreenFirst's changed circumstances review request included (1) "a full narrative with supporting documentation;" (2) "translated financial statements;" and (3) "what exporter/producer name and CVD cash deposit rate the subject merchandise is currently entering into the United States."

7

18. On February 24, 2022, the Department denied GreenFirst's request to reconsider. Without addressing the incongruity between the facts at issue and the practice applied, the Department simply responded that "nowhere in Commerce's regulations or in *Pasta from Turkey* (which established additional guidance for Commerce to consider when conducting CVD CCRs) does it indicate that Commerce should consider the likelihood of a requestor being selected for individual examination in an administrative review when determining whether to initiate a CVD CCR.  Therefore, we do not find the GreenFirst Companies' comments on Commerce's respondent selection process to be relevant to the issue of whether to initiate a CVD CCR."  The Department instead concluded that "the CCR Request failed to address how it met the critical 'significant change' standard set forth in *Pasta from Turkey*.  Therefore, we find unavailing the GreenFirst Companies' claim that the information in the CCR Request should have compelled Commerce to initiate a CCR."

**C. Effect of the Department's Unlawful Denial to Initiate a CCR**

19. Because the Department denied GreenFirst's requests to initiate and conduct a changed circumstances review, the Department will never perform a successor-in-interest analysis of GreenFirst and all of GreenFirst's entries of subject merchandise are currently subject to the 14.19 percent *ad valorem* all-others rate, a rate more than double the current 6.32 percent *ad valorem* non-selected companies rate. *Certain Softwood Lumber Products from Canada: Notice of Amended Final Results of the Countervailing Duty Administrative Review, 2019*, 87 Fed. Reg. 1,114 (Jan. 10, 2022).  This difference amounts to an injury of millions of dollars. Unless found to be the successor-in-interest to RYAM prior to the final results of the Department's recently initiated 2021 administrative review, GreenFirst will have had to allocate approximately three years of cash deposits at a 14.19 percent *ad valorem* rate, a significant strain on the company.

## CLAIMS

### Count 1

20. Paragraphs 1 through 19 of this Complaint are incorporated herein by reference.

21. The Department refused to initiate a CCR based solely upon its *Pasta from Turkey* practice. The purpose of this practice is to prevent a rate of subsidization that was calculated based upon the unique facts of one company from being transferred to a new company without first calculating the subsidies provided to the new company. The practice assumes the Department will individually examine the new company's subsidy status and whether there have been significant changes to a company's operations during a future administrative review.

22. However, the purpose of the *Pasta from Turkey* practice does not exist for GreenFirst because RYAM's rate was not calculated based upon the facts of its subsidization. Rather, RYAM has never been individually examined and it has only ever been assigned the non-selected rate. Thus, the concern that forms the foundation of the *Pasta from Turkey* practice, *i.e.*, that a rate based upon a company's unique facts should not be transferred, does not apply.

23. Additionally, the Department will not analyze the level of subsidization for GreenFirst or whether GreenFirst's acquisition of RYAM changed the company's operations significantly in a future administrative review because GreenFirst will never be selected as a mandatory respondent for individual examination based on the Department's current practice. Thus, the core assumption of the *Pasta from Turkey* practice, *i.e.*, that the Department will conduct an individual examination of the new company during a future administrative review does not apply.

24. Therefore, the Department's refusal to initiate the CCR was arbitrary and capricious because it was based upon an inapplicable practice that makes it impossible for GreenFirst to ever obtain a successor-in-interest determination from the Department.

### Count 2

25. Paragraphs 1 through 24 of this Complaint are incorporated herein by reference.

26. Even if the Department correctly applied its policy to the facts at issue, the Department contradicted Congress' directive in 19 USC § 1675(b)(1) that the Department "shall" conduct a CCR where it receives information "which shows changed circumstances sufficient to warrant a review." GreenFirst provided the documentation the Department enumerated in the *Pasta from Turkey* practice as being "sufficient" for initiating a CCR. Despite satisfying the required criteria, the Department refused to initiate a CCR.

27. Therefore, the Department's refusal to initiate the CCR was arbitrary and capricious because it ignores the requirements of the statute and its practice.

