**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

_____
                                                      )
GREENFIRST FOREST PRODUCTS INC. AND                   )
GREENFIRST FOREST PRODUCTS (QC) INC.,                 )
                                                      )
                                    *Plaintiff*,      )
                                                      )
                           v.                         )          Court No.  22-00097
                                                      )
UNITED STATES,                                        )
                                                      )
                                    *Defendant*.      )
_____      )


## <u>ORDER</u>

Upon consideration of the Rule 56.1 Motion for Judgment on the Agency Record filed by

GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc. (collectively,

"GreenFirst"), plaintiffs in this action and all other papers and proceedings herein, it is hereby:

**Ordered**, that GreenFirst's motion is GRANTED, and it is further

**Ordered**, that this action is remanded to the Department for the agency to reconsider its

refusal to initiate a changed circumstance review, in accordance with this Court's opinion.

**So Ordered**.


Dated: _____                    _____
        New York, New York                              Claire R. Kelly, Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

_____
                                                              )
GREENFIRST FOREST PRODUCTS INC. AND              )
GREENFIRST FOREST PRODUCTS (QC) INC.,            )
                                                              )
                              *Plaintiff*,                    )
                                                              )
                v.                                            )          Court No.  22-00097
                                                              )
UNITED STATES,                                                )
                                                              )
                              *Defendant*.                    )
_____)

## PLAINTIFFS' MOTION FOR JUDGEMENT ON THE AGENCY RECORD

Pursuant to Rule 56.1 of the Rules of the United States Court of International Trade,

GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc. (collectively,

"GreenFirst"), Plaintiffs in this action respectfully move for judgment on the agency record with

respect to U.S. Department of Commerce's (the "Department") refusal to initiate a changed

circumstances review in response to the request filed by GreenFirst on October 4, 2021.  The

Department first denied GreenFirst's request to initiate a changed circumstances review on

November 16, 2021.  The Department then denied GreenFirst's request to reconsider on

February 24, 2022.

Plaintiffs respectfully move, for the reasons explained in the brief accompanying this

motion, that this Court find the Department's refusal to initiate a changed circumstance review

was arbitrary and capricious.  Plaintiffs further move that the Court direct the Department to

initiate a changed circumstances review on GreenFirst's request consistent with the Court's final

opinion.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Jonathan Zielinski
Sarah E. Shulman

*Counsel to GreenFirst Forest Products Inc.*
*and GreenFirst Forest Products (QC) Inc.*

Date:   July 29, 2022

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |  |
|---|---|---|
| GREENFIRST FOREST PRODUCTS INC. AND GREENFIRST FOREST PRODUCTS (QC) INC., | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Court No.  22-00097 |
| UNITED STATES, | ) ) | |
| *Defendant*. | ) ) ) | |

## <u>MEMORANDUM OF POINTS OF LAW AND FACT IN SUPPORT OF THE RULE 56.1 MOTION FOR JUDGEMENT ON THE AGENCY RECORD</u>

Yohai Baisburd
Jonathan Zielinski
Sarah E. Shulman
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300
(202) 567-2301
*YBaisburd@cassidylevy.com*

*Counsel to GreenFirst Forest Products Inc. and
GreenFirst Forest Products (QC) Inc.*

Date:  July 29, 2022

# Table of Contents

Page

I. Statement Pursuant to Rule 56.1 ................................................................ 1

    A. Administrative Determination Under Review ........................................ 1

    B. Issue Presented for Review ................................................................. 1

II. Statement of the Facts ............................................................................... 1

III. Summary of the Argument ........................................................................ 3

IV. Argument ................................................................................................... 4

    A. Standard of Review ............................................................................. 4

    B. The Department's Refusal to Initiate the Requested Changed Circumstances Review was Arbitrary and Capricious Because it was Based on a Standard that Does not Apply ................................................................................... 4

        1. The first *Pasta from Turkey* criterion does not exist because GreenFirst's predecessor's rate was not calculated based upon company specific facts............ 6

        2. The second *Pasta from Turkey* criterion does not exist because the Department will not calculate an individual subsidy rate for GreenFirst in a subsequent administrative review ................................................... 8

    C. GreenFirst will Continue to Suffer Real Harm as a Result of the Department's Arbitrary and Capricious Action ........................................................ 10

V. Conclusion ................................................................................................. 12

## <u>Table of Authorities</u>

<u>Statutes</u>                                                                      <u>Page(s)</u>

5 USC § 706 ............................................................................................................4

19 USC § 1675(b) ...................................................................................................5

19 USC § 1671d(c)(5) .............................................................................................1

28 USC § 1581(i) ....................................................................................................4

28 USC § 2640(e) ...................................................................................................4


<u>Court Decisions</u>

*Marsan Gida Sanayi Ve Ticaret A.S. v. United States,* 35 C.I.T. 222
(Ct. Int'l Trade 2011) .........................................................................................7, 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29
(1983) .....................................................................................................................4

*Trs. in Bankruptcy of N. Am. Rubber Thread Co. v. United States,* 464 F.
Supp. 2d 1350 (Ct. Int'l Trade 2006) ....................................................................4

*Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States,* 593 F.3d 1346
(Fed. Cir. 2010) ......................................................................................................4

<u>Administrative Determinations</u>

*Aluminum Extrusions from the People's Republic of China,* 81 Fed. Reg. 38,664 (Jun.
14, 2016) (prelim. results).....................................................................................11

*Brass Sheet and Strip from Canada; Final Results of Antidumping Duty Administrative
Review,* 57 Fed. Reg. 20,460 (May 13, 1992) .......................................................5

*Carbon and Alloy Steel Wire Rod from the Republic of Korea: Preliminary Affirmative
Determination of Sales at Less Than Fair Value, and Preliminary Negative
Determination of Critical Circumstances,* 82 Fed. Reg. 50,386 (Oct. 31, 2017).........11

*Certain Pasta from Turkey: Preliminary Results of Countervailing Duty Changed
Circumstances Review,* 74 Fed. Reg. 47,225 (Sept. 15, 2009)................................5, 6, 8

*Certain Pasta from Turkey: Final Results of Countervailing Duty Changed
Circumstances Review,* 74 Fed. Reg. 54,022 (Oct. 21, 2009) ...............................5

*Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347 (Jan. 3, 2018)....................................................................................................................1, 8

*Certain Softwood Lumber Products From Canada: Final Results of the Countervailing Duty Administrative Review, 2017-2018*, 85 Fed. Reg. 77,163 (Dec. 1, 2020) .........................................................................................................................7

*Certain Softwood Lumber Products from Canada: Notice of Amended Final Results of the Countervailing Duty Administrative Review, 2019*, 87 Fed. Reg. 1,114 (Jan. 10, 2022) ..............................................................................................................7, 8, 12

*Certain Softwood Lumber Products from Canada: Preliminary Results, Partial Rescission, and Preliminary Intent To Rescind, in Part, the Countervailing Duty Administrative Review, 2020*, 87 Fed. Reg. 6,500 (Feb. 4, 2022) ...................................7

*Diamond Sawblades and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2009-2010*, 78 Fed. Reg. 11,143 (Jan. 15, 2013)...................................................................................................9, 10

*Hardwood and Decorative Plywood from the People's Republic of China*, 78 Fed. Reg. 58,273 (Sep. 23, 2013) (fin. det.) .........................................................................11

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Turkey: Notice of Initiation and Preliminary Results of Countervailing Duty Changed Circumstances Review*, 87 Fed. Reg. 10,772 (Feb. 25, 2022) ...........................5

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results of the 2008-2009 Antidumping Duty Administrative Review*, 76 Fed. Reg. 3,086 (Jan. 19, 2011) .......................................10

## I.   Statement Pursuant to Rule 56.1

### A.   Administrative Determination Under Review

GreenFirst Forest Products Inc. ("GFFP") and GreenFirst Forest Products (QC) Inc. ("GFFP (QC)") (collectively "GreenFirst" or "Plaintiffs") challenge the decision of the US Department of Commerce (the "Department") to reject GreenFirst's request to conduct a changed circumstance review ("CCR") of the countervailing duty order on *Softwood Lumber from Canada*.  The Department's determination was made in a letter dated November 16, 2021. P.R. 13 ("Decision Not To Initiate").  The Department rejected GreenFirst's request for reconsideration in a letter dated February 24, 2022.  P.R. 19 ("Refusal to Reconsider").

### B.   Issue Presented for Review

Whether the Department's refusal to initiate a successor-in-interest changed circumstances review was arbitrary and capricious when it was dependent upon a practice that does not apply to the facts of GreenFirst's request.

## II.   Statement of the Facts

In 2018, the Department issued a countervailing duty order on softwood lumber from Canada. *Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347 (Jan. 3, 2018).  As a global forest products company that owned and operated a Canadian lumber business, Rayonier A.M. Canada G.P. ("RYAM") was subject to the order.  Due to its size relative to other Canadian softwood lumber producers, RYAM was never selected for individual examination despite requesting to be reviewed.  Accordingly, RYAM — along with hundreds of other companies — imported softwood lumber into the United States under the "non-selected" company rate.  Consistent with 19 USC § 1671d(c)(5) of the Act, the non-selected rate is an

average of the subsidy rates calculated for the companies that were selected as respondents in the administrative review.

In 2021, RYAM sold the entirety of its lumber and newsprint operations to GreenFirst — *i.e.*, 6 lumber mills, 1 newsprint mill, all its inventory, including consignment inventory at customer locations, over 1,400 employees, all supplier and vendor relationships, and all customers. *See* P.R. 1 at 4, 6-8, C.R. 1 at 4, 6-8; P.R. 15 at 5, C.R. 5 at 5.[1] *See also* Complaint of GreenFirst, Ct. No. 22-97, ECF No. 2 at 2. GreenFirst never previously produced lumber and its operating lumber assets are limited to what it acquired from RYAM. Following GreenFirst's acquisition of RYAM's lumber business, GreenFirst requested that the Department conduct a CCR to determine that GreenFirst is the successor-in-interest to RYAM. P.R. 1.

The Department declined to initiate and conduct a CCR. P.R. 13. In concluding that a significant change had taken place that could have affected GreenFirst's subsidy rate, the Department reasoned that (1) it was "inappropriate to affirm a cash deposit rate {*i.e.*, the non-selected company rate} that had been calculated during a previous time-period based on a significantly different factual pattern" and (2) GreenFirst's subsidy rate could " only be decided based on a full analysis of a complete record compiled in the course of an administrative review." *Id*. at 2. GreenFirst requested that the Department reconsider its decision not to initiate because that decision was premised on a practice incompatible with the facts of GreenFirst's request. P.R. at 15. The Department rejected GreenFirst's request to reconsider. P.R. 19.

---

[1] Citations to the confidential administrative record take the form "C.R. __" and citations to the public administrative record take the form "P.R. __."

At the first opportunity, GreenFirst requested that the Department conduct an administrative review of its entries under the order.  The Department did not select GreenFirst for individual examination.  *See* **Attachment I**

## III.  Summary of the Argument

When it rejected GreenFirst's request to find it the successor-in-interest to RYAM, the Department relied exclusively on a methodology promulgated in a case covering pasta from Turkey.  This methodology is premised on two foundational principals.  *First*, that the predecessor company's subsidy rate was calculated based on facts specific to that company. *Second*, that the Department would calculate a company specific subsidy rate for the successor company within the context of a future administrative review.  The Department's approach is incongruent with the specific facts of GreenFirst's request.  Namely that (1) RYAM's rate (*i.e.*, GreenFirst's predecessor) was the non-selected companies rate and therefore not calculated based upon facts specific to RYAM and (2) GreenFirst has not been selected and will not be selected for individual examination within the context of an administrative review.  The Department's determination to reject GreenFirst's request for a CCR to find it the successor-in-interest to RYAM was arbitrary and capricious because it was based on a practice that is inapplicable to this case.

Without a successor-in-interest determination, the Department treated RYAM and GreenFirst as separate entities for the purpose of respondent selection in the fourth administrative review of the *Softwood Lumber from Canada* order.  By treating RYAM and GreenFirst as separate entities, thus bifurcating their shipments, the import data the Department relies on to select mandatory respondents in adminsitrative reviews will be skewed.  Thus, the Department's rejection of GreenFirst's request for a CCR was arbitrary and capricious because it effectively bars GreenFirst from obtaining a successor-in-interest determination.

## IV.  Argument

### A.   Standard of Review

The Court has jurisdiction over this case under 28 USC § 1581(i).  *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1352 (Fed. Cir. 2010) ("There is nothing in § 1581(i)(4) that precludes judicial review of Commerce refusals to initiate changed circumstance reviews"); *Trs. in Bankruptcy of N. Am. Rubber Thread Co. v. United States*, 464 F. Supp. 2d 1350 (Ct. Int'l Trade 2006).  Under 28 USC § 2640(e) the standard of review applied is that provided in 5 USC § 706, which states that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . {or} in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  The Supreme Court has explained that an agency action is arbitrary and capricious when "the agency 'entirely failed to consider an important aspect of the problem, {and} offered an explanation for its decision that runs counter to the evidence.'"  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43-44 (1983).

### B.   The Department's Refusal to Initiate the Requested Changed Circumstances Review was Arbitrary and Capricious Because it was Based on a Standard that Does not Apply

The Department conducts successor-in-interest CCRs to determine whether a successor company is essentially the same as a predecessor company for purposes of the countervailing duty proceeding.  The Department's practice is to not grant successor-in-interest status in a countervailing duty proceeding when the CCR record indicates significant changes that could affect the subsidy rate calculated for the predecessor company.  As explained below, the Department's refusal to initiate GreenFirst's requested CCR was arbitrary and capricious because its practice is not applicable to GreenFirst's CCR request.

19 USC § 1675(b) requires the Department to conduct a review when there exists changed circumstances sufficient to warrant a review.  The Department has long considered the "successor-in-interest" question to be a change that warrants a CCR because it "raises the questions of the company's status in the proceeding," *i.e.*, it is necessary to determine the appropriate rate applicable to the successor company.  *Brass Sheet and Strip from Canada; Final Results of Antidumping Duty Administrative Review*, 57 Fed. Reg. 20,460, 20,461 (May 13, 1992); *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Turkey: Notice of Initiation and Preliminary Results of Countervailing Duty Changed Circumstances Review*, 87 Fed. Reg. 10,772, 10,773 (Feb. 25, 2022) ("Where Commerce makes an affirmative CVD successorship finding . . . *i.e.*, that the respondent company is the same subsidized entity for CVD cash deposit purposes as the predecessor company . . . the successor's merchandise will be entitled to enter under the predecessor's cash deposit rate.").  Consequently, successor-in-interest CCRs are necessary because, without them, successor companies that are essentially the same as predecessor companies will be assigned an incorrect rate and treated differently under the same order.

In countervailing duty proceedings, the Department has a practice of not initiating successor-in-interest CCRs when evidence indicates there exist significant changes that could affect the subsidy rate calculated for the predecessor company.  *Certain Pasta from Turkey: Preliminary Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 47,225, 47,227 (Sept. 15, 2009) ("*Pasta from Turkey*") (unchanged in *Certain Pasta from Turkey: Final Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 54,022 (Oct. 21, 2009)).  In promulgating this practice, the Department explained that the purpose is to prevent a rate of subsidization that was calculated based upon the unique facts of

one company from being transferred to a new company without first calculating the new company's subsidy levels. *Id.* The Department further explained that it is more appropriate to individually examine the new company's subsidy status in the context of a future administrative review, under which the longer time frame would allow "the submission and analysis of a full questionnaire response (and any supplemental responses), ample time for comment from interested parties, and possible verification." *Id.* In other words, the *Pasta from Turkey* practice exists so that the Department does not apply a subsidy rate calculated based upon specific facts of one company to a successor company before the Department has an opportunity to calculate a new subsidy rate based upon the specific facts of that successor company.

Thus, there are two criteria that must exist when applying the *Pasta from Turkey* practice: (1) the subsidy rate must have been calculated based upon the specific facts of the predecessor company and (2) the Department must intend to calculate an individual subsidy rate for the successor company in a subsequent administrative review. Here, the Department did not deny that GreenFirst satisfied the requirements for requesting a successor-in-interest CCR and there is no dispute that the Department rejected GreenFirst's request based exclusively upon the standard it articulated in *Pasta from Turkey*. However, the Department ignored that the two criteria that form the premise of its practice do not apply to GreenFirst's request.

    1.    The first *Pasta from Turkey* criterion does not exist because GreenFirst's predecessor's rate was not calculated based upon company specific facts

RYAM's rate (*i.e.*, GreenFirst's predecessor) was not calculated based upon specific facts applicable to RYAM. Thus, there is no threat of an individually calculated rate being inappropriately transferred to a successor company with a different factual circumstance. As explained above, the purpose of the *Pasta from Turkey* practice is to prevent a rate of subsidization that was calculated based upon the unique facts of one company from being

transferred to a new company for which those unique facts might not apply.  The Department

reiterated this purpose when it rejected GreenFirst's CCR request, explaining that "{m}ajor

changes to a company's ownership structure may affect the nature and extent of the

countervailable subsidies attributable to the newly-formed company."  P.R. 13 at 2.  And as this

Court has recognized, the Department's *Pasta from Turkey* practice is premised upon there being

an individually calculated subsidy rate — based upon the unique facts of a company's

subsidization — subject to review *i.e.*, "{a}s Commerce explained, subsidization often seeks to

stabilize a company's financial position or facilitate investment.  Thus, changes in a company's

name, ownership, or structure because of corporate reorganization, merger, or acquisition by

another company are relevant to subsidy benefits."  *Marsan Gida Sanayi Ve Ticaret A.S. v.*

*United States*, 35 C.I.T. 222, 231 (Ct. Int'l Trade 2011).