### **REQUEST FOR JUDGEMENT AND RELIEF**

WHEREFORE, GreenFirst respectfully request that this Court:

28. Enter judgement against defendant, the United States;

29. Declare that the Department erred when it refused to initiate a CCR;

30. ORDER the Department to initiate the requested CCR; and

31. Grant such further relief as this Court deems just and proper.

                Respectfully submitted,

                /s/ Yohai Baisburd

                Yohai Baisburd
                Jonathan Zielinski
                Sarah E. Shulman
                **CASSIDY LEVY KENT (USA) LLP**
                900 19th Street, NW, Suite 400
                Washington, D.C. 20006
                Phone:  (202) 567-2300
                Fax:  (202) 567-2301
                Email: YBaisburd@cassidylevy.com

                *Counsel to GreenFirst Forest Products Inc.*
                *and GreenFirst Forest Products (QC) Inc.*

Dated:  March 25, 2022

# Attachment A

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

C-122-858<br>
Changed Circumstances Review<br>
GreenFirst<br>
<strong>Public Document</strong><br>
Office III, E&C

February 24, 2022

Yohai Baisburd
Cassidy Levy Kent (USA) LLP
900 19th Street, N.W.
Fourth Floor
Washington, D.C. 20006

**RE:**     Countervailing Duty (CVD) Changed Circumstances Review (CCR):  Softwood Lumber from Canada

**SUBJECT:**     Request for Reconsideration of Decision Not to Initiate

Dear Mr. Baisburd:

I am writing in reply to your January 18, 2022, submission[1] on behalf of GreenFirst Forest Products Inc. (GFFP) and GreenFirst Forest Products (QC) Inc. (GFFP QC) (collectively, the GreenFirst Companies) in which you request that the Department of Commerce (Commerce) reconsider its November 16, 2021, decision[2] not to initiate a CVD CCR to examine whether GFFP QC is the successor-in-interest (SII) to Rayonier A.M. Canada, Inc. (RYAM).

In your Request for Reconsideration, you argue that Commerce should initiate on the CCR Request because GFFP QC's relatively small size makes it unlikely that Commerce will select it for individual examination as part of an administrative review.  However, nowhere in Commerce's regulations or in *Pasta from Turkey*[3] (which established additional guidance for Commerce to consider when conducting CVD CCRs) does it indicate that Commerce should consider the likelihood of a requestor being selected for individual examination in an administrative review when determining whether to initiate a CVD CCR.  Therefore, we do not find the GreenFirst Companies' comments on Commerce's respondent selection process to be relevant to the issue of whether to initiate a CVD CCR.

---

[1] *See* GreenFirst Companies' Letter, "Softwood Lumber from Canada:  GreenFirst Forest Products and Rayonier A.M. Request for Reconsideration," dated January 18, 2022 (Request for Reconsideration).
[2] *See* Memorandum, "Certain Softwood Lumber Products from Canada:  Countervailing Duty Changed Circumstances Review Request," dated November 16, 2021 (CCR Decision Letter); *see also* GreenFirst Companies' Letter, "GreenFirst Forest Products and RYAM, "GreenFirst Forest Products and Rayonier A.M. Request for Changed Circumstances Review," dated October 4, 2021 (CCR Request).
[3] *See Certain Pasta from Turkey:  Preliminary Results of Countervailing Duty Changed Circumstances Review*, 74 FR 47225, 47227-47228 (September 15, 2009) (*Preliminary Results of Pasta from Turkey*); unchanged in *Certain Pasta from Turkey:  Final Results of Countervailing Duty Changed Circumstances Review*, 74 FR 54022 (October 21, 2009) (*Pasta from Turkey*) and accompanying Issues and Decision Memorandum (IDM).

We also disagree with the GreenFirst Companies' claim that the CCR Decision Letter, ". . . fails to provide any reasoning for its finding that GFFP QC's acquisition of RYAM's lumber assets constitutes a significant change" that could have affected the nature and extent of the respondent's level of subsidization.[4] *Pasta from Turkey* makes clear that Commerce will initiate and make an affirmative CVD successorship finding (*i.e.*, that the respondent company is the same subsidized entity for CVD cash deposit purposes as the predecessor company) only where there is no evidence of a "significant change" that could have affected the nature and extent of respondent's level of subsidization.[5] *Pasta from Turkey* specifically includes purchases or sales of significant productive facilities during the relevant period of the CVD CCR at issue that could have affected the nature and extent of the countervailable subsidies attributable to the respondent as being among the examples of a "significant change" that would preclude Commerce from conducting a CVD CCR.[6] The CCR Request indicates that GFFP QC acquired six lumber mills and one newsprint mill from RYAM.[7] We find the mills GFFP QC acquired from RYAM are precisely the "significant productive assets" to which *Pasta from Turkey* refers when describing the events that constitute a "significant change."