      However, RYAM's rate was not based upon subsidies applicable to RYAM's unique

facts because the Department has never individually investigated RYAM.  Rather, the

Department has only ever assigned RYAM the same rate assigned to the hundreds of other

Canadian companies that have not been selected for individual examination.  Indeed, to date, the

Department *has never* individually examined "the nature and extent of countervailable subsidies

attributable to" RYAM.  *See Certain Softwood Lumber Products from Canada: Preliminary*

*Results, Partial Rescission, and Preliminary Intent To Rescind, in Part, the Countervailing Duty*

*Administrative Review, 2020*, 87 Fed. Reg. 6,500 (Feb. 4, 2022); *Certain Softwood Lumber*

*Products from Canada: Notice of Amended Final Results of the Countervailing Duty*

*Administrative Review, 2019*, 87 Fed. Reg. 1,114 (Jan. 10, 2022) ("*Softwood lumber from*

*Canada 2019*"); *Certain Softwood Lumber Products From Canada: Final Results of the*

*Countervailing Duty Administrative Review, 2017-2018*, 85 Fed. Reg. 77,163 (Dec. 1, 2020);

*Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347 (Jan. 3, 2018).

This is why the Department was wrong when it determined that it would be "inappropriate to affirm a cash deposit rate that had been calculated during a previous time-period based on a significantly different factual pattern." P.R. 13 at 2. The cash deposit rate at issue is a non-selected company rate applied to over 250 Canadian companies and was not calculated based on RYAM's specific fact pattern. *Softwood lumber from Canada 2019*, 87 Fed. Reg. at Appendix. If the Department had initiated a CCR, it would not have been tasked with affirming a cash deposit rate that was calculated on any "factual pattern," let alone a "significantly different" one.

> 2.   The second *Pasta from Turkey* criterion does not exist because the Department will not calculate an individual subsidy rate for GreenFirst in a subsequent administrative review

The Department will not individually examine GreenFirst's subsidy status in the context of a future administrative review because GreenFirst will never be selected for individual examination. The cornerstone of the *Pasta from Turkey* practice is that the Department will defer the successor-in-interest analysis so that it can consider it in a subsequent administrative review, where it would fully investigate the successor company under more "feasible" deadlines. *Pasta from Turkey*, 74 Fed. Reg. at 47,227-28 (explaining that, under the Department's new practice, it would conduct the successor-in-interest analysis "based on a full analysis of a complete record compiled in the course of an administrative review and not on the limited facts or within the abbreviated time frame of a CVD CCR"); *reiterated by* P.R. 13 at 2. And this Court premised its affirmance of the *Pasta from Turkey* practice on the assumption that the Department would conduct a subsequent administrative review of a successor company, holding that "it is reasonable for Commerce to refrain from delving into an analysis of subsidization

because that requires deeper analysis appropriate for a full administrative review." *Marsan v. United States*, 35 C.I.T. at 228.

Yet, the Department has never conducted, and will never conduct, a full administrative review of RYAM or GreenFirst because the Department selects only the largest few companies, by volume, for individual examination in most administrative reviews, and neither company qualifies. *See, e.g.*, *Diamond Sawblades and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2009-2010*, 78 Fed. Reg. 11,143 (Jan. 15, 2013), IDM at Comment 4 ("section 777A(c)(2) of the Act provides that when we are faced with a large number of companies such that its individual examination of all companies would be impracticable, we may limit our individual examination of companies to a reasonable number of such companies.") ("*Diamond Sawblades from China*").  Consequently, the Department will not conduct a successor-in-interest analysis for GreenFirst in a subsequent administrative review, thus undermining the premise of its practice.[2]

In summary, the Department's *Pasta from Turkey* practice assumes that the predecessor company was assigned a company-specific cash deposit rate and that the Department would individually examine the successor company in a subsequent adminsitrative review to calculate a unique subsidization rate.  This foundation does not exist here because RYAM has never been assigned a company-specific subsidization rate and GreenFirst will never be selected to receive a unique subsidization rate.  Therefore, the Department's refusal to initiate GreenFirst's requested changed circumstances review was arbitrary and capricious because it was based upon a practice that is not applicable in this case.

---

[2] This is not speculation.  In the current administrative review, as in previous administrative reviews, RYAM/GreenFirst was not selected for individual examination despite requesting to be reviewed.  *See* **Attachment I**.

**C.   GreenFirst will Continue to Suffer Real Harm as a Result of the Department's Arbitrary and Capricious Action**

As explained above, the Department's arbitrary and capricious refusal to initiate a successor-in-interest CCR means that the Department will never consider whether GreenFirst is the successor-in-interest to RYAM.  This inaction continues to harm GreenFirst.

The goal of a successor-in-interest analysis is to determine whether the successor company is the same as the predecessor company.  Without a successor-in-interest determination by the Department (or following a negative successor-in-interest determination), the predecessor company and the successor company remain two separate entities for purposes of the Department's countervailing duty proceedings.  *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results of the 2008-2009 Antidumping Duty Administrative Review*, 76 Fed. Reg. 3,086 (Jan. 19, 2011), IDM at Comment 7 ("we found that PBCD and SKF are separate entities (with neither being the successor-in-interest to the other) and, therefore, it is appropriate to calculate period-specific assessment rates for each separate respondent based on their respective sales made in the distinct portion of the POR during which each respondent existed").  Here, this means that the Department will continue to treat RYAM and GreenFirst as two separate companies within the *Softwood Lumber from Canada* proceeding when, in reality, there is only one entity that encompasses the former RYAM and the successor GreenFirst.

For example, RYAM and GreenFirst will be considered separate entities for administrative review respondent selection purposes.  The Department consistently limits the number of respondents that it will select for individual examinations in an administrative review.  *Diamond Sawblades from China*, 78 Fed. Reg. 11,143 (Jan. 15, 2013), IDM at Comment 4.  Its respondent selection process involves ranking eligible respondents by import quantity and

selecting the largest respondents by volume. *Carbon and Alloy Steel Wire Rod from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary Negative Determination of Critical Circumstances*, 82 Fed. Reg. 50,386 (Oct. 31, 2017), PDM at II ("the Department limited the number of respondents selected for individual examination in this investigation to the two largest publicly identifiable producers/exporters of the subject merchandise by volume"). The Department will not combine the volume of separate entities unless it has made a previous determination that those separate entities should be treated as a single entity for the Department's purposes, *e.g.*, a "collapsing" decision or a successor-in-interest determination. *Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 38,664 (Jun. 14, 2016) (prelim. results) (explaining that the Department "will not conduct collapsing analyses at the respondent selection phase of this review and will not collapse companies at the respondent selection phase unless there has been a determination to collapse certain companies in a previous segment of this antidumping proceeding (*i.e.*, investigation, administrative review, new shipper review or changed circumstances review)"). Indeed, the Department has explained that the reason it will not combine into a single entity previously uncombined companies during respondent selection is that such a determination requires "a substantial amount of detailed information and analysis, which often require follow-up questions and analysis," which can never happen for RYAM/GreenFirst without the Department conducting a successor-in-interest determination. *See Hardwood and Decorative Plywood from the People's Republic of China*, 78 Fed. Reg. 58,273 (Sep. 23, 2013) (fin. det.), IDM at Comment 2. Here, this means that imports that entered the United States under RYAM's name will not be combined with imports that enter under GreenFirst's name even though all imports were entered by the same entity. This artificially dilutes GreenFirst's import volume and lowers

GreenFirst's ranking for the Department's respondent selection purposes, making it less likely that GreenFirst will ever be selected for individual examination.

Finally, GreenFirst's entries of subject merchandise are currently subject to the 14.19 percent *ad valorem* all-others rate, a rate more than double the current 6.32 percent *ad valorem* non-selected companies rate. *Softwood lumber from Canada 2019*, 87 Fed. Reg. at 1,115. This difference amounts to a perpetual injury of millions of dollars. Unless found to be the successor-in-interest to RYAM prior to the final results of the Department's recently initiated 2021 administrative review, GreenFirst will have had to allocate approximately three years of cash deposits at a 14.19 percent *ad valorem* rate, a significant strain on the company.

## V.   Conclusion

GreenFirst requested that the Department conduct a routine successor-in-interest determination to recognize the reality that it is the successor-in-interest to RYAM. The Department refused to even conduct the analysis based upon an inapplicable practice, and that arbitrary and capricious refusal has caused real and continued harm to GreenFirst. Therefore, this Court should find unlawful the Department's determination to not initiate a changed circumstances review and should order the Department to initiate that review.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Jonathan Zielinski
Sarah E. Shulman
CASSIDY LEVY KENT (USA) LLP
*Counsel to GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc.*

</div>

July 29, 2022

Court. No. 22-00097

## **<u>Certificate of Compliance</u>**

The undersigned hereby certifies that the forgoing submission of "Memorandum Of Points of Law and Fact in Support of the Rule 56.1 Motion for Judgement on the Agency Record," filed by GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc. on July 29, 2022, contains 3,520 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 14,000 word limitation set forth in the Standard Chambers Procedures.

BY: <u>/s/ Sarah E. Shulman</u>

Sarah E. Shulman

# Attachment I

Barcode:4235481-01 C-122-858 REV - Admin Review 2021 - Softwood Lumber

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

C-122-858
Administrative Review
POR: 01/01/2021 – 12/31/2021
**Public Version**
E&C OIII: JH

April 26, 2022

**MEMORANDUM TO**:     Erin Begnal
                      Director
                      AD/CVD Operations, Office III

**FROM**:              John Hoffner
                      International Trade Compliance Analyst
                      AD/CVD Operations, Office III

**RE**:                Administrative Review of the Countervailing Duty Order on
                      Certain Softwood Lumber Products from Canada:  Respondent
                      Selection

### I.  Summary

For the reasons detailed below, we recommend selecting, in alphabetical order, Canfor
Corporation (Canfor) and West Fraser Mills Ltd. (West Fraser) as the mandatory respondents in
this countervailing duty (CVD) administrative review.

### II.  Background

On January 3, 2018, the Department of Commerce (Commerce) published in the *Federal
Register* the CVD order on certain softwood lumber products (softwood lumber) from Canada.[1]
On January 11, 2022, Commerce published the notice of opportunity to request an administrative
review of the *CVD Order*.[2]  On March 9, 2022, Commerce initiated an administrative review of
the *CVD Order* covering the January 1, 2021, through December 31, 2021 period of review
(POR).[3]  There are 290 companies subject to this review.[4]

In the *Initiation Notice*, Commerce stated that, in the event we limit the number of respondents
for individual examination, we intend to select respondents based on U.S. Customs and Border

---

[1] *See Certain Softwood Lumber Products from Canada:  Amended Final Affirmative Countervailing Duty
Determination and Countervailing Duty Order*, 83 FR 347 (January 3, 2018) (*CVD Order*).
[2] *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request
Administrative Review*, 87 FR 1396 (January 11, 2022).
[3] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 FR 13252 (March 9, 2022)
(*Initiation Notice*).
[4] The *Initiation Notice* listed 289 companies (*see* 87 FR at 13260-13263).  One company was inadvertently omitted
from the *Initiation Notice*:  Terminal Forest Products Ltd.  The *Initiation Notice* was corrected in the *Federal
Register* to add the company to this review (*see* 87 FR 21635).



Protection (CBP) data for U.S. imports of softwood lumber during the POR.[5]  On March 24, 2022, we released the results of a CBP data query showing the import values for the POR to all interested parties under an Administrative Protective Order and invited parties to submit comments regarding the entry data and our respondent selection methodology.[6]  We received comments from several interested parties on March 31, 2022,[7] and rebuttal comments on April 6, 2022.[8]

## III.  Respondent Selection

### Issue 1:  Limiting Examination to a Reasonable Number of Companies

Applicable Statutory Provision

Section 777A(e)(1) of the Tariff Act of 1930, as amended (the Act), directs Commerce to determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.  Commerce, however, may limit its examination to a reasonable number of exporters or producers under section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2), if it determines that it is not practicable to calculate individual countervailable subsidy rates because of the large number of exporters or producers involved in the administrative review.

Interested Party Comments

No party argued that Commerce should examine all known exporters and producers of softwood lumber from Canada.

Analysis

The *Initiation Notice* identified 290 exporters or producers of softwood lumber from Canada.[9]  Ideally, in an administrative review, Commerce would examine all exporters and producers for which a review has been initiated, regardless of each individual exporter's/producer's export volume or value, as reflected in section 777A(e)(1) of the Act.

---

[5] *See Initiation Notice*, 87 FR at 13252-13253.

[6] *See* Memorandum, "Certain Softwood Lumber Products from Canada:  Third Countervailing Duty Administrative Review; Release of U.S. Customs and Border Protection Query," dated March 24, 2022 (CBP Memorandum), and accompanying CBP Data.

[7] *See* Petitioner's Letter, "Certain Softwood Lumber Products from Canada:  Comments on CBP Data and Request for Sampling," dated March 31, 2022 (Petitioner's Comments); *see also* Canfor's Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858:  Comments on CBP Data and Respondent Selection Methodology," dated March 31, 2022 (Canfor's Comments); J.D. Irving Limited's (J.D. Irving) Letter, "Certain Softwood Lumber Products from Canada:  Respondent Selection Comments," dated March 31, 2022 (J.D. Irving's Comments); Tolko Marketing and Sales Ltd., Tolko Industries Ltd., and their cross owned affiliates' (Tolko) Letter, "Certain Softwood Lumber Products from Canada:  CBP Data and Respondent Selection Comments," dated March 31, 2022 (Tolko's Comments); and West Fraser's Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858:  Comments on CBP Data and Respondent Selection," dated March 31, 2022 (West Fraser's Comments).

[8] *See* Langevin's Forest Products Inc.'s Letter, "Certain Softwood Lumber Products from Canada:  Langevin's Rebuttal to Petitioner's Comments on CBP Data and Respondent Selection," dated April 6, 2022.

[9] *See Initiation Notice*, 87 FR at 13260-13263 and 87 FR 21635.

However, in instances where Commerce must limit its examination due to the large number of potential respondents relative to its resource constraints, Commerce will examine as many exporters or producers as is practicable, consistent with its statutory obligation.  Because section 777A(e)(2) of the Act does not define a "large number of exporters or producers," we find that the 290 exporters or producers for which an administrative review was initiated constitutes a large number.  Accordingly, we conclude that it would not be practicable in this administrative review to examine each exporter or producer individually for which a review has been initiated and determine an individual net countervailable subsidy rate for each.

Individually reviewing all exporters or producers for which a review has been initiated would require significant resources for Commerce to analyze each company's corporate structure, financial records, and participation in the subsidy programs which Commerce will be examining in this administrative review.  In addition, Commerce must examine the same categories of information for all companies determined during the course of this administrative review to be "cross-owned" with the respondents, pursuant to 19 CFR 351.525(b)(6)(vi).  Such cross-owned companies can include the respondents' input suppliers and parent companies, for example.  Moreover, Commerce must solicit and analyze information from the Government of Canada (GOC) and the provincial and local governments during the course of the administrative review, further limiting Commerce's available resources.

In addition to this administrative review, Office III, the office to which this review is assigned, is conducting numerous concurrent antidumping (AD) and CVD proceedings.[10]  The number and complexity of the programs in this administrative review, in particular the provincial provision of stumpage for less than adequate remuneration, combined with overlapping statutory deadlines of other AD and CVD proceedings, as well as Office III's additional workload, places a significant constraint on the number of analysts that can be assigned to this administrative review and, thus, limit the number of respondents that Commerce can reasonably examine.  Moreover, because of the significant workload throughout Enforcement and Compliance, Office III does not anticipate receiving any additional resources to devote to this administrative review.

Due to the large number of exporters or producers of softwood lumber from Canada subject to this administrative review, Commerce's current resource constraints and practical considerations outlined above, and after careful consideration, we find that it is not practicable to individually examine all exporters and/or producers of softwood lumber from Canada for which a review has been initiated, as directed by section 777A(e)(1) of the Act.

---

[10] Examples include (both investigations and reviews), but are not limited to:  acrylonitrile-butadiene rubber from France; certain cut-to-length carbon-quality steel plate from Korea; certain pasta from Italy; certain preserved mushrooms from the Netherlands; citric acid from Belgium, Colombia, and Thailand; corrosion-resistant steel products from Taiwan; light-walled rectangular pipe and tube from Mexico; lined paper products from India; pure magnesium from China; quartz surface products from India; R-134a from China; steel concrete reinforcing bar from Mexico; sodium nitrite from India; steel nails from India and Thailand; steel propane cylinders from Thailand; urea ammonium nitrate solutions from Russia; and welded stainless pressure pipe from India.

Recommendation

For the reasons discussed above, we recommend limiting Commerce's examination of respondents in this administrative review to a reasonable number of exporters or producers, consistent with section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2).

☒                                    ☐
_____                      _____
Agree                                Disagree


## Issue 2:  Methodology and Selection of Respondents

Applicable Statutory Provision

Where it is not practicable to examine all exporters or producers of the subject merchandise for which a review has been initiated, section 777A(e)(2) of the Act permits Commerce to determine individual countervailable subsidy rates for a reasonable number of exporters or producers, by limiting its examination to (A) a sample of exporters or producers that it determines is statistically valid based on the information available at the time of selection, or (B) exporters or producers accounting for the largest volume of the subject merchandise from the exporting country that Commerce determines can be reasonably examined.[11]  The Act does not express a preference for either methodology.[12]  Further, section 777A(e)(2) of the Act does not require Commerce to meet a minimum threshold in determining the number of mandatory respondents.