We also disagree with the GreenFirst Companies' argument that because Commerce assigned RYAM a non-selected cash deposit rate (as opposed to an individually calculated cash deposit rate) Commerce wrongly concluded that it would be inappropriate to "affirm a cash deposit rate that had been calculated during a previous time-period based on a significantly different factual pattern."[8] *Pasta from Turkey* makes clear that in determining *whether* to conduct a CVD CCR Commerce looks to whether a "significant change" occurred and does not examine *how* a "significant change" impacted the subsidization levels of the predecessor or successor firms at issue:

> Our analysis will focus on whether a significant change occurred in the company's operations, ownership, corporate or legal structure and not whether those changes, in fact, ultimately did affect the respondent's subsidization or by how much. This latter question can only be decided based on a full analysis of a complete record compiled in the course of an administrative review and not on the limited facts or within the abbreviated time frame of a CVD CCR.[9]

As noted above, the CCR Request indicates a "significant change" occurred in the form of GFFP QC's acquisition of six lumber mills and one pulp mill from RYAM.[10] Thus, the fact that Commerce has not individually examined RYAM or GFFP QC in any prior administrative review is not relevant to Commerce's decision as to whether to initiate a CVD CCR.

We further disagree with the GreenFirst Companies' claim that Commerce was obligated to initiate a CCR based on the information in the CCR Request. It is true that the CCR Request included a narrative discussion explaining the changes to the operations and ownership of

---

[4] *See* Request for Reconsideration at 4 (citing CCR Decision Letter at 2).
[5] *See Pasta from Turkey* IDM at 2.
[6] *See Preliminary Results of Pasta from Turkey*, 74 FR at 47227-47228, unchanged in *Pasta from Turkey*.
[7] *See* CCR Request at 4.
[8] *See* Request for Reconsideration at 4 (citing CCR Decision Letter at 2).
[9] *See Preliminary Results of Pasta from Turkey*, 74 FR at 47228; unchanged in *Pasta from Turkey*.
[10] *See* CCR Request at 4.

RYAM and GFFP QC, financial statements, and other supporting documentation.[11]  However, the CCR Request failed to address how it met the critical "significant change" standard set forth in *Pasta from Turkey*.  Therefore, we find unavailing the GreenFirst Companies' claim that the information in the CCR Request should have compelled Commerce to initiate a CCR.

Accordingly, Commerce will not reconsider its finding in the CCR Decision Letter, and therefore, we continue to determine not to initiate on the CCR Request submitted by the GreenFirst Companies.

Should you need further assistance or information, please contact Eric B. Greynolds (Eric.Greynolds@trade.gov).

Sincerely,

*{signature: Eric Begnal}*

Eric Begnal
Director
AD/CVD Operations, Office III

---

[11] *See* CCR Request at 3-8.

C-122-858<br>
Changed Circumstances Review<br>
CCR – GreenFirst<br>
**Public Document**<br>
E&C OIII: EBG

November 16, 2021

GreenFirst Forest Products Inc.
 and GreenFirst Forest Products (QC) Inc.
 c/o Yahai Baisburd
Cassidy Levy Kent (USA) LLP
900 19th Street N.W.
Fourth Floor
Washington, DC 2006

    RE:    Certain Softwood Lumber Products from Canada:  Countervailing Duty Changed Circumstances Review Request

Dear Mr. Baisburd:

I am writing in response to your October 4, 2021, Changed Circumstances Review (CCR) Request submitted on behalf of GreenFirst Forest Products Inc. (GFFP) and GreenFirst Forest Products (QC) Inc. (GFFP QC) (collectively, the GFFP Companies) to the Department of Commerce (Commerce) in connection with the above-referenced countervailing duty (CVD) order.[1]  In the CCR Request, you ask Commerce to initiate a CCR, pursuant to section 751(b)(1) of the Tariff Act of 1930, as amended (the Act), to determine that GFFP QC is the successor-in-interest (SII) to Rayonier A.M. Canada, Inc. (RYAM), and thus, that the 7.42 percent CVD cash deposit rate currently in effect for RYAM under the CVD order[2] should be applied to entries from GreenFirst Forest Products (QC).[3]  For the reasons discussed below, Commerce declines to initiate a CCR based on your request.

In the CCR Request, you provide the following background:  1) On March 16, 2021, a firm named 9437-6001 Quebec Inc. was established; 2) On April 10, 2021, 9437-6001 Quebec Inc. purchased six lumber mills and one newsprint mill from RYAM for USD 140 million along with the value of on-hand inventory; 3) Under the sales agreement, 9437-6001 Quebec Inc. paid 85 percent of the purchase price to RYAM in cash and the remainder in common shares of GFFP, which is the parent company of GFFP QC; 4) On June 28, 2021, 9437-6001 Quebec Inc. changed its name to GFFP QC; and 5) On August 28, 2021, GFFP QC formally completed the transaction and acquired full ownership of the mills it purchased from RYAM.[4]

---

[1] *See* GFFP Companies' Letter, "Softwood Lumber from Canada:  GreenFirst Forest Products and Rayonier A.M. Request for Changed Circumstances Review," dated October 4, 2021 (CCR Request).
[2] *See Certain Softwood Lumber Products From Canada:  Final Results of the Countervailing Duty Administrative Review, 2017–2018*, 85 FR 77163 at 77164, 77167 (December 1, 2020) (*Lumber V AR1 Final*).
[3] *See* CCR Request at 1.
[4] *See* CCR Request at 4-5.