Interested Party Comments

Interested parties submitted comments concerning limiting the number of mandatory respondents, which we address below.

*Petitioner's Comments*[13]
- Based on the CBP data placed on the record, Commerce should select the four largest producers during the POR for this administrative review.
- If Commerce were to only select the three largest producers, the all-others subsidy rate, which the majority of respondents in this review will be subject to, would be unrepresentative of the experience of producers as a whole from Canada.  The three largest producers, [                    ], all [                    ], while [                                            ].
- Commerce has continually recognized the importance of geography in the context of respondent selection.  For example, it has explained that geography is a significant distinguishing factor among Canadian lumber producers because "provincial policies related to

---

[11] *See* section 777A(e)(2)(A)(i) and (ii) of the Act.
[12] *See* section 777A(c)(2)(A)-(B) of the Act.
[13] *See* Petitioner's Comments at 2-7.

forest management and provincially-administered stumpage programs vary between provinces."[14]

- Further, Commerce has acknowledged that there is "variance in subsidization levels among provinces and sub-provinces," and that the examination of "the provision of subsidies in the four largest lumber-producing Canadian provinces (*i.e.*, Alberta, British Columbia, Ontario, and Québec)" would address this issue.[15]

- Even if Commerce were to select the three largest producers as respondents and later choose one voluntary respondent, the resulting review of [
                                             ].

- The Government of Ontario and Government of Québec offer a large number of subsidies that are unavailable to Canfor, West Fraser, and Tolko, who do not operate in either Ontario or Québec.  Thus, using the second administrative review as an example, if Commerce were to [
                                             ].

- Commerce has consistently shown its ability to examine at least four respondents throughout various segments of this proceeding.  In the investigation, Commerce determined that it had sufficient resources to select five respondents and in each of the first, second, and third administrative reviews, Commerce reviewed four respondents.

*Canfor's Comments*[16]
- Commerce should continue to select the largest exporters by value as mandatory respondents, and based on this analysis, select Canfor as a mandatory respondent.

*J.D. Irving's Comments*[17]
- Commerce should examine the exporters/producers accounting for the largest value of imports of subject merchandise to the United States during the POR and select at least five mandatory respondents.

- The CBP data indicate that the top five exporters/producers by import value account for [   ] percent of the total value of imports for subject merchandise.

- Commerce's experience with the top five exporters/producers should minimize the resources required to individually examine each of them.

- Selecting the top five exporters/producers ensures that Commerce captures a broad representative sample of the export market in terms of import value and geographic coverage in Canada.

---

[14] *See* Petitioner's Comments at 3 (citing Commerce's Letter, "Third Administrative Review of Antidumping Duty Order," dated July 11, 2005 at 2).

[15] *Id.* (citing Memorandum, "Respondent Selection," dated May 19, 2020 at 7).

[16] *See* Canfor's Comments at 2-4.

[17] *See* J.D. Irving's Comments at 1-5.

*Tolko's Comments*[18]
- Relying on the CBP data, Commerce should select the exporters/producers accounting for the largest volume of the subject merchandise from Canada that can be reasonably examined as the mandatory respondents.
- A review of the CBP data Commerce placed on the record indicates that Tolko is the manufacturer accounting for the [      ] largest value of exports, consistent with Commerce's practice of selecting respondents on the basis of value in this case.  Accordingly, Tolko requests that Commerce select Tolko as a mandatory respondent in this review.

*West Fraser's Comments*[19]
- Commerce should select respondents based on the exporters/producers accounting for the largest value of the subject merchandise from Canada that it determines can be reasonably examined.

Analysis

While Commerce's general practice under section 777A(e)(2)(A)(ii) of the Act is to select respondents accounting for the largest volume of subject merchandise imports, as in the first, second, and third administrative reviews, we find that the volume data from CBP contain entry quantities that are denominated in several different units of measure (UOMs) (*i.e.*, cubic meters, square meters, kilograms, and number of pieces), and, for some entries, no quantity is reported.[20] In addition to the missing volumes, the various UOMs are problematic because, for example, measurements of weight (*e.g.*, kilograms) cannot be converted to measurements of volume (*e.g.*, cubic meters) without making certain assumptions, and "number of pieces" simply cannot be converted to a measurement of volume.

The CBP data, however, contain value amounts for all entries of subject merchandise in the same unit of currency.[21]  Therefore, as in the prior reviews, we recommend relying on value data as a proxy for quantity and selecting respondents accounting for the largest value.  Using value as a proxy for quantity, where there are issues with the reported UOMs for entry quantities, is transparent and consistent with Commerce's approach in other proceedings as well as the prior administrative reviews of this order.[22]

To determine the total value and relative share of shipments for each potential respondent, we reviewed the CBP entry data for each company in terms of the aggregated value of imports of subject merchandise attributed to that company into the United States during the POR.  We

---

[18] *See* Tolko's Comments at 2-8.
[19] *See* West Fraser's Comments at 2-3.
[20] *See* CBP Data.
[21] *See* CBP Data.
[22] *See* Memorandum, "Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada:  Respondent Selection," dated April 20, 2021; *see also* Memorandum, "Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada:  Respondent Selection," dated May 19, 2020; Memorandum, "Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada:  Respondent Selection," dated May 17, 2019; and Memorandum, "Countervailing Duty Investigation of Rubber Bands from the People's Republic of China:  Respondent Selection," dated March 21, 2018.  Public versions of these memoranda are included in Attachment II to this memorandum.

combined the export values of companies with minor variations in the spelling of their names and companies found to be cross-owned affiliates in prior segments of this proceeding, and ranked these companies by the total value exported to the United States during the POR.[23]

After considering the CBP data, our resource constraints, as well as the complexity of the programs involved in this administrative review, we find that the office responsible for this review has the resources to examine two mandatory respondents.  An individual examination of the two largest exporters/producers by value of entries of subject merchandise during the POR will allow Commerce to capture the largest exporters/producers that can reasonably be examined, in light of resource constraints and in compliance with the statutory requirements.

Based on our analysis of the CBP data, the two exporters/producers with the largest value of entries of subject merchandise are, in alphabetical order:  Canfor and West Fraser.[24]  Both companies requested an administrative review.[25]

<u>Recommendation</u>

For the reasons discussed above, we recommend selecting, in alphabetical order, Canfor and West Fraser as the mandatory respondents in this administrative review because they are the two largest exporters or producers that account for the largest value of subject merchandise entries during the POR.

☒                                  ☐
_____                 _____
Agree                             Disagree

**Issue 3:  Voluntary Respondents**

<u>Applicable Statutory Provision</u>

When Commerce limits the number of exporters/producers examined in an administrative review, section 782(a) of the act directs Commerce to establish an individual countervailable subsidy rate for any exporter or producer not initially selected for individual examination that voluntarily submits the information requested from mandatory respondents, if (1) the information is submitted by the due date specified for exporters/producers initially selected for examination, and 2) the number of exporters/producers subject to the administrative review is not so large that any additional individual examination of such exporters and producers would be unduly burdensome and inhibit the timely completion of the administrative review.[26]  If the criteria are

---

[23] *See* Attachment I to this memorandum for a summary of the 10 largest Canadian exporters/producers.

[24] *See* Attachment I to this memorandum.

[25] *See* Canfor's Letter, "Certain Softwood Lumber Products from Canada, Case No.  C-122-858:  Request for Administrative Review and Request for Voluntary Respondent Treatment," dated January 3, 2022 (Canfor's Review Request) (barcode:  4196310); *see also* West Fraser's Letter, "Certain Softwood Lumber Products from Canada: Request for Countervailing Duty Administrative Review and Request for Voluntary Respondent Treatment if Not Selected as a Mandatory Respondent," dated January 3, 2022 (West Fraser's Review Request) (barcode:  4196620).

[26] *See* section 782(a)(A) and (B) of the Act.

met, Commerce will select a voluntary respondent(s) based on the order in which the requests for voluntary respondent treatment were received.[27]

Requests for Voluntary Respondent Treatment

In alphabetical order, the following Canadian exporters/producers requested to be treated as voluntary respondents in this administrative review:  Canfor; J.D. Irving; Resolute; and Tolko. Interested parties submitted comments regarding the chronological order in which requests to be treated as voluntary respondents were submitted in this administrative review.[28]

*J.D. Irving's Comments*[29]
• If Commerce declines to select five mandatory respondents, Commerce should select J.D. Irving as a voluntary respondent.  Commerce's experience reviewing J.D. Irving should minimize the resources required to be reviewed, would promotes fairness due to the difference in J.D. Irving's actual subsidy rate versus the all-others rate, and was submitted at the earliest date on which a Canadian producer/exporter could request a review.

*Tolko's Comments*[30]
• Commerce has allowed for voluntary respondents in all segments of this case to date.  In addition, as this is the fourth administrative review, Commerce has now gained more familiarity with the issues in this case.  These determinations demonstrate that Commerce has sufficient resources to examine voluntary respondents in this review.
• In the event Commerce does not select Tolko as a mandatory respondent, it should identify Tolko as the first respondent to have requested to participate as a voluntary respondent.
• Tolko submitted voluntary requests: (1) immediately after 5:00 PM on December 30, 2021; (2) immediately after 5:01 PM on December 30, 2021; and (3) immediately after midnight on January 1, 2022.  As a result, under any interpretation by Commerce, Tolko submitted the first request for voluntary treatment for this review.

Analysis

Commerce will consider whether to examine voluntary respondents under the following conditions:

   a.  The voluntary respondent must have met the filing deadlines for all requests for information (and otherwise comply with all other regulatory deadlines);[31]

   b.  Commerce will select voluntary respondents based on the order in which the requests are received.[32]

---

[27] *See Antidumping Duties and Countervailing Duties; Final Rule*, 62 FR 27296, 27310 (May 19, 1997) (*Preamble*).
[28] *See* J.D. Irving's Comments at 5; *see also* Tolko's Comments at 4-8.
[29] *See* J.D. Irving's Comments at 3-5.
[30] *See* Tolko's Comments at 4-8.
[31] *See* section 782(a) of the Act.
[32] *See Preamble*, 62 FR at 27310.

Once selected, a voluntary respondent that subsequently decides not to cooperate in the administrative review will be treated in the same manner as a mandatory respondent that fails to cooperate.[33]  As Tolko and J.D. Irving contest which request for voluntary treatment was received first, we looked to 19 CFR 351.213(b), which states that, "Each year during the anniversary month of the publication of an antidumping or countervailing duty order, a domestic interested party or an interested party described in section 771(9)(B) of the Act (foreign government) may request in writing that the Secretary conduct an administrative review under section 751(a)(1) of the Act of specified individual exporters or producers covered by an order…"  Further, 19 CFR 351.303(b) states that, "An electronically filed document must be received successfully in its entirety by the Department's electronic records system, ACCESS, by 5 p.m. Eastern Time on the due date."  Furthermore, the *Preamble* states that "we intend to accept voluntary responses based on the order in which written requests to be accepted as voluntary respondents are submitted."[34]  It has been Commerce's practice to consider a document filed after 5 p.m. and zero seconds, but before 5:01 p.m., as filed at 5:00 pm.  In other words, if a respondent files a submission at 5 p.m. and 1 second, and another document at 5 p.m. and 56 seconds, Commerce treats both submissions as filed at 5:00 pm.  It is once the clock turns to 5:01 pm, any filing then or afterward becomes a filing of the subsequent business day.

Because Tolko's first request for voluntary treatment was filed at 5 p.m., but before 5:01 p.m., on December 30, 2021, we therefore determine that it was filed on December 30, 2021, which is the preceding calendar month of the January anniversary month of the publication of the CVD order.  Accordingly, Tolko filed its first request for voluntary respondent treatment too early for consideration.

J.D. Irving filed its request to be selected as a voluntary respondent at 5:01:00.273 p.m.[35] on December 30, 2021, which was during the anniversary month of the order.  Tolko refiled its submission at 5:01:00.633 p.m. also on December 30, 2021.  Canfor filed its request for voluntary respondent treatment at 5:01:08.357 p.m. on December 30, 2021.  Resolute filed its request for voluntary respondent treatment at 12:00:02.530 p.m. on January 1, 2022.  West Fraser filed its request for voluntary respondent treatment at 3:31:30.660 p.m. on January 3, 2022.  Thus, we received the requests for voluntary treatment in the following chronological order:  J.D. Irving, Tolko, Canfor, Resolute, and West Fraser.

---

[33] *See* 19 CFR 351.204(d)(2).
[34] *See Preamble*, 62 FR at 27310.
[35] *See* Attachment III to this memorandum for a detailed overview of the voluntary respondent requests.

Recommendation

If any voluntary responses are submitted in accordance with the deadlines and other criteria set forth in section 782(a) of the Act and 19 CFR 351.204(d), we recommend evaluating the circumstances during the course of this administrative review to determine whether the individual examination of such companies would be unduly burdensome and inhibit the timely completion of the administrative review.

☒                                    ☐
_____         _____
Agree                                Disagree

_____
Erin Begnal
Director
AD/CVD Operations, Office III

\_\_\_\_\_April 26, 2022\_\_\_\_\_
Date

Barcode:4235481-01 C-122-858 REV - Admin Review 1/1/21 - 12/31/21

**ATTACHMENT I**

**Public Version**

**Value of Subject Imports to the United States during the POR**


1. Exporters/Producers Total Exports to the United States: [                    ].

2. The following chart identifies the entry value (US$) of exports of softwood lumber from the top 10 Canadian companies during the POR:

| Top 10 Companies | Import Value (US$) | Percentage of Total |
|---|---|---|
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |

*Note*:  Commerce took into account minor variations in the spelling of certain names and abbreviations, and companies found to be cross-owned in prior segments of this proceeding by combining the import values of those companies.

*Source*:  CBP

Filed By: John Hoffner, Filed Date: 4/27/22 9:39 AM, Submission Status: Approved
11

**ATTACHMENT II**

**Public Information**

The public versions of the respondent selection memoranda referenced in the body of this memorandum are contained within this attachment.

Barcode:4235481-01 C-122-858 REV - Admin Review 2020/01/01 - ...

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

C-122-858
Administrative Review
POR: 01/01/2020 – 12/31/2020
**Public Version** ~~Business Proprietary Document~~
E&C OIII: KJ

April 20, 2021

**MEMORANDUM TO**:     Erin Begnal
                       Director
                       AD/CVD Operations, Office III

**FROM**:              Kristen Johnson
                       International Trade Compliance Analyst
                       AD/CVD Operations, Office III

**RE**:                Administrative Review of the Countervailing Duty Order on
                       Certain Softwood Lumber Products from Canada:  Respondent
                       Selection

## I. Summary

For the reasons detailed below, we recommend selecting, in alphabetical order, Canfor
Corporation (Canfor), Resolute FP Canada Inc. (Resolute), and West Fraser Mills Ltd. (West
Fraser) as the mandatory respondents in this countervailing duty (CVD) administrative review.

## II. Background

On January 3, 2018, the Department of Commerce (Commerce) published in the *Federal
Register* the CVD order on certain softwood lumber products (softwood lumber) from Canada.[1]
On January 5, 2021, Commerce published the notice of opportunity to request an administrative
review of the *CVD Order*.[2]  On March 4, 2021, Commerce initiated an administrative review of
the *CVD Order* covering the January 1, 2020, through December 31, 2020 period of review
(POR).[3]  There are 263 companies subject to this review.[4]

In the *Initiation Notice*, Commerce stated that, in the event we limit the number of respondents
for individual examination, we intend to select respondents based on U.S. Customs and Border

---

[1] *See Certain Softwood Lumber Products from Canada:  Amended Final Affirmative Countervailing Duty
Determination and Countervailing Duty Order*, 83 FR 347 (January 3, 2018) (*CVD Order*).
[2] *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request
Administrative Review*, 86 FR 291 (January 5, 2021).
[3] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 FR 12599 (March 4, 2021)
(*Initiation Notice*).
[4] The *Initiation Notice* lists 261 companies (*see* 86 FR at 12607-12610).  The following two companies were
inadvertently omitted from the *Initiation Notice*:  Cedarcoast Lumber Products and 54 Reman.  The *Initiation Notice*
will be corrected in the *Federal Register* to include those two companies in this administrative review.



Protection (CBP) data for U.S. imports of softwood lumber during the POR.[5]  On March 19, 2021, we released the results of a CBP data query showing the import values for the POR to all interested parties under an Administrative Protective Order and invited parties to submit comments regarding the entry data and our respondent selection methodology.[6]  We received comments from several interested parties on March 26, 2021,[7] and rebuttal comments on April 7, 2021.[8]

## III.  Respondent Selection

### Issue 1:  Limiting Examination to a Reasonable Number of Companies

Applicable Statutory Provision

Section 777A(e)(1) of the Tariff Act of 1930, as amended (the Act), directs Commerce to determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.  Commerce, however, may limit its examination to a reasonable number of exporters or producers under section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2), if it determines that it is not practicable to calculate individual countervailable subsidy rates because of the large number of exporters or producers involved in the administrative review.

Interested Party Comments

No party argued that Commerce should examine all known exporters and producers of softwood lumber from Canada.