Thus, according to the CCR Request, GFFP QC's acquisition involved the purchase of assets, as opposed to the purchase of a firm, and that RYAM, for which GFFP QC claims to be the SII, continues as a going concern that now partially owns GFFP, the parent of GFFP QC.

The purpose of a CVD CCR is limited in comparison to a CVD administrative review.  Major changes to a company's ownership structure may affect the nature and extent of the countervailable subsidies attributable to the newly-formed company.  Thus, as a general rule in a CVD CCR, Commerce will initiate and make an affirmative CVD successorship finding (*i.e.*, that the respondent company is the same subsidized entity for CVD cash deposit purposes as the predecessor company) only where there is no evidence of a significant change that could have affected the nature and extent of respondent's level of subsidization.[5]  Examples of changes that we normally consider to be significant and would affect the nature and extent of the requesting party's subsidization are:

> (1) ownership, other than regular buying and selling of publicly owned shares held by a broad array of investors; (2) corporate mergers and acquisitions involving the respondent's consolidated or cross-owned corporate family and outside companies; or (3) purchases or sales of significant productive facilities during the relevant period of the CVD CCR at issue (*i.e.*, the "look-back window") that could have affected the nature and extent of the countervailable subsidies attributable to the respondent.[6]

Therefore, Commerce finds that GFFP QC's purchase of the newsprint mill and six sawmills from RYAM constitutes a "significant" change under the CCR practice set forth in *Pasta from Turkey*.[7]  When such a "significant" change is present, Commerce finds it inappropriate to affirm a cash deposit rate that had been calculated during a previous time-period based on a significantly different factual pattern.  As explained in *Pasta from Turkey*, a CCR is not the appropriate proceeding in which to examine firms that have experienced a "significant" change:

> Our analysis will focus on whether a significant change occurred in the company's operations, ownership, corporate or legal structure and not whether those changes, in fact, ultimately did affect the respondent's subsidization or by how much.  This latter question can only be decided based on a full analysis of a complete record compiled in the course of an administrative review and not on the limited facts or within the abbreviated time frame of a CVD CCR.[8]

We therefore determine to not initiate on the CCR Request submitted by the GFFP Companies.

---

[5] *See Certain Pasta from Turkey:  Preliminary Results of Countervailing Duty Changed Circumstances Review*, 74 FR 47225, 47227-47228 (September 15, 2009) (*Preliminary Results of Pasta from Turkey*); unchanged in *Certain Pasta from Turkey: Final Results of Countervailing Duty Changed Circumstances Review*, 74 FR 54022, (October 21, 2009) (*Pasta from Turkey*), and accompanying Issues and Decision Memorandum.  The "look back window" is defined as the period spanning from the present (*i.e.*, the time the CCR request was submitted), back to the end of the period of investigation or, if there have been intervening opportunities to request an administrative review, the end of the period of review associated with the most recent opportunity to request an administrative review.
[6] *See Preliminary Results of Pasta from Turkey*, 74 FR at 47227-47228, unchanged in *Pasta from Turkey*.
[7] *Id*.
[8] *Id*., 74 FR at 47228.

Our decision to decline to initiate on the GFFP Companies request for a CVD CCR is independent from the GFFP Companies' concurrent antidumping duty (AD) CCR request.  There are differing standards and principles between CVD and AD CCR proceedings.  As we noted in *Pasta from Turkey*, "to the extent that dumping is a matter of price discrimination and the AD CCR analysis is concerned with the pricing behavior of a successor company . . . the limited purpose of a CVD CCR is generally to determine whether a company is essentially the same subsidized entity as the alleged predecessor company for cash deposit purposes."[9]  Thus, what may constitute sufficient grounds for initiating an AD CCR may not be sufficient grounds for the initiation of a CVD CCR and vice versa, and the findings in an AD CCR may be different from, and irrelevant to, the findings in a CVD CCR.

Should you need further assistance or information with regard to this CCR, please contact Eric B. Greynolds (Eric.Greynolds@trade.gov).

Sincerely,

*Erin Begnal*

Erin Begnal
Office Director
AD/CVD Operations, Office III

---

[9] *Id.*, 74 FR at 47227.