---

[5] *See Initiation Notice* at 86 FR at 12600.
[6] *See* Memorandum, "Certain Softwood Lumber Products from Canada: Third Countervailing Duty Administrative Review; Release of U.S. Customs and Border Protection Query," dated March 19, 2021 (CBP Memorandum), and accompanying CBP Data.
[7] *See* Petitioner's Letter, "Certain Softwood Lumber Products from Canada:  Comments on CBP Data and Request for Sampling," dated March 26, 2021 (Petitioner's Comments); Canfor's Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858:  Comments on CBP Data and Respondent Selection Methodology," dated March 26, 2021 (Canfor's Comments); J.D. Irving Limited's (J.D. Irving) Letter, "Certain Softwood Lumber Products from Canada:  Respondent Selection Comments," dated March 26, 2021 (J.D. Irving's Comments); Resolute's Letter, "Softwood Lumber from Canada:  Respondent Selection – Comments on CBP Data," dated March 26, 2021 (Resolute's Comments); Tolko Marketing and Sales Ltd., Tolko Industries Ltd., and their cross owned affiliates' (Tolko) Letter, "Certain Softwood Lumber Products from Canada:  CBP Data and Respondent Selection Comments," dated March 26, 2021 (Tolko's Comments); and West Fraser's Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858:  Comments on CBP Data and Respondent Selection," dated March 26, 2021 (West Fraser's Comments).
[8] *See* Canadian Parties' Letter, "Countervailing Duty Administrative Review of Certain Softwood Lumber Products from Canada:  Canadian Parties' Rebuttal to Petitioner's Comments on CBP Import Data and Respondent Selection," dated April 7, 2021 (Canadian Parties' Rebuttal Comments); JDIL's Letter, "Certain Softwood Lumber Products from Canada:  Rebuttal to Respondent Selection Comments," dated April 7, 2021 (J.D. Irving's Rebuttal Comments); Tolko's Letter, "Certain Softwood Lumber Products from Canada:  Rebuttal Respondent Selection Comments," dated April 7, 2021 (Tolko's Rebuttal Comments);   New Brunswick Lumber Producers' Letter, "Certain Softwood Lumber Products from Canada:  Rebuttal to Petitioner's Comments on CBP Data and Request for Sampling, dated April 7, 2021 (NBLP's Rebuttal Comments).

<u>Analysis</u>

The *Initiation Notice* identified 263 exporters or producers of softwood lumber from Canada.[9] Ideally, in an administrative review, Commerce would examine all exporters and producers for which a review has been initiated, regardless of each individual exporter's/producer's export volume or value, as reflected in section 777A(e)(1) of the Act.

However, in instances where Commerce must limit its examination due to the large number of potential respondents relative to its resource constraints, Commerce will examine as many exporters or producers as is practicable, consistent with its statutory obligation. Because section 777A(e)(2) of the Act does not define a "large number of exporters or producers," we find that the 263 exporters or producers for which an administrative review was initiated constitutes a large number. Accordingly, we conclude that it would not be practicable in this administrative review to examine each exporter or producer individually for which a review has been initiated and determine an individual net countervailable subsidy rate for each.

Individually reviewing all exporters or producers for which a review has been initiated would require significant resources for Commerce to analyze each company's corporate structure, financial records, and participation in the subsidy programs which Commerce will be examining in this administrative review. In addition, Commerce must examine the same categories of information for all companies determined during the course of this administrative review to be "cross-owned" with the respondents, pursuant to 19 CFR 351.525(b)(6)(vi). Such cross-owned companies can include the respondents' input suppliers and parent companies, for example. Moreover, Commerce must solicit and analyze information from the Government of Canada (GOC) and the provincial and local governments during the course of the administrative review, further limiting Commerce's available resources.

In addition to this administrative review, Office III, the office to which this review is assigned, is conducting numerous concurrent antidumping (AD) and CVD proceedings.[10] The number and complexity of the programs in this administrative review, in particular the provincial provision of stumpage for less than adequate remuneration, combined with overlapping statutory deadlines of other AD and CVD proceedings, as well as Office III's additional workload, places a significant constraint on the number of analysts that can be assigned to this administrative review and, thus, limit the number of respondents that Commerce can reasonably examine. Moreover, because of the significant workload throughout Enforcement and Compliance, Office III does not anticipate receiving any additional resources to devote to this administrative review.

---

[9] *See Initiation Notice*, 86 FR at 12607-12610.

[10] Examples include (both investigations and reviews), but are not limited to: aluminum foil from Oman; carbon and certain alloy steel wire rod from Mexico; certain cut-to-length carbon-quality steel plate from Korea; certain pasta from Italy; circular welded carbon steel pipes and tubes from Turkey; citric acid from Belgium, Colombia, and Thailand; coated paper from China; corrosion-resistant steel products from China and Taiwan; dioctyl terephthalate from Korea; light-walled rectangular pipe and tube from Mexico; light-weight thermal paper from China; lined paper products from India; magnesium metal from China; metal lockers and parts from China; polyester textured yarn from Thailand; polyethylene retail carrier bags from Malaysia; pure magnesium from China; R-134a from China; snow throwers from China; steel concrete reinforcing bar from Mexico; steel propane cylinders from Thailand; and steel wheels (12 to 16.5 inches in diameter) from China.

Due to the large number of exporters or producers of softwood lumber from Canada subject to this administrative review, Commerce's current resource constraints and practical considerations outlined above, and after careful consideration, we find that it is not practicable to individually examine all exporters and/or producers of softwood lumber from Canada for which a review has been initiated, as directed by section 777A(e)(1) of the Act.

<u>Recommendation</u>

For the reasons discussed above, we recommend limiting Commerce's examination of respondents in this administrative review to a reasonable number of exporters or producers, consistent with section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2).

☒                                      ☐
_____               _____
Agree                                  Disagree

## Issue 2:  Methodology and Selection of Respondents

<u>Applicable Statutory Provision</u>

Where it is not practicable to examine all exporters or producers of the subject merchandise for which a review has been initiated, section 777A(e)(2) of the Act permits Commerce to determine individual countervailable subsidy rates for a reasonable number of exporters or producers, by limiting its examination to (A) a sample of exporters or producers that it determines is statistically valid based on the information available at the time of selection, or (B) exporters or producers accounting for the largest volume of the subject merchandise from the exporting country that Commerce determines can be reasonably examined.[11]  The Act does not express a preference for either methodology.[12]  The Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA) interprets this provision to mean that the authority to select respondents, whether by using a "statistically valid" sample or by examining respondents accounting for the largest volume of the merchandise under consideration, rests exclusively with Commerce.[13]  Further, section 777A(e)(2) of the Act does not require Commerce to meet a minimum threshold in determining the number of mandatory respondents.

<u>Interested Party Comments</u>

Interested parties submitted comments on the method Commerce should use to limit the number of mandatory respondents, which we address below.

*Petitioner's Comments*[14]

_____

[11] *See* section 777A(e)(2)(A)(i) and (ii) of the Act.
[12] *See* section 777A(c)(2)(A)-(B) of the Act.
[13] *See* SAA, H.R. Doc. No. 103-316, Vol. 1 at 872 (1994).
[14] *See* Petitioner's Comments at 2-26.

- Commerce should use sampling[15] to select a minimum of three mandatory respondents for individual examination in this review.  Sampling should be used because it is the only methodology that will permit Commerce to obtain a representative and accurate countervailable subsidy rate.
- The production of subject merchandise is disparately spread between a few large producers and hundreds of small- and medium-sized enterprises (SMEs), leading to unequal distribution of subsidies by company size.  This unequal distribution of subsidies by the GOC and its provincial governments, augmented by COVID-19 during the POR, warrants a more inclusive approach by Commerce.
- In the absence of sampling, and the continued selection of respondents based on the largest export volumes, subsidies to SMEs escape Commerce's review and a portion of the lumber market is excluded from examination.  The subsidization of companies varies across the population of exporters/producers depending on the size of the company.[16]
- During the POR, programs created because of COVID-19 focused on sustaining the viability of SMEs adding to the variation in the GOC's distribution of subsidies to SMEs and large companies.[17]  Differing financial realities for large companies and SMEs resulted in a growth of subsidy programs targeted to SMEs in 2020.
- In the second administrative review, Commerce declined to use sampling stating, in part, "in order to construct a statistically valid sample using company size and geography as the petitioner suggests, we would need to select more than four mandatory respondents, given the number of provinces in Canada."[18]  The petitioner's request for sampling here omits geography as a sampling factor and addressing only company size.
- Stratification based on company size, as measured by import volume, could result in two to four strata.  This approach would allow Commerce to account for differences in the provision of subsidies.  Additionally, creating strata based on import volume allows Commerce to keep to the requirements for a statistically valid sample.[19]
- Lastly, the largest three companies by import value of the subject merchandise account for approximately [  ] percent of the total import value for the POR.  To reach a 50 percent threshold, Commerce would need to select the [    ] largest companies if it were to select mandatory respondents based on import value.

*Canfor's Comments*[20]
- Commerce should select the largest exporters by value as mandatory respondents and, based on this analysis, select Canfor as a mandatory respondent.
- Commerce should also collapse Canfor's export data with the export data of Canadian Forest Products Ltd. and Canfor Wood Products Marketing Ltd., which Commerce has previously found to be cross-owned with Canfor.

---

[15] *Id*. at 6-8 (citing *Antidumping Proceedings:  Announcement of Change in Department Practice for Respondent Selection in Antidumping Duty Proceedings and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings*, 78 FR 65,963 (November 4, 2013) (*Sampling Notice*)).

[16] *Id*. at 15-22.

[17] *Id*.

[18] *Id*. at 23 and Exhibit 3 (citing Memorandum, "Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada:  Respondent Selection," dated May 19, 2020 (Second Administrative Review Respondent Selection Memorandum) at 7).

[19] *Id*. at 23-24 (citing *Sampling Notice*, 78 FR at 65964).

[20] *See* Canfor's Comments at 2-4.

*J.D. Irving's Comments*[21]
- Commerce should examine the exporters/producers accounting for the largest volume of imports of subject merchandise to the United States during the POR and select at least [     ] mandatory respondents.
- The CBP data indicate that the [          ] exporters/producers by import value account for [  ] percent of the total value of imports for subject merchandise.
- Commerce's experience with the [          ] exporters/producers should minimize the resources required to individually examined each of them.
- Selecting the [          ] exporters/producers ensures that Commerce captures a broad representative sample of the export market in terms of import value and geographic coverage in Canada.

*Resolute's Comments*[22]
- Commerce must ensure that the mandatory respondents selected are not limited to one region of Canada and that its calculations are representative.
- In the prior reviews, Resolute was the only company whose operations were East of the Rocky Mountains and was the largest producer of softwood lumber in Québec and Ontario.
- Commerce should select at least the [     ] largest producers as mandatory respondents, thereby selecting Resolute as a mandatory respondent.  Commerce should also add together the reported values for [

                                        ] to obtain Resolute's total import value for the POR.

*Tolko's Comments*[23]
- Relying on the CBP data, Commerce should select, as the mandatory respondents, the exporters/producers accounting for the largest volume of the subject merchandise from Canada that can be reasonably examined, rather than selecting a sample of exporters/producers.

*West Fraser's Comments*[24]
- Commerce should select respondents based on the exporters/producers accounting for the largest volume of the subject merchandise from Canada that it determines can be reasonably examined.

*Canadian Parties Rebuttal Comments*[25]
- Commerce should follow the same reasoning articulated in the first and second administrative reviews and reject the petitioner's sampling proposal, including that the *Sampling Notice* applies to only AD cases.

---

[21] *See* J.D. Irving's Comments at 1-3.
[22] *See* Resolute's Comments at 2-4.
[23] *See* Tolko's Comments at 2-3.
[24] *See* West Fraser's Comments at 2-3
[25] *See* Canadian Parties Rebuttal Comments at 1-16.  The Canadian Parties are the Government of Canada and the Governments of Alberta, British Columbia, Manitoba, New Brunswick, Ontario, Québec, and Saskatchewan, as well as industry associations the Alberta Softwood Lumber Trade Council, British Columbia Lumber Trade Council, Conseil de l'industrie forestière du Québec, Ontario Forest Industry Association, NBLP, Canfor, JDIL, Resolute, Tolko, and West Fraser.

- The petitioner's comments reiterate many of the same sampling arguments made in the prior reviews, with the exception of abandoning geography as a selection factor and insisting that Commerce examine SMEs to capture divergent levels of subsidization across companies of different sizes.
- However, given that most of the subsidies under review are sub-national, if Commerce were to engage in sampling, any statistically valid methodology would have to account for the regional variations in subsidization. In fact, Commerce has noted the importance of geographical representation in the context of selecting mandatory respondents by largest export values.[26] And, as Commerce recognized in the prior reviews, selecting a statistically valid sample of respondents using the criteria of company size and geographic representativeness would require more than four mandatory respondents.
- The petitioner's claim that sampling should be used to select SMEs for review should be rejected because no evidence was submitted to show that: (1) subsidies received by large companies and SMEs differ in kind and amount; (2) if SMEs are not covered through sampling, the Canadian governments will evade review of subsidies by targeting lumber-producing SMEs; (3) an examination of SMEs will result in Commerce finding larger subsidy rates; and (4) SMEs are more likely to receive subsidies in the current economic climate because larger companies have better financial flexibility.
- The petitioner's sampling proposal would exacerbate resource constraints within Commerce by compressing the timeframe for Commerce's analysis of the programs and issues while adding additional complications by requiring Commerce to review companies with which it has no familiarity.
- Because sampling would increase the burden on the parties and Commerce, it is not a feasible option in this case. Commerce should select mandatory respondents that account for the largest volume of exports to the United States during the POR.

*NBLP's Rebuttal Comments*[27]
- Commerce should reject the petitioner's sampling proposal which fails for two reasons. First, the petitioner attempts to extend Commerce's rationale for resorting to sampling in AD administrative reviews to CVD administrative reviews. However, the sampling methodology does not apply to CVD.
- Second, the petitioner identifies little difference about the current CVD administrative review as compared with the first and second reviews where Commerce selected the largest exporters during the POR as mandatory respondents. In both prior reviews, Commerce's selection of the largest exporters as mandatory respondents was sufficient to address the petitioner's concerns. As such, there is no reason for Commerce to depart from its usual practice to select the largest exporters/producers as mandatory respondents.
- The time constraints of an administrative review make sampling a non-viable option which, if conducted, would place additional burdens on Commerce possibility having to review new companies and programs about which the agency is not familiar.

---

[26] *Id*. at 6-7 (citing Second Administrative Review Respondent Selection Memorandum at 7).
[27] *See* NBLP's Rebuttal Comments 3-11. The NBLP consists of Chaleur Sawmills LP (Chaleur Forest Products LP as of January 1, 2021); Delco Forest Products Ltd.; Devon Lumber Co. Ltd.; Fornebu Lumber Company Inc. (Chaleur Forest Products Inc. as of January 1, 2021); H.J. Crabbe & Sons Ltd.; Langevin Forest Products Inc.; Marwood Ltd.; North American Forest Products Ltd.; and Twin Rivers Paper Co. Inc.

Analysis

We do not agree with the petitioner's suggestion to use sampling to select mandatory respondents in this administrative review.  The time constraints of this review make sampling an unfeasible approach to respondent selection.  If Commerce were to conduct sampling, it would need to offer interested parties an opportunity to comment on the proposed sampling methodology and conduct the sampling at the conclusion of the 90-day period for withdrawal of review requests (*i.e.*, June 2, 2021).  The sampling process would further delay respondent selection and the issuance of the initial questionnaire which addresses well over a hundred different federal and provincial subsidy programs.  Sampling, therefore, would leave Commerce with insufficient time to review the complex responses of the respondents in this review.  This is a particular concern here, where the use of sampling may result in the review of one or more previously-unexamined companies and their use of subsidy programs that are unfamiliar to Commerce.

Further, Commerce does not have sampling criteria for CVD.  Notwithstanding that fact, we find that arguments by the petitioner does not warrant us departing from our normal practice in CVD of selecting the largest exporters/producers.  We disagree that SMEs, and not large companies, in the forestry industry are more likely to receive subsidies because of their limited financial flexibility to respond to unexpected market disruptions.  While the petitioner presented evidence showing a number of subsidies by the governments of Canada to lumber-producing SMEs in its comments, in the underlying investigation and first administrative review, we countervailed a total of 80 programs for the largest exporters.  Moreover, the petitioner has not provided a reasonable basis to believe or suspect that subsidy rates for lumber-producing SMEs would differ greatly from the subsidy rates for larger lumber-producing companies.  In fact, Commerce found the exact opposite in the *Lumber V Expedited Review*, determining *de minimis* rates for five companies, and rates ranging from 1.26 to 5.80 percent for three other companies.[28]

As discussed above, Commerce has the discretion to select respondents by sampling or by examining respondents accounting for the largest volume of the subject merchandise.  Consistent with Commerce's practice, we recommend selecting the largest exporters/producers as the mandatory respondents for this administrative review.

While Commerce's general practice under section 777A(e)(2)(A)(ii) of the Act is to select respondents accounting for the largest volume of subject merchandise imports, as in the first and second administrative reviews, we find that the volume data from CBP contain entry quantities that are denominated in several different units of measure (UOMs) (*i.e.*, cubic meters, square meters, kilograms, and number of pieces), and, for some entries, no quantity is reported.[29]  In addition to the missing volumes, the various UOMs are problematic because, for example, measurements of weight (*e.g.*, kilograms) cannot be converted to measurements of volume (*e.g.*, cubic meters) without making certain assumptions, and "number of pieces" simply cannot be converted to a measurement of volume.

---

[28] *See Certain Softwood Lumber Products from Canada:  Final Results of Countervailing Duty Expedited Review*, 84 FR 32121 (July 5, 2019) (*Lumber V Expedited Review*).
[29] *See* CBP Data.

The CBP data, however, contain value amounts for all entries of subject merchandise in the same unit of currency.[30]  Therefore, as in the prior reviews, we recommend relying on value data as a proxy for quantity and selecting respondents accounting for the largest value.  Using value as a proxy for quantity, where there are issues with the reported UOMs for entry quantities, is transparent and consistent with Commerce's approach in other proceedings as well as the prior administrative reviews of this order.[31]

To determine the total value and relative share of shipments for each potential respondent, we reviewed the CBP entry data for each company in terms of the aggregated value of imports of subject merchandise attributed to that company into the United States during the POR.  We combined the export values of companies with minor variations in the spelling of their names and companies found to be cross-owned affiliates in prior segments of this proceeding, and ranked these companies by the total value exported to the United States during the POR.[32]

After considering the CBP data, our resource constraints, as well as the complexity of the programs involved in this administrative review, we find that the office responsible for this review has the resources to examine three mandatory respondents.  An individual examination of the three largest exporters/producers by value of entries of subject merchandise during the POR will allow Commerce to capture the largest exporters/producers that can reasonably be examined, in light of resource constraints and in compliance with the statutory requirements.

Based on our analysis of the CBP data, the three exporters/producers with the largest value of entries of subject merchandise are, in alphabetical order:  Canfor, Resolute, and West Fraser.[33] All three companies requested an administrative review.[34]

Recommendation

For the reasons discussed above, we recommend selecting, in alphabetical order, Canfor, Resolute, and West Fraser as the mandatory respondents in this administrative review because they are the three largest exporters or producers that account for the largest value of subject merchandise entries during the POR.

---

[30] *See* CBP Data.

[31] *See* Second Administrative Review Respondent Selection Memorandum; *see also* Memorandum, "Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada:  Respondent Selection," dated May 17, 2019; and Memorandum, "Countervailing Duty Investigation of Rubber Bands from the People's Republic of China:  Respondent Selection," dated March 21, 2018.  Public versions of these memoranda are included in Attachment II to this memorandum.

[32] *See* Attachment I to this memorandum for a summary of the 10 largest Canadian exporters/producers.

[33] *See* Attachment I to this memorandum.

[34] *See* Canfor's Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858:  Request for Administrative Review and Request for Voluntary Respondent Treatment," dated January 6, 2021 (Canfor's Review Request) (barcode:  4071619); *see also* Resolute's Letter, "Softwood Lumber from Canada:  Request for Countervailing Duty Administrative Review and for Voluntary Respondent Treatment (1/1/2020 – 12/31/2020)," dated January 1, 2021 (Resolute's Review Request) (barcode:  4070795); and West Fraser's Letter, "Certain Softwood Lumber Products from Canada:  Request for Countervailing Duty Administrative Review and Request for Voluntary Respondent Treatment if Not Selected as a Mandatory Respondent," dated January 1, 2021 (West Fraser's Review Request) (barcode:  4070797).

☒                          ☐
_____          _____
Agree                      Disagree

## Issue 3:  Voluntary Respondents

<u>Applicable Statutory Provision</u>

When Commerce limits the number of exporters/producers examined in an administrative review, section 782(a) of the act directs Commerce to establish an individual countervailable subsidy rate for any exporter or producer not initially selected for individual examination that voluntarily submits the information requested from mandatory respondents, if (1) the information is submitted by the due date specified for exporters/producers initially selected for examination, and 2) the number of exporters/producers subject to the administrative review is not so large that any additional individual examination of such exporters and producers would be unduly burdensome and inhibit the timely completion of the administrative review.[35]  If the criteria are met, Commerce will select a voluntary respondent(s) based on the order in which the requests for voluntary respondent treatment were received.[36]

<u>Requests for Voluntary Respondent Treatment</u>

In alphabetical order, the following Canadian exporters/producers requested to be treated as voluntary respondents in this administrative review:  Canfor; J.D. Irving; Resolute; Tolko; and West Fraser.  Interested parties submitted comments regarding the chronological order in which requests to be treated as voluntary respondents were submitted in this administrative review.[37]

<u>Recommendation</u>

If any voluntary responses are submitted in accordance with the deadlines and other criteria set forth in section 782(a) of the Act and 19 CFR 351.204(d), we recommend evaluating the circumstances during the course of this administrative review to determine whether the individual examination of such companies would be unduly burdensome and inhibit the timely completion of the administrative review.  If we determine that the acceptance of a voluntary respondent(s) would not be onerous, then, at time, we will address the interested parties' comments on the chronological order in which requests for voluntary respondent treatment were filed in this administrative review.

---

[35] *See* section 782(a)(A) and (B) of the Act.
[36] *See Antidumping Duties and Countervailing Duties; Final Rule*, 62 FR 27296, 27310 (May 19, 1997).
[37] *See* J.D. Irving's Comments at 3-5; see also Resolute's Comments at 4-8; Tolko's Comments at 3-11; J.D. Irving's Rebuttal Comments at 2-9; and Tolko's Rebuttal Comments at 2-5.

Barcode:4235481-01 C-122-858 REV - Admin Review 1/1/21 - 12/31/21

☒

☐

_____

_____

Agree

Disagree

_____

Erin Begnal
Director
AD/CVD Operations, Office III

____April 20, 2021____
Date

Barcode:4235481-01 C-122-858 REV - Admin Review 1/1/21 - 12/31/21



UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

C-122-858
Administrative Review
POR: 01/01/2019 – 12/31/2019
**Public Version**
OFIII: BAS/SMB

**DATE:**              May 19, 2020

**MEMORANDUM TO:**     Erin Begnal
                       Director, Office III
                       Antidumping and Countervailing Duty Operations

**FROM:**              Benjamin A. Smith _BAS_
                       International Trade Compliance Analyst, Office III
                       Antidumping and Countervailing Duty Operations

                       Samuel M. Brummitt _SMB_
                       International Trade Compliance Analyst, Office III
                       Antidumping and Countervailing Duty Operations

**RE:**                Administrative Review of the Countervailing Duty Order on
                       Certain Softwood Lumber Products from Canada:  Respondent
                       Selection

---

## Summary

For the reasons detailed below, we recommend selecting, in alphabetical order, Canfor Corporation (Canfor), Resolute FP Canada Inc. (Resolute), and West Fraser Mills Ltd. (West Fraser) as the mandatory respondents in this countervailing duty (CVD) administrative review.

## Background

On January 2, 2020, the Department of Commerce (Commerce) published the notice of opportunity to request administrative review of antidumping duty (AD) and CVD orders with January anniversary dates.[1]  On March 10, 2020, Commerce initiated an administrative review of the CVD Order on softwood lumber from Canada, covering the January 1, 2019, through December 31, 2019 period of review (POR).[2]  The *Initiation Notice* identified 273 companies

---

[1] *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 85 FR 64 (January 2, 2020).
[2] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 FR 13860 (March 10, 2020) (*Initiation Notice*).  *See also Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 FR 19730 (April 8, 2020) (*Initiation Notice Correction*) (collectively, *Initiation Notices*).

that are subject to this review.[3]  In the *Initiation Notice*, Commerce stated that, in the event that we limit the number of respondents for individual examination, we intend to select respondents based on U.S. Customs and Border Protection (CBP) data for U.S. imports of softwood lumber during the POR.[4]  On March 30, 2020, we released the results of a CBP data query showing the import values for the POR to all interested parties under an Administrative Protective Order and invited parties to submit comments regarding the entry data and our respondent selection methodology.[5]  We received comments from several interested parties on April 6, 2020,[6] and rebuttal comments on April 16, 2020.[7]

## Issue 1:  Limiting Examination to a Reasonable Number of Companies

*Applicable Statutory Provision*

Section 777A(e)(1) of the Tariff Act of 1930, as amended (the Act), directs Commerce to determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.  Commerce, however, may limit its examination to a reasonable number of exporters or producers under section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2), if it determines that it is not practicable to calculate individual countervailable subsidy rates because of the large number of exporters or producers involved in the administrative review.

---

[3] *See Initiation* Notice, 85 FR at 13868-13872.

[4] *Id.*, 85 FR at 13860.

[5] *See* Memorandum, "Certain Softwood Lumber Products from Canada:  Countervailing Duty Order, Second Administrative Review; Release of U.S. Customs and Border Protection Query," dated March 30, 2020 (CBP Memorandum), and accompanying CBP Data.

[6] *See* the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations' (the petitioner) Letter, "Certain Softwood Lumber Products from Canada:  Comments on CBP Data and Request for Sampling," dated April 6, 2020 (The Petitioner's Comments); *see also* Canfor Corporation's (Canfor) Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858:  Comments on CBP Data and Respondent Selection Methodology," dated April 6, 2020 (Canfor's Comments); J.D. Irving, Limited's (J.D. Irving) Letter, "Certain Softwood Lumber Products from Canada: Respondent Selection Comments," dated April 6, 2020 (J.D. Irving's Comments); Tolko Marketing and Sales Ltd. and Tolko Industries Ltd.'s (Tolko) Letter, "Certain Softwood Lumber Products from Canada:  CBP Data and Respondent Selection Comments," dated April 6, 2020 (Tolko's Comments); and West Fraser Mills Ltd.'s (West Fraser) Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858:  Comments on CBP Data and Respondent Selection," dated April 6, 2020 (West Fraser's Comments).

[7] *See* Letter from Brunswick Valley Lumber Inc., Chaleur Sawmills LP, Delco Forest Products Ltd., Devon Lumber Co. Ltd., Fornebu Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Paper Co. Inc. regarding "Certain Softwood Lumber Products from Canada: Rebuttal to Petitioner's Comments on CBP Data and Request for Sampling," dated April 16, 2020; Letter from J.D. Irving regarding, "Certain Softwood Lumber Products from Canada: Rebuttal Respondent Selection Comments," dated April 16, 2020; and Letter from the Government of Canada and the Governments of Alberta, British Columbia, Manitoba, New Brunswick, Ontario, Québec, and Saskatchewan, as well as industry associations Alberta Softwood Lumber Trade Council, British Columbia Lumber Trade Council, Conseil de l'industrie forestière du Québec, Ontario Forest Industry Association, and New Brunswick Lumber Producers, and Canfor Corporation ("Canfor"), J.D. Irving, Limited ("Irving"), Resolute FP Canada Inc. ("Resolute"), Tolko Marketing and Sales Ltd. and Tolko Industries Ltd. ("Tolko"), and West Fraser Mills Ltd. ("West Fraser"), regarding "Countervailing Duty Administrative Review of Certain Softwood Lumber Products from Canada: Canadian Parties' Rebuttal to Petitioner's Comments on CBP Import Data and Respondent Selection," dated April 16, 2020, (collectively, the Canadian Parties) (Canadian Parties' Rebuttal Comments).

*Interested Party Comments*

No party argued that Commerce should examine all known exporters and producers of softwood lumber from Canada.

*Analysis*

The *Initiation Notice* identified 273 exporters or producers of softwood lumber from Canada,[8] and the CBP data indicate that there are potentially [    ] companies with entries during the POR under the Harmonized Tariff Schedule of the United States numbers listed in the scope of the order.[9]  Ideally, in an administrative review, Commerce would examine all exporters and producers for which a review has been initiated, regardless of each individual exporter's/producer's export volume or value, as reflected in section 777A(e)(1) of the Act. However, in instances where Commerce must limit its examination due to the large number of potential respondents relative to its resource constraints, Commerce will examine as many exporters or producers as is practicable, consistent with its statutory obligation.

Because section 777A(e)(2) of the Act does not define a "large number of exporters or producers," we find that the 273 exporters or producers for which an administrative review was initiated constitutes a large number.  Accordingly, we conclude that it would not be practicable in this administrative review to examine each exporter or producer individually for which a review has been initiated and determine an individual net countervailable subsidy rate for each.

Individually reviewing all exporters or producers for which a review has been initiated would require significant resources for Commerce to analyze each company's corporate structure, financial records, and participation in the subsidy programs which Commerce will be examining in this administrative review.  In addition, Commerce must examine the same categories of information for all companies determined during the course of this administrative review to be "cross-owned" with the respondents, pursuant to 19 CFR 351.525(b)(6)(vi).  Such cross-owned companies can include the respondents' input suppliers and parent companies, for example. Moreover, Commerce must solicit and analyze information from the Government of Canada and the provincial and local governments during the course of the administrative review, further limiting Commerce's available resources.

In addition to this administrative review, Office III, the office to which this review is assigned, is conducting numerous concurrent AD and CVD proceedings.[10]  The number and complexity of the programs in this administrative review, in particular the provincial provision of stumpage for

---

[8] *See Initiation Notice*, 85 FR at 13860-13876.

[9] *See* CBP Data.

[10] Examples include (both investigations and reviews), but are not limited to:  carbon and certain alloy steel wire rod from Mexico; certain cut-to-length carbon-quality steel plate from Korea; certain pasta from Italy; circular welded carbon steel pipes and tubes from Turkey; citric acid from Belgium, Colombia, and Thailand; common alloy aluminum sheet from Brazil and South Africa; corrosion-resistant steel products from Taiwan; dioctyl terephthalate from Korea; light-walled rectangular pipe and tube from Mexico; lined paper products from India; magnesium metal from China; non-refillable steel cylinders from China; polyethylene retail carrier bags from Malaysia; polyethylene terephthalate sheet from Korea; pure magnesium from China; steel concrete reinforcing bar from Mexico; and uncovered innerspring units from Vietnam.

3

less than adequate remuneration, combined with overlapping statutory deadlines of other AD and CVD proceedings, as well as Office III's additional workload, places a significant constraint on the number of analysts that can be assigned to this administrative review and, thus, limit the number of respondents that Commerce can reasonably examine.  Moreover, because of the significant workload throughout Enforcement and Compliance, Office III does not anticipate receiving any additional resources to devote to this administrative review.

In light of the large number of exporters or producers of softwood lumber from Canada subject to this administrative review, Commerce's current resource constraints and practical considerations outlined above, and after careful consideration, we find that it is not practicable to individually examine all exporters and/or producers of softwood lumber from Canada for which a review has been initiated, as directed by section 777A(e)(1) of the Act.

*Recommendation*

For the reasons discussed above, we recommend limiting Commerce's examination of respondents in this administrative review to a reasonable number of exporters or producers, consistent with section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2).

☒                            ☐
_____          _____
Agree                        Disagree

**Issue 2:  Methodology and Selection of Respondents**

*Applicable Statutory Provision*

Where it is not practicable to examine all exporters or producers of the subject merchandise for which a review has been initiated, section 777A(e)(2) of the Act permits Commerce to determine individual countervailable subsidy rates for a reasonable number of exporters or producers, by limiting its examination to (A) a sample of exporters or producers that it determines is statistically valid based on the information available at the time of selection, or (B) exporters or producers accounting for the largest volume of the subject merchandise from the exporting country that Commerce determines can be reasonably examined.[11]  The Act does not express a preference for either methodology.[12]  The Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA) interprets this provision to mean that the authority to select respondents, whether by using a "statistically valid" sample or by examining respondents accounting for the largest volume of the merchandise under consideration, rests exclusively with Commerce.[13]  Further, section 777A(e)(2) of the Act does not require Commerce to meet a minimum threshold in determining the number of mandatory respondents.

---

[11] *See* section 777A(e)(2)(A)(i) and (ii) of the Act.
[12] *See* section 777A(c)(2)(A)-(B) of the Act.
[13] *See* SAA, H.R. Doc. No. 103-316, Vol. 1 at 872 (1994).

4

Interested parties submitted comments on the method Commerce should use to limit the number of mandatory respondents, which we address below.

*West Fraser Comments*
- Commerce should select the largest Canadian producers/exporters of softwood lumber as the mandatory respondents.[14]

*J.D. Irving Comments*
- Commerce should select at least [     ] mandatory respondents that account for the largest value of imports of subject merchandise from Canada during the POR.  The CBP data indicate that the [             ] Canadian producers/exporters by value account for [  ] percent of the total value of imports of subject merchandise from Canada during the POR.  Selecting [             ] Canadian producers/exporters would allow Commerce to meet its statutory objective to capture a broad representative sample – in terms of import value and geographic coverage – of the Canadian market.[15]  If Commerce selects fewer than [     ] mandatory respondents, it should accept J.D. Irving as a voluntary respondent.[16]

*Tolko Comments*
- Commerce should select the four or five largest Canadian producers/exporters and should include Tolko in this review, either as a mandatory respondent [          ], or as a voluntary respondent.[17]

*Canfor Comments*
- Commerce should select the largest exporters by value as mandatory respondents and, based on this analysis, select Canfor as a mandatory respondent.[18]  Furthermore, Commerce should collapse Canfor's export data with the export data of two companies, Canadian Forest Products Ltd. and Canfor Wood Products Marketing Ltd., which Commerce has previously found to be cross-owned with Canfor.[19]

*Petitioner Comments*
- Citing to the *Sampling Notice*,[20] the petitioner argues that Commerce should use sampling to select mandatory respondents because of the composition of Canadian producers that are disparately spread between a few large producers and hundreds of small/medium-sized

---

[14] *See* West Fraser's Comments at 2-3.

[15] *See* J.D. Irving's Comments at 2-3 (citing *Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1329-30 (CIT 2015) (citing 19 U.S.C. § 1677f-1(c)(2))).

[16] *See* J.D. Irving's Comments at 3 (citing J.D. Irving's Letter, "Request for Administrative Review and Request for Voluntary Respondent Treatment," dated January 1, 2020 at 3-5).

[17] *See* Tolko's Comments at 3.

[18] *See* Canfor's Comments at 2-4.

[19] *Id.* at 2-3 (citing *Certain Softwood Lumber Products from Canada:  Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances*, 82 FR 51814, 51816 (November 8, 2017)).

[20] *See Antidumping Proceedings:  Announcement of Change in Department Practice for Respondent Selection in Antidumping Duty Proceedings and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings*, 78 FR 65963 (November 4, 2013) (*Sampling Notice*).

Filed By: John Hoffner, Filed Date: 4/27/22 9:39 AM, Submission Status: Approved

companies.[21]
- The subsidies provided by the Government of Canada and provincial/local governments are not evenly distributed by company and by region and the only method to obtain a representative and accurate subsidy rate is through sampling that permits producers in all regions of all sizes to be selected as respondents.[22]
- This proceeding should warrant resources to examine four mandatory respondents rather than two respondents that Commerce typically chooses in an administrative review.[23]

*Canadian Parties Rebuttal Comments*
- Commerce should reject the petitioner's arguments to use sampling.[24]  Commerce rejected similar arguments for the use of sampling in the first administrative review, and the petitioner has presented no new facts or arguments that would prompt Commerce to reconsider the use of sampling in this review.[25]
- The sampling methodology was developed for AD – not CVD – proceedings to address the enforcement concern that exporters accounting for smaller volumes of subject merchandise will lower their prices as they recognize that their pricing behavior will not affect the AD rates assigned to them.[26]  Such individual company pricing behavior is not an issue in CVD proceedings and is therefore not a justification to use sampling in this proceeding.[27]
- Commerce's AD sampling method captures a variety of company sizes but does not take into account location.[28]
- There is no basis to the petitioner's assumption that an examination of small companies would result in Commerce finding larger subsidy rates, or that the Government of Canada would selectively subsidize small- and medium-sized enterprises (SME), as there is no evidence of countervailable programs that focus on small- and medium-sized enterprises.[29]  Further, there is no evidence that the smaller companies examined in the Expedited Review received different subsidies based on company size.[30]
- Selecting respondents using the sampling method could only be done after the 90-day period for withdrawal of requests for administrative review and would unreasonably reduce the time available for Commerce to analyze the issues in this review.[31]

*Brunswick Valley Lumber et al. Rebuttal Comments*
- Commerce should reject the petitioner's arguments for the use of sampling to select mandatory respondents in this review.[32]

*Analysis*

---

[21] *See* Petitioner's Comments at 2-40.
[22] *Id*. at 15-18.
[23] *Id*. at 18 and 20.
[24] *See* Canadian Parties' Rebuttal Comments at 2.
[25] *Id.* at 3-5.
[26] *Id*. at 5-6.
[27] *Id*.
[28] *Id.* at 6.
[29] *Id.* at 7-9 and 12-13.
[30] *Id.* at 7-8.
[31] *Id.* at 9-12.
[32] *See* Brunswick Valley Lumber et al.'s Rebuttal Comments.

Although the Act allows for sampling in CVD proceedings, we find that it is not feasible in this administrative review to achieve a statistically valid sample as the statute requires. The petitioner argues that sampling is warranted because there are wide variances in both the size of lumber companies and the level of subsidization between and even within provinces. The petitioner also argues that we should devote resources to select, *i.e.*, individually examine, at least four mandatory respondents in this review. However, in order to construct a statistically valid sample using company size and geography as the petitioner suggests, we would need to select more than four mandatory respondents, given the number of provinces in Canada. For example, a sample stratified even fairly simply by size (small, medium or large), and by Canada's ten provinces, would require selecting at least 30 companies (*i.e.*, at least one small, medium, and large company for each of the ten provinces). To assuage the petitioner's concerns about differing subsidization *within* certain provinces would likely require even more. Selecting four companies, as the petitioner suggests, would require drastically simplifying the sample stratification further, *e.g.*, to large or small, and east or west, which would likely fail to address the petitioner's concern regarding the variance in subsidization levels among provinces and sub-provinces.

In this review, we have determined to select three mandatory respondents that account for the largest share of imports of subject merchandise, by value, during the POR. Thus, our decision to select three mandatory respondents renders moot the petitioner's argument for a sample-based respondent selection methodology, which requires a larger number of respondents in order to be adequately stratified by size, location, and variance in usage of alleged subsidy programs. Further, by selecting the three largest producers/exporters as mandatory respondents, we will be examining the provision of subsidies in the four largest lumber-producing Canadian provinces (*i.e.*, Alberta, British Columbia, Ontario, and Québec), thus addressing one of the concerns raised by the petitioner that there is a wide variance in the level of subsidization between provinces.

While our general practice under section 777A(e)(2)(A)(ii) of the Act is to select respondents accounting for the largest volume of subject merchandise imports that can be reasonably examined, in the prior review, we found that the volume data from CBP contained entry quantities that were denominated in several different units of measure, and, for some entries, no quantity was reported.[33] The CBP data contained value amounts for all entries of merchandise in the same unit of currency, and we found that the overall volumes were generally correlated and with the value of imports; therefore, we relied on value data as a proxy for quantity and selected respondents accounting for the largest value.[34]

The *Initiation Notice* in this review stated that, in the event Commerce limits the number of respondents for individual examination, we intend to select respondents based on CBP data.[35] Accordingly, we obtained CBP entry data and, consistent with the prior review and to ensure uniformity in the analysis, we requested entry data that consists of value figures for all imports of subject merchandise into the United States during the POR.

---

[33] *See* Attachment II.
[34] *Id.*
[35] *See Initiation Notice*, 85 FR 13860.

7

To determine the total value and relative share of shipments for each potential respondent, we reviewed the CBP entry data for each company in terms of the aggregated value of imports of subject merchandise attributed to that company into the United States during the POR.  We combined the export values of companies with minor variations in the spelling of their names and companies found to be cross-owned affiliates in the underlying investigation, and ranked these companies by the total value exported to the United States during the POR.[36]

Thus, for the reasons stated above, and after considering the CBP data, our resource constraints, as well as the complexity of the programs involved in this administrative review, we find that the office responsible for this review has the resources to examine three mandatory respondents.  An individual examination of the three largest exporter/producers by value of entries of subject merchandise during the POR will allow Commerce to capture the largest exporters/producers that can reasonably be examined, in light of resource constraints and in compliance with the statutory requirements.  Based on our analysis of the CBP data, the three exporters and producers with the largest value of entries of subject merchandise are, in alphabetical order:  Canfor, Resolute, and West Fraser.[37]  All three companies requested an administrative review.[38]

*Recommendation*

For the reasons discussed above, we recommend selecting, in alphabetical order, Canfor, Resolute, and West Fraser as the mandatory respondents in this administrative review because they are the three largest exporters or producers that account for the largest value of subject merchandise entries.

☒                      ☐

_____        _____
Agree                  Disagree

**Issue 3:  Voluntary Respondents**

*Applicable Statutory Provision*

When Commerce limits the number of exporters and producers examined in an administrative review, section 782(a) of the act directs Commerce to establish an individual countervailable subsidy rate for any exporter or producer not initially selected for individual examination that voluntarily submits the information requested from mandatory respondents, if (1) the information is submitted by the due date specified for exporters or producers initially selected for

---

[36] *See* Attachment I to this memorandum for a summary of the 10 largest Canadian exporters/producers.

[37] *See* Attachment I to this memorandum.

[38] *See* Canfor's Letter, "Certain Softwood Lumber Products from Canada. Case No. C-122-858:  Request for Administrative Review," dated January 10, 2020; *see also* Resolute's Letter, "Softwood Lumber from Canada: Request for Countervailing Duty Administrative Review and for Voluntary Respondent Treatment (1/1/2019-12/31/2019)," dated January 2, 2020; and West Fraser's Letter, "Certain Softwood Lumber Products from Canada, Case No. C-122-858: Countervailing Duty Administrative Review and Request for Voluntary Respondent Treatment if Not Selected as a Mandatory Respondent," dated January 16, 2020.

8

examination, and 2) the number of exporters and producers subject to the administrative review is not so large that any additional individual examination of such exporters and producers would be unduly burdensome and inhibit the timely completion of the administrative review.[39]

*Requests for Voluntary Respondent Treatment*

In alphabetical order, the following Canadian exporters and producers requested to be treated as voluntary respondents in this administrative review:  J.D. Irving, Resolute, and Tolko.[40]

Interested parties submitted comments regarding the chronological order in which requests to be treated as voluntary respondents were submitted in this administrative review, which we address below.

*Tolko's Comments*
- Commerce's practice is to consider submissions filed after 5:00 p.m. on one day as being filed the next business day; therefore, Tolko's request for treatment as a voluntary respondent filed shortly after 5:00 p.m. on December 31, 2019 is the first request for voluntary treatment in this review.[41]

*J.D. Irving's Comments*
- J.D. Irving was the first to submit its request for voluntary respondent treatment on January 1, 2020, at 12:00:00 am, which under 19 CFR 351.213(b)(2) is the earliest date on which an exporter may request a review in an administrative review of an order with a publication date in January.[42]

*Petitioner's Comments*
- Commerce's regulation appears to be ambiguous as to whether requests for review must be submitted during the anniversary month, or whether they can precede that anniversary month. Commerce's regulations also appear to contemplate that documents filed after the close of business will be deemed filed the next day.[43]

*Tolko's Rebuttal Comments*

---

[39] *See* section 782(a)(A) and (B) of the Act.
[40] *See* Tolko's Letter, "Certain Softwood Lumber Products from Canada:  Administrative Review Request & Request for Voluntary Respondent Treatment," dated January 1, 2020; *see also* J.D. Irving's Letter, "Certain Softwood Lumber Products from Canada:  Request for Administrative Review and Request for Voluntary Respondent Treatment," dated January 1, 2020; and Resolute's Letter, "Softwood Lumber from Canada:  Request for Countervailing Duty Administrative Review and for Voluntary Respondent Treatment (1/1/2019-12/31/2019)," dated January 2, 2020.
[41] *See* Tolko's Comments at 5-6.
[42] *See* J.D. Irving's Comments at 4-5.
[43] *See* Petitioner's Rebuttal at 47 (citing 19 CFR 351.103(b), which establishes the APO/Dockets Unit's office hours as 8:30 a.m. to 5:00 p.m. Eastern Time on business days and 19 CFR 351.303(b)(1) ("An electronically filed document must be received successfully in its entirety. . . by 5 p.m. Eastern Time on the due date.")).

9

- There is no ambiguity as to which voluntary request the Department should consider to have been filed first. Commerce normally treats filings after 5:00 p.m. as deemed filed the next business day.[44]

*J.D. Irving's Rebuttal Comments*

- Under 19 CFR 351.213(b)(2), an exporter may request a review during the *anniversary month* of the order's publication, therefore, Tolko claim to be the first party to submit a request for voluntary treatment based on its December 31, 2019 submissions is incorrect.[45]
- While the petitioner claims that the language in the statute appears to be ambiguous as to whether requests for review must be submitted during the anniversary month, the plain language of 19 CFR 351.213(b)(2) indicates that "may" refers to the exporter's choice as to whether to request a review – not when its request for review must be made. The statute unambiguously requires that requests for review be submitted "during the anniversary month."[46]
- While Tolko states that it is Commerce's practice to consider submissions filed after 5:00 p.m. as being filed the next business day, this practice does not override the regulatory requirement under 19 CFR 351.213(b)(2) that review requests be made "during the anniversary month."[47]

*Analysis*

Commerce will consider whether to examine voluntary respondents under the following conditions:

      a. The voluntary respondent must have met the filing deadlines for all requests for information (and otherwise comply with all other regulatory deadlines);[48]

      b. Commerce will select voluntary respondents based on the order in which the requests are received.[49]

Once selected, a voluntary respondent that subsequently decides not to cooperate in the administrative review will be treated in the same manner as a mandatory respondent that fails to cooperate.[50] As Tolko and J.D. Irving contest which request for voluntary treatment was received first, we looked to 19 CFR 351.213(b), which states that, "Each year during the anniversary month of the publication of an antidumping or countervailing duty order, a domestic interested party or an interested party described in section 771(9)(B) of the Act (foreign government) may request in writing that the Secretary conduct an administrative review under section 751(a)(1) of the Act of specified individual exporters or producers covered by an order…" Further, 19 CFR 351.303(b) states that, "An electronically filed document must be

---

[44] *See* Tolko's Rebuttal Comments at 2-3.

[45] *See* J.D. Irving's Rebuttal Comments at 2-3.

[46] *See* J.D. Irving's Rebuttal Comments at 3 (citing 19 CFR 351.213(b)(1) and (b)(2); and *Neo Solar Power Corp. v. United States*, 190 F. Supp. 3d 1255, 1262-63 (CIT 2016) (affirming Commerce's decision to reject a review request filed after the anniversary month)).

[47] *Id.* at 5-6.

[48] *See* section 782(a) of the Act.

[49] *See Antidumping Duties and Countervailing Duties; Final Rule*, 62 FR 27296, 27310 (May 19, 1997).

[50] *See* 19 CFR 351.204(d)(2).

received successfully in its entirety by the Department's electronic records system, ACCESS, by 5 p.m. Eastern Time on the due date."  Furthermore, the CVD *Preamble* states that "we intend to accept voluntary responses based on the order in which written requests to be accepted as voluntary respondents are submitted."[51]  It has been Commerce's practice to consider a document filed after 5 p.m. and zero seconds, but before 5:01 p.m., as filed at 5:00 pm.  In other words, if a respondent files a submission at 5 p.m. and 1 second, and another document at 5 p.m. and 56 seconds, Commerce treats both submissions as filed at 5:00 pm.  It is once the clock turns to 5:01 pm, any filing then or afterward becomes a filing of the subsequent business day.

Because Tolko's first request for voluntary treatment was filed at 5 p.m., but before 5:01 p.m., on December 31, 2019, we therefore determine that it was filed on December 31, 2019, which is the preceding calendar month of the January anniversary month of the publication of the CVD order. Accordingly, Tolko filed its first request for voluntary respondent treatment too early for consideration.

J.D. Irving filed its request to be selected as a voluntary respondent at 12:00:00 a.m. on January 1, 2020, which was during the anniversary month of the order.  Tolko refiled its submission at 12:00:06 a.m. also on January 1, 2020.  Resolute filed its request for voluntary respondent treatment at 10:54 a.m. on January 2, 2020.  Thus, we received the requests for voluntary treatment in the following chronological order:  J.D. Irving, Tolko, and Resolute.

*Recommendation*

If any voluntary responses are submitted in accordance with the deadlines and other criteria set forth in section 782(a) of the Act and 19 CFR 351.204(d), we recommend evaluating the circumstances during the course of this administrative review to determine whether the individual examination of such companies would be unduly burdensome and inhibit the timely completion of the administrative review.

☒                              ☐

_____      _____
Agree                      Disagree

*Erin Begnal*

_____
Erin Begnal
Director, Office III
AD/CVD Operations

May 19, 2020
Date

---

[51] *See Final Rule*, 62 FR at 27310.

C-122-858

Barcode:4235481-01 C-122-858 REV - Admin Review 4/28/17 - 12/31/...

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

C-122-858
Administrative Review
POR:  04/28/2017 – 12/31/2018
PUBLIC VERSION ~~Proprietary Document~~
OFIII:  KJ

**DATE:**               May 17, 2019

**MEMORANDUM TO:**      Erin Begnal
                        Director, Office III
                        Antidumping and Countervailing Duty Operations

**FROM:**               Kristen Johnson
                        International Trade Compliance Analyst, Office III
                        Antidumping and Countervailing Duty Operations

**RE:**                 Administrative Review of the Countervailing Duty Order on Certain
                        Softwood Lumber Products from Canada:  Respondent Selection

## Summary

For the reasons detailed below, we recommend selecting, in alphabetical order, Canfor
Corporation (Canfor), Resolute FP Canada Inc. (Resolute), and West Fraser Mills Ltd. (West
Fraser), as the mandatory respondents in this countervailing duty (CVD) administrative review.

## Background

On January 3, 2018, the Department of Commerce (Commerce) published in the *Federal Register*
the CVD order on certain softwood lumber products (softwood lumber) from Canada.[1]  On
February 8, 2019, Commerce published a notice of opportunity to request an administrative review
of the *Order*.[2]

On April 1, 2019, Commerce initiated an administrative review of the *Order* on softwood lumber
from Canada, covering the period of April 28, 2017, through December 31, 2018.[3]  The *Initiation
Notice* identified 1,225 companies that are subject to this review.[4]  In the *Initiation Notice*,
Commerce stated that, in the event that we limit the number of respondents for individual
examination, we intend to select respondents based on U.S. Customs and Border Protection (CBP)

---

[1] *See Certain Softwood Lumber Products from Canada:  Amended Final Affirmative Countervailing Duty
Determination and Countervailing Duty Order*, 83 FR 347 (January 3, 2018) (*Order*).
[2] *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request
Administrative Review*, 84 FR 2816 (February 8, 2019).
[3] *See Certain Softwood Lumber Products from Canada:  Initiation of Antidumping and Countervailing Duty
Administrative Reviews*, 84 FR 12209 (April 1, 2019) (*Initiation Notice*).
[4] *Id.* at 12210-12227.

data for U.S. imports of softwood lumber during the period of review (POR).[5]  On April 2, 2019, we released the results of a CBP data query showing the import volumes and values for the POR to all interested parties under an Administrative Protective Order and invited parties to submit comments regarding the entry data and our respondent selection methodology.[6]  We received comments from several interested parties on April 9, 2019,[7] and rebuttal comments on April 15 and 16, 2019.[8]

**Issue 1:  Limiting Examination to a Reasonable Number of Companies**

*Applicable Statutory Provision*

Section 777A(e)(1) of the Tariff Act of 1930, as amended (the Act), directs Commerce to determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.  Commerce, however, may limit its examination to a reasonable number of exporters or producers under section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2), if it determines that it is not practicable to calculate individual countervailable subsidy rates because of the large number of exporters or producers involved in the administrative review.

*Interested Party Comments*

No party argued that Commerce should examine all known exporters and producers of softwood lumber from Canada.

---

[5] *Id*. at 12209.
[6] *See* Memorandum regarding, "First Administrative Reviews of the Antidumping and Countervailing Duty Orders on Certain Softwood Lumber Products from Canada: Results of Customs and Border Protection Queries," dated April 2, 2019 (CBP Memorandum), and accompanying CBP Data.
[7] *See* Letter from the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (the petitioner) regarding, "Certain Softwood Lumber Products from Canada: Comments on CBP Import Data and Respondent Selection," dated April 9, 2019 (Petitioner's Comments); Letter from Canfor regarding "Certain Softwood Lumber Products from Canada, Case No. C-122-858: Comments on CBP Data and Respondent Selection," dated April 9, 2019 (Canfor's Comments); Letter from J.D. Irving Limited (J.D. Irving) regarding, "Certain Softwood Lumber Products from Canada: Respondent Selection Comments," dated April 9, 2019 (J.D. Irving's Comments); Letter from Resolute regarding "Softwood Lumber from Canada: Respondent Selection – Comments on CBP Data," dated April 9, 2019 (Resolute's Comments); and Letter from West Fraser regarding, "Certain Softwood Lumber Products from Canada, Case No. C-122-858: Comments on CBP Data and Respondent Selection," dated April 9, 2019 (West Fraser's Comments).
[8] *See* Letter from Brunswick Valley Lumber Inc., Chaleur Sawmills LP, Delco Forest Products Ltd., Devon Lumber Co. Ltd., Fornebu Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., Twin Rivers Paper Co. Inc., regarding "Certain Softwood Lumber Products from Canada: Rebuttal to Petitioner's Comments on CBP Import Data and Respondent Selection," dated April 15, 2019; Letter from J.D. Irving regarding, "Certain Softwood Lumber Products from Canada: Rebuttal Respondent Selection Comments," dated April 15, 2019; and Letter from the Government of Canada and the Governments of Alberta, British Columbia, Manitoba, New Brunswick, Ontario, Québec, and Saskatchewan as well as industry associations Alberta Softwood Lumber Trade Council, British Columbia Lumber Trade Council, Conseil de l'industrie forestiére du Québec, Ontario Forest Industry Association, and New Brunswick Lumber Producers, and Canfor, J.D. Irving, Resolute, Tolko Marketing and Sales Ltd. and Tolko Industries Ltd. (Tolko), and West Fraser, regarding "Countervailing Duty Administrative Review of Certain Softwood Lumber Products from Canada:  Canadian Parties' Rebuttal to Petitioner's Comments on CBP Import Data and Respondent Selection," dated April 16, 2019, (collectively, the Canadian Parties) (Canadian Parties' Rebuttal Comments).

2

*Analysis*

The *Initiation Notice* identified 1,225 exporters or producers of softwood lumber from Canada,[9] and the CBP data indicate that there are potentially [    ] companies with entries during the POR under the Harmonized Tariff Schedule of the United States numbers listed in the scope of the order.[10]  Ideally, in an administrative review, Commerce would examine all exporters and producers for which a review has been initiated, regardless of each individual exporter's/producer's export volume or value, as reflected in section 777A(e)(1) of the Act. However, in instances where Commerce must limit its examination due to the large number of potential respondents relative to its resource constraints, Commerce will examine as many exporters or producers as is practicable, consistent with its statutory obligation.

Because section 777A(e)(2) of the Act does not define a "large number of exporters or producers," we must determine what constitutes a "large number of exporters or producers" based on the particular facts of each individual proceeding.  In this proceeding, we find that the 1,225 exporters or producers for which an administrative review was initiated constitutes a large number. Accordingly, we conclude that it would not be practicable in this administrative review to examine each exporter or producer individually for which a review has been initiated and determine an individual net countervailable subsidy rate for each.

Individually reviewing all exporters or producers for which a review has been initiated would require significant resources for Commerce to analyze each company's corporate structure, financial records, and participation in the subsidy programs which Commerce will be examining in this administrative review.  In addition, Commerce must examine the same categories of information for all companies determined during the course of this administrative review to be "cross-owned" with the respondents, pursuant to 19 CFR 351.525(b)(6)(vi).  Such cross-owned companies can include the respondents' input suppliers and parent companies, for example. Moreover, Commerce must solicit and analyze information from the Government of Canada and the provincial and local governments during the course of the administrative review, further limiting Commerce's available resources.

In this proceeding, we are examining hundreds of subsidy programs many of which involve complex analyses.  For example, we are examining the provision of stumpage by several provinces and the purchase of electricity by provincial utilities.  During the course of the review, we will need to issue questionnaires to the central, provincial, and local governments.  Thus, it would not be practicable to calculate individual countervailable subsidy rates for each of the exporters or producers, in light of the amount of work that would be required and the resources available to Commerce to conduct this administrative review.

In addition to this administrative review, Office I and Office III, the offices to which this review is assigned, are conducting numerous concurrent antidumping (AD) and CVD proceedings[11] and do

---

[9] *See Initiation Notice*, 84 FR at 12210-12227.
[10] *See* CBP Data.
[11] Examples for Office I include (both investigations and reviews), but are not limited to:  circular welded non-alloy steel pipe from the Republic of Korea, certain cut-to-length carbon-quality steel plate from the Republic of Korea, stainless steel bar from India, welded carbon steel pipe and tube from India, diamond sawblades from China, cold-

not have the resources available to examine all exporters or producers for which a review has been initiated.  The number and complexity of the programs in this administrative review, in particular the provincial provision of stumpage for less than adequate remuneration, combined with overlapping statutory deadlines of other AD and CVD proceedings, as well as Office I's and Office III's additional workloads, place a significant constraint on the number of analysts that can be assigned to this administrative review and, thus, limit the number of respondents that Commerce can reasonably examine.  Moreover, because of the significant workload throughout Enforcement and Compliance, Office I and Office III do not anticipate receiving any additional resources to devote to this administrative review.

In light of the large number of exporters or producers of softwood lumber from Canada subject to this administrative review, Commerce's current resource constraints and practical considerations outlined above, and after careful consideration, we find that it is not practicable to individually examine all exporters and/or producers of softwood lumber from Canada for which a review has been initiated, as directed by section 777A(e)(1) of the Act.

*Recommendation*

For the reasons discussed above, we recommend limiting Commerce's examination of respondents in this administrative review to a reasonable number of exporters or producers, consistent with section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2).

☒                          ☐
_____          _____
Agree                     Disagree

**Issue 2:  Methodology and Selection of Respondents**

*Applicable Statutory Provision*

Where it is not practicable to examine all exporters or producers of the subject merchandise for which a review has been initiated, section 777A(e)(2) of the Act permits Commerce to determine individual countervailable subsidy rates for a reasonable number of exporters or producers, by limiting its examination to (A) a sample of exporters or producers that it determines is statistically

---

rolled steel flat products from the United Kingdom, hot-rolled steel from the Netherlands, oil country tubular goods from Turkey, steel cylinders from China, polyethylene retail carrier bags from China, stilbenic optical brightening agents from Taiwan, freshwater crawfish tail meat from China, magnesium from Israel, carbon and alloy steel threaded rod from China and Taiwan, and refillable stainless steel kegs from China, Germany, and Mexico.  Examples for Office III include (both investigations and reviews), but are not limited to:  carbon and certain alloy steel wire rod from Mexico; certain cut-to-length carbon-quality steel plate from Korea; certain hot-rolled carbon steel flat products from India and Indonesia; certain pasta from Italy; certain steel wheels 12 to 16.5 inches in diameter from China; circular welded carbon quality steel line pipe from China; circular welded carbon steel pipes and tubes from Turkey; corrosion-resistant steel products from Taiwan; dioctyl terephthalate from Korea; light-walled rectangular pipe and tube from Mexico; lined paper products from India; magnesium metal from China;new pneumatic off-the-road tires from China; phosphor copper from Korea; polyethylene retail carrier bags from Malaysia; pure magnesium from China; raw flexible magnets from China; steel concrete reinforcing bar from Mexico; steel propane cylinders from China and Thailand; and welded stainless pressure pipe from India.

valid based on the information available at the time of selection, or (B) exporters or producers accounting for the largest volume of the subject merchandise from the exporting country that Commerce determines can be reasonably examined.[12]  The Act does not express a preference for either methodology.[13]  The Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA) interprets this provision to mean that the authority to select respondents, whether by using a "statistically valid" sample or by examining respondents accounting for the largest volume of the merchandise under consideration, rests exclusively with Commerce.[14] Further, section 777A(e)(2) of the Act does not require Commerce to meet a minimum threshold in determining the number of mandatory respondents.

*Interested Party Comments*

- Canfor, Resolute, and West Fraser state that Commerce should selected the largest Canadian exporters of softwood lumber as the mandatory respondents.[15]
- Resolute added that by selecting it as a respondent, Commerce would have coverage of subsidy programs in Québec and Ontario, in addition to British Columbia and [      ].[16]
- J.D. Irving urged Commerce to select at least [    ] mandatory respondents, and, if not, then select it as a voluntary respondent and have representation of the New Brunswick market.[17]
- Citing to the *Sampling Notice*,[18] the petitioner argues that Commerce should use sampling to select mandatory respondents because of the composition of Canadian producers that are disparately spread between a few large producers and hundreds of small/medium-sized companies.[19]  The petitioner asserts that subsidies provided by the Government of Canada and provincial/local governments are not evenly distributed by company and by region.[20] The petitioner claims that the only method to obtain a representative and accurate subsidy rate is through sampling that permits producers in all regions of all sizes to be selected as respondents.[21] The petitioner also asserts that this proceeding should warrant resources to examine four mandatory respondents rather than two respondents that Commerce typically chooses in an administrative review.[22]
- In rebuttal, the Canadian parties argue that Commerce should reject the petitioner's suggestion to use sampling.[23]  They assert that the sampling methodology was developed for AD – not CVD – proceedings to address the enforcement concern that exporters accounting for smaller volumes of subject merchandise, which are effectively excluded

---

[12] *See* section 777A(e)(2)(A)(i) and (ii) of the Act.

[13] *See* section 777A(c)(2)(A)-(B) of the Act.

[14] *See* SAA, H.R. Doc. No. 103-316, Vol. 1 at 872 (1994).

[15] *See* Canfor's Comments at 2-3; Resolute's Comments at 2-4; and West Fraser's Comments at 2.

[16] *See* Resolute's Comments at 3.

[17] *See* J.D. Irving's Comments at 1-4.

[18] *See Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in Antidumping Duty Proceedings and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings*, 78 FR 65963 (November 4, 2013) (*Sampling Notice*).

[19] *See* Petitioner's Comments at 2-36.

[20] *Id*. at 14-18.

[21] *Id*.

[22] *Id*. at 15 and 17.

[23] *See* Canadian Parties' Rebuttal Comments.

from individual examination by Commerce's respondent selection methodology based on "largest volume," will lower their prices as they recognize that their pricing behavior will not affect the AD rates assigned to them.[24]   However, such individual company pricing behavior is not an issue in CVD proceedings and a small exporter cannot control the amount of subsidies it receives; therefore, they claim the enforcement concern addressed in the *Sampling Notice* does not exist for CVD proceedings.[25]   Additionally, they argue that the variation in the provision of subsidies can best be addressed by Commerce selecting the largest exporters as mandatory respondents and additional voluntary respondents.[26]   They assert that the AD sampling process is based on size alone, and thus there is no guarantee of broad geographic coverage.[27]   Further, they assert that there is no basis to the petitioner's assumption that an examination of small companies would result in Commerce finding larger subsidy rates.[28]

*Analysis*

Although the Act allows for sampling in CVD proceedings, we find that it is not feasible in this administrative review to achieve a statistically valid sample as the statute requires.  The petitioner argues that sampling is warranted because there are wide variances in both the size of lumber companies and the level of subsidization between provinces.  The petitioner also argues that we should devote resources to select, *i.e.*, individually examine, at least four mandatory respondents in this review.  However, in order to construct a statistically valid sample using company size and geography as the petitioner suggests, we would need to select more than four mandatory respondents, given the number of provinces in Canada.  For example, a sample stratified even fairly simply by size (small, medium or large), and by Canada's ten provinces, would require selecting at least 30 companies (*i.e.*, at least one small, medium, and large company for each of the ten provinces).  To select four companies, as the petitioner suggests, would require drastically simplifying the sample stratification further, *e.g.*, to large or small, and east or west, which would likely fail to address the petitioner's concern regarding the variance in subsidization levels among provinces and sub-provinces.

As stated below, we are limited by resources to selecting three mandatory respondents for individual examination in this review.  We also note that by selecting the three largest exporters/producers of subject merchandise, we will be examining the provision of subsidies in the four largest lumber-producing Canadian provinces (*i.e.*, Alberta, British Columbia, Ontario, and Québec), thus addressing one of the concerns raised by the petitioner that there is a wide variance in the level of subsidization between provinces.

Moreover, the time constraints of this administrative review make sampling a non-viable respondent selection methodology.  Due to the partial government shutdown, Commerce was unable to initiate the review in accordance with the standard timetable set forth in the Act and regulations.  If Commerce were to conduct sampling, it would need to offer interested parties an

---

[24] *Id*.
[25] *Id*.
[26] *Id*.
[27] *Id*.
[28] *Id*.

6

Barcode:4235481-01 C-122-858 REV - Admin Review 1/1/21 - 12/31/21

C-122-858

opportunity to comment on the proposed methodology for such samples and conduct the sampling at the conclusion of the 90-day period for withdrawal of requests (*i.e.*, July 1, 2019), which would further delay respondent selection and issuance of the CVD questionnaire.  The deadline for the preliminary results of this review is currently October 3, 2019.

Commerce's general practice is to select respondents accounting for the largest volume of subject merchandise imports that can be reasonably examined, consistent with section 777A(e)(2)(A)(ii) of the Act.  The *Initiation Notice* stated that, in the event Commerce limits the number of respondents for individual examination, we intend to select respondents based on CBP data.[29]  We obtained the CBP entry data which consist of value and quantity figures for all imports of subject merchandise into the United States during the POR.[30]  Within the data, we noted that the entry quantities are denominated in several different units of measure (UOMs) (*i.e.*, cubic meters, square meters, meters, kilograms, and number of pieces) and, for some entries, no quantity is reported.[31] In addition to the missing volumes, the various UOMs are a problem because, for example, measurements of weight (*e.g.*, kilograms) cannot be converted to measurements of volume (*e.g.*, cubic meters) without making certain assumptions, and "number of pieces" cannot be converted to a measurement of volume.

We observed these UOMs problems among the entries for individual exporters/producers.[32]  For example, the entry data for [            ] are variously reported in cubic meters, square meters, and number of pieces.[33]  The entry data for [                    ] include several transactions with no information reported for quantity (*i.e.*, a blank field).[34]

However, where there are problems with using quantities reported to CBP for softwood lumber because they lack uniformity in UOMs, include blanks, and cannot be converted to a standard UOM, there are no such problems in ranking exporters/producers by value.  Value amounts in the CBP data are reported for all entries of merchandise using the same unit of currency.

Furthermore, the CBP data suggest a general correlation exists between the overall volume and value of imports of softwood lumber from Canada to the United States.[35]  Therefore, in this administrative review, we recommend relying on value as a proxy for quantity and selecting respondents accounting for the largest value for that reason.  This approach, using value as a proxy for quantity where there are issues with the reported UOMs for entry quantities, is transparent and consistent with Commerce's decision in other CVD proceedings.[36]

---

[29] *See Initiation Notice*, 84 FR at 12209.
[30] *See* CBP Data Memorandum and CBP Data.
[31] *See* CBP Data.
[32] *See* Attachment I to this memorandum for a summary of the 10 largest Canadian exporters/producers.
[33] *See* CBP Data.
[34] *Id*.
[35]*Id*.
[36] *See, e.g.*, Memoranda regarding, "Countervailing Duty Investigation of Certain Quartz Surface Products from the People's Republic of China:  Respondent Selection," dated June 7, 2018; "Administrative Review of the Countervailing Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China; 2016:  Respondent Selection," dated April 17, 2018; and "Countervailing Duty Investigation of Rubber Bands from the People's Republic of China:  Respondent Selection," dated March 21, 2018. *See* public version of the respondent selection memoranda at Attachment II of this memorandum.

To determine the total value and relative share of shipments for each potential respondent, we reviewed the CBP entry data for each company in terms of the aggregated value of imports of subject merchandise attributed to that company into the United States during the POR.  We combined the export values of companies with minor variations in the spelling of their names and companies found to be cross-owned affiliates in the underlying investigation, and ranked these companies by the total value exported to the United States during the POR.[37]

After carefully considering the CBP data, our resource constraints, as well as the complexity of the programs involved in this administrative review, we find that the offices responsible for this review have the resources to examine three mandatory respondents.  An individual examination of the three largest exporters/producers by value of entries of subject merchandise during the POR will allow Commerce to capture the largest exporters/producers that can reasonably be examined, in light of resource constraints and in compliance with the statutory requirements.  Based on our analysis of the CBP data, the three exporters/producers with the largest value of entries of subject merchandise are, in alphabetical order, Canfor, Resolute, and West Fraser.[38]  All three companies requested an administrative review.[39]

Commerce is not required to achieve a specific geographic coverage when selecting respondents for individual examination.  However, by selecting the three largest exporters/producers of subject merchandise, we will be examining the provision of subsidies within the four largest lumber-producing Canadian provinces (*i.e.*, Alberta, British Columbia, Ontario, and Québec).

*Recommendation*

For the reasons discussed above, we recommend selecting in alphabetical order, Canfor, Resolute, and West Fraser, the three exporters or producers that account for the largest value of subject merchandise entries, for individual examination as mandatory respondents in this administrative review.

☒                         ☐

_____          _____

Agree                   Disagree

---

[37] *See* Attachment I to this memorandum for a summary of the 10 largest Canadian exporters/producers.

[38] *See* Attachment I to this memorandum.

[39] *See* Letter from Resolute regarding, "Softwood Lumber from Canada: Request for Countervailing Duty Administrative Review and for Voluntary Respondent Treatment (4/28/2017-12/31/2018)," dated January 3, 2019 (Resolute's Request); Letter from Canfor regarding, "Certain Softwood Lumber Products from Canada, Case No. C-122-858: Request for Administrative Review," dated January 16, 2019 (Canfor's Request); and Letter from West Fraser regarding "Certain Softwood Lumber Products from Canada, Case No. C-122-858: Request for Countervailing Duty Administrative Review and Request for Voluntary Respondent Treatment if Not Selected as a Mandatory Respondent," dated January 29, 2019 (West Fraser's Request).

**Issue 3:  Voluntary Respondents**

*Applicable Statutory Provision*

When Commerce limits the number of exporters and producers examined in an administrative review, section 782(a) of the act directs Commerce to establish an individual countervailable subsidy rate for any exporter or producer not initially selected for individual examination that voluntarily submits the information requested from mandatory respondents, if (1) the information is submitted by the due date specified for exporters or producers initially selected for examination, and 2) the number of exporters and producers subject to the administrative review is not so large that any additional individual examination of such exporters and producers would be unduly burdensome and inhibit the timely completion of the administrative review.[40]

*Requests for Voluntary Respondent Treatment*

In chronological order, the following Canadian exporters and producers requested to be treated as voluntary respondents in this administrative review:  J.D. Irving, Tolko, Resolute, Canfor, West Fraser, and L'Atelier de Réadaptation au travil de Beauce Inc.[41]

*Analysis*

Commerce will consider whether to examine voluntary respondents under the following conditions:

a.  The voluntary respondent must have met the filing deadlines for all requests for information (and otherwise comply with all other regulatory deadlines);[42]

b.  Commerce will select voluntary respondents based on the order in which the requests are received.[43]

Once selected, a voluntary respondent that subsequently decides not to cooperate in the administrative review will be treated in the same manner as a mandatory respondent that fails to cooperate.[44]

---

[40] *See* section 782(a)(A) and (B) fo the Act.

[41] *See* Letter from J.D. Irving regarding, "Certain Softwood Lumber Products from Canada: Request for Administrative Review and Request for Voluntary Respondent Treatment," dated January 1, 2019; Letter from Tolko regarding "Certain Softwood Lumber Products from Canada: Administrative Review Request & Request for Voluntary Respondent Treatment," dated January 1, 2019; Resolute's Request; Canfor's Request; West Fraser's Request; and Letter from L'Atelier de Réadaptation au travil de Beauce Inc. regarding, "Certain Softwood Lumber Products from Canada: Request for Countervailing Duty Administrative Review & Request for Voluntary Respondent Status," dated February 28, 2019.

[42] *See* section 782(a) of the Act.

[43] *See Antidumping Duties and Countervailing Duties; Final Rule*, 62 FR 27296, 27310 (May 19, 1997).

[44] *See* 19 CFR 351.204(d)(2).

*Recommendation*

If any voluntary responses are submitted in accordance with the deadlines and other criteria set forth in section 782(a) of the Act and 19 CFR 351.204(d), we recommend evaluating the circumstances during the course of this administrative review to determine whether the individual examination of such companies would be unduly burdensome and inhibit the timely completion of the administrative review.

☒                              ☐

_____          _____
Agree                             Disagree

_____
Erin Begnal
Director, Office III
 AD/CVD Operations

May 17 2019

_____
Date

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

C-570-070
Investigation
**PUBLIC VERSION** ~~Proprietary Document~~
OFIII:  KJ

**DATE:**  March 21, 2018

**MEMORANDUM TO:**  James Maeder
Associate Deputy Assistant Secretary
 for Antidumping and Countervailing Duty Operations
 performing the duties of Deputy Assistant Secretary
 for Antidumping and Countervailing Duty Operations

**THROUGH:**  Erin Begnal
Director, Office III
Antidumping and Countervailing Duty Operations

**FROM:**  Kristen Johnson
International Trade Compliance Analyst, Office III
 Antidumping and Countervailing Duty Operations

**RE:**  Countervailing Duty Investigation of Rubber Bands from the
People's Republic of China:  Respondent Selection

---

## Summary

For the reasons detailed below, we recommend selecting Grace Imp. & Exp. Co., Ltd. and
Moyoung Trading Co., Ltd. as the mandatory respondents in this investigation.

## Background

On January 30, 2018, the Department of Commerce (Commerce) received a countervailing duty
(CVD) petition concerning imports of rubber bands from the People's Republic of China (China),
filed on behalf of Alliance Rubber Co. (the petitioner).[1]  The period of investigation (POI) is
January 1, 2017, through December 31, 2017.

On February 20, 2018, Commerce initiated a CVD investigation of rubber bands from the China.
Commerce published the notice of initiation of the CVD investigation on rubber bands from China
on February 27, 2018.[2]  In the *Initiation Notice*, Commerce stated that, where appropriate, it
intended to select respondents based on entry data from U.S. Customs and Border Protection (CBP

---

[1] *See* Letter from the petitioner, "Petition for the Imposition of Antidumping and Countervailing Duties: Rubber
Bands from Thailand, China, and Sri Lanka," dated January 30, 2018 (Petition).
[2] *See Rubber Bands from Thailand, the People's Republic of China, and Sri Lanka:  Initiation of Countervailing Duty
Investigations,* 83 FR 8429 (February 27, 2018) (*Initiation Notice*).

or Customs) for imports of rubber bands from China made during the POI under the Harmonized Tariff Schedule of the United States (HTSUS) number 4016.99.3510.[3]

On February 14, 2018, Commerce released CBP data under Administrative Protective Order (APO) to all parties with access to information protected by APO and indicated that interested parties wishing to comment regarding the CBP data and respondent selection must do so within three business days of the publication date of the notice of initiation of this CVD investigation.[4] Parties did not comment on the CBP Data Memorandum.

**Issue 1:  Limiting Examination to a Reasonable Number of Companies**

Applicable Statutory Provision

Section 777A(e)(1) of the Tariff Act of 1930, as amended (the Act), directs Commerce to determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.  Commerce, however, may limit its examination to a reasonable number of exporters or producers under section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2), if it determines that it is not practicable to calculate individual countervailable subsidy rates because of the large number of exporters or producers involved in the investigation.

Analysis

The petition identified 12 exporters and/or producers of rubber bands from China,[5] and the CBP data indicate that there are potentially [    ] companies with entries during the POI under the HTSUS number 4016.99.3510.[6]

Ideally, in an investigation, Commerce would examine all known exporters and producers, as reflected in section 777A(e)(1) of the Act.  However, in instances where Commerce is forced to limit its examination due to the large number of potential respondents relative to its resource constraints, Commerce will examine as many exporters and/or producers as is practicable, consistent with its statutory obligation.

While section 777A(e)(2) of the Act does not define a "large number of exporters or producers," in this case, we find that the number of exporters/producers identified herein constitutes a large number of producers or exporters relative to Commerce's available resources.  Accordingly, we conclude that it would not be practicable in this investigation to examine each known exporter/producer individually and determine an individual net countervailable subsidy rate for each company.

---

[3] *Id.*, 83 FR at 8430.
[4] *See* Memorandum to the File titled, "Countervailing Duty (CVD) Petition on Rubber Bands from the People's Republic of China: U.S. Customs Data for Respondent Selection," dated February 14, 2018 (CBP Data Memorandum).
[5] *See Initiation Notice* at 83 FR 8432; *see also* Petition at Volume I at 15 and Exhibit GEN-2; and Letter from the petitioner, "Petition for the Imposition of Antidumping and Countervailing Duties on Rubber Bands from Thailand, China and Sri Lanka – Responses to Supplemental Questionnaires," dated February 8, 2018 (General Issues Supplement) at 2-3.
[6] *See* CBP Data Memorandum.

Individually investigating all known exporters and/or producers would require significant resources because it would require Commerce to examine each company's corporate structure, financial records, and participation in the individual subsidy programs on which Commerce has initiated an investigation.  In addition, Commerce must examine the same information for all companies determined during the course of this investigation to be "cross-owned" pursuant to 19 CFR 351.525(b)(6)(vi), with the individually-investigated respondents.  Such cross-owned companies could, for example, include the respondents' input suppliers and parent companies. Additionally, Commerce will need to collect information on whether these programs have been used during the POI and, if so, Commerce will need to collect several years of detailed information to ensure that it accurately captures all benefits attributable to the POI.  Furthermore, Commerce must solicit and analyze information from the Government of China during the course of the CVD investigation, further straining our available resources.  Moreover, because this is an investigation, we are required to verify information relied upon in making our final determination in this investigation.[7]

In addition to this investigation, Office III (*i.e.*, the office to which this CVD investigation is assigned) is currently conducting numerous antidumping and CVD investigations and administrative proceedings, which place a constraint on the number of analysts that can be assigned to this investigation.[8]  Not only do these other cases present a significant workload, but the deadlines for several cases coincide and/or overlap with deadlines in this CVD investigation. In addition, because of the significant workload throughout Enforcement and Compliance, we do not anticipate receiving any additional resources to devote to this CVD investigation.  Therefore, due to the large number of known exporters and/or producers of rubber bands from China and the number and complexity of the allegations in this investigation, we find that it would not be practicable in this CVD investigation to individually examine each exporter and/or producer of rubber bands from China, as directed by section 777A(e)(1) of the Act.

Recommendation

For the reasons discussed above, we recommend limiting Commerce's individual examination to respondents in this investigation to a reasonable number of exporters/producers, consistent with section 777A(e)(2)(A) of the Act and 19 CFR 351.204(c)(2).

☒                          ☐
_____          _____
Agree                    Disagree

---

[7] *See* section 782(i)(1) of the Act.
[8] Office III's workload includes, for example, the following cases:  less-than-fair-value investigations (LTFV) of rubber bands from China, Sri Lanka, and Thailand; LTFV investigations of certain citric acid and certain citrate salts from Belgium, Colombia, and Thailand; CVD investigations of rubber bands from Sri Lanka and Thailand; CVD investigations of certain citric acid and certain citrate salts from Thailand; LTFV investigations of cold-drawn mechanical tubing from China, Germany, and Switzerland; administrative reviews of certain pasta from Italy, certain lined paper products from India, carbon and certain alloy steel wire rod from Mexico, cut-to-length carbon-quality steel plate from Korea, corrosion-resistant steel products from Taiwan, new pneumatic off-the-road tires from China, and steel concrete reinforcing bar from Turkey and Mexico, and expedited reviews for the CVD order on softwood lumber from Canada.  Moreover, this office is involved in ongoing litigation, as well as multiple scope rulings and sunset reviews.

**Issue 2:  Methodology and Selection of Respondents**

Applicable Statutory Provision

Where it is not practicable to examine all known exporters and/or producers of subject merchandise, section 777A(e)(2) of the Act permits Commerce to determine individual countervailable subsidy rates for:  (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available at the time of selection, or (B) exporters and/or producers accounting for the largest volume of the subject merchandise that Commerce determines can be reasonably examined.[9]  The Act does not express a preference for either methodology.  The Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA) interprets this provision to mean that the authority to select respondents, whether by using a "statistically valid" sample or by examining respondents accounting for the largest volume of the merchandise under consideration, rests exclusively with Commerce.[10]  Further, section 777A(e)(2) of the Act does not require Commerce to meet a minimum threshold in determining the number of mandatory respondents.

Analysis

Commerce's general practice is to select respondents accounting for the largest volume of subject merchandise imports that can be reasonably examined, consistent with section 777A(e)(2)(A)(ii) of the Act.  However, in this investigation, we are selecting respondents accounting for the largest value, relying on value as a proxy for quantity, because the quantities reported to CBP for rubber bands appear to lack uniformity (*i.e.*, entry quantities are not reported according to a standard unit of measurement  (UOM), such as kilograms) and, for most entries, no quantity is reported at all in the CBP data.[11]    The CBP data lists "X" and "?" under UOM, thus indicating that there is no uniform UOM for rubber bands and that the quantity is unknown for particular entries.[12]  In the CBP Data Memorandum, we placed value information on the record along with other CBP data (including quantity and UOM).  As noted above, no party commented on the CBP Data Memorandum.  Furthermore, no party argued that Commerce should select respondents pursuant to section 777A(e)(2)(A)(i) of the Act.

Given our determination that it is not practicable to examine individually all known exporters and/or producers of rubber bands from China, and in light of the analyses required to individually examine a respondent as described above, we conclude that we have the resources available to determine individual subsidy rates for two respondents.  The CBP data indicate that the two largest publicly identifiable exporters/producers in alphabetical order are Graceful Imp. & Exp. Co., Ltd. (Graceful) and Moyoung Trading Co., Ltd. (Moyoung).  Graceful is not a company listed in the petition, but is publicly identifiable as an exporter of subject merchandise on the internet. We obtained information from Panjiva.com which indicates that Graceful has exported "The Beadery Wonder Bands" to the United States.[13]  The wonder bands fit the description of the subject merchandise as evidenced by photos of the product obtained from Amazon.com,

---

[9] *See* section 777A(e)(2)(A)(i) and (ii) of the Act.
[10] *See* SAA, H.R. Doc. No. 103-316, Vol. 1 at 872 (1994).
[11] *See* CBP Data Memorandum.
[12] *Id.*
[13] *See* Attachment 2.

Walmart.com, and Google Express.[14]  The [          ] exporters/producers listed in the CBP data
cannot be either publicly identified on the internet, or the information publicly available indicates
that the companies do not produce or export rubber bands.[15]  The [          ] ranked company,
Moyoung, is publicly identified in the petition as a Chinese exporter/producer of rubber bands.[16]

Recommendation

Based on our analysis of the CBP data, we find that Graceful and Moyoung are the two publicly
identifiable exporters/producers accounting for the largest value of U.S. imports of subject
merchandise during the POI.  We recommend selecting these companies for individual
examination as the mandatory respondents in this investigation.

☒                          ☐

_____          _____
Agree                        Disagree

                                                    3/21/2018

X  *James Maeder*
_____

Signed by: JAMES MAEDER
James Maeder
Associate Deputy Assistant Secretary
  for Antidumping and Countervailing Duty Operations
  performing the duties of Deputy Assistant Secretary
  for Antidumping and Countervailing Duty Operations

---

[14] *Id.*

[15] *See* Attachment 1.

[16] *See* Petition at Exhibit GEN-2; and General Issues Supplement at 2-3.

5

# ATTACHMENT III

## Public Information

| Requests for Voluntary Respondent Treatment | | | |
|---|---|---|---|
| **Barcode** | **Filed Date-Time** | **Pertaining To** | **Case Name** |
| 4196305-01 | 12/30/2021 17:01:00.273 | J.D. Irving | Softwood Lumber from Canada |
| 4196306-01 | 12/30/2021 17:01:00.633 | Tolko | Softwood Lumber from Canada |
| 4196307-01 | 12/30/2021 17:01:00.680 | J.D. Irving | Softwood Lumber from Canada |
| 4196308-01 | 12/30/2021 17:01:01.633 | Tolko | Softwood Lumber from Canada |
| 4196310-01 | 12/30/2021 17:01:08.357 | Canfor | Softwood Lumber from Canada |
| 4196360-01 | 1/1/2022 0:00:02.530 | Resolute FP Canada Inc. | Softwood Lumber from Canada |
| 4196620-01 | 1/3/2022 15:31:30.660 | West Fraser Mills Ltd. | Softwood Lumber from Canada |
| **Barcode** | **Title** | | |
| 4196305-01 | Request for Administrative Review and Request for Voluntary Respondent Treatment | | |
| 4196306-01 | Review Request and Voluntary Respondent Request | | |
| 4196307-01 | Request for Administrative Review & Voluntary Respondent Treatment | | |
| 4196308-01 | Review Request and Voluntary Respondent Request | | |
| 4196310-01 | Canfor Request for AR and VRT | | |
| 4196360-01 | Resolute Request for 4th CVD AR & VRT | | |
| 4196620-01 | Request for Administrative Review | | |
| **Barcode** | **Case No.** | **Author** | **Counsel** |
| 4196305-01 | C-122-858 | tmccumber@whitecase.com | White & Case LLP |
| 4196306-01 | C-122-858 | kangwoo.lee@apks.com | Arnold & Porter Kaye Scholer LLP |
| 4196307-01 | C-122-858 | jcampbell@whitecase.com | White & Case LLP |
| 4196308-01 | C-122-858 | matthew.kirkwood@apks.com | Arnold & Porter Kaye Scholer LLP |
| 4196310-01 | C-122-858 | dcameron@mmmlaw.com | Morris, Manning & Martin, LLP |
| 4196360-01 | C-122-858 | msnarr@bakerlaw.com | Baker & Hostetler LLP |
| 4196620-01 | C-122-858 | sdale@gibsondunn.com | Gibson, Dunn & Crutcher LLP |