UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| **GREENFIRST FOREST PRODUCTS INC., AND  GREENFIRST FOREST PRODUCTS (QC) INC.,** | ) ) ) ) | **Court No. 22-00097** |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| **UNITED STATES,** | ) ) | |
| *Defendant*. | ) ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

<table>
<tr>
<td></td>
<td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td>
</tr>
<tr>
<td></td>
<td>PATRICIA M. McCARTHY<br>Director</td>
</tr>
<tr>
<td>OF COUNSEL:</td>
<td>CLAUDIA BURKE<br>Assistant Director</td>
</tr>
<tr>
<td>Jesus N. Saenz<br>Attorney<br>Office of the Chief Counsel<br>  for Trade, Enforcement, and Compliance<br>U.S. Department of Commerce<br>Washington, D.C. 20230</td>
<td>BRET R. VALLACHER<br>Trial Attorney<br>Civil Division, Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C.  20044<br>Telephone: (202) 616-0465</td>
</tr>
<tr>
<td>Dated: September 6, 2022</td>
<td>*Attorneys for Defendant*</td>
</tr>
</table>

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| **GREENFIRST FOREST PRODUCTS INC., AND  GREENFIRST FOREST PRODUCTS (QC) INC.,**  )<br><br>*Plaintiffs*,  )<br><br>v.  )<br><br>**UNITED STATES,**  )<br><br>*Defendant*.  ) | **Court No. 22-00097** |

## <u>ORDER</u>

Upon consideration of the plaintiffs' motion for judgment upon agency record, response thereto, reply, and all other papers, it is hereby

ORDERED that the motion is denied, and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____
New York, NY                                      _____
                                                              JUDGE

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.1 ................................................................. 1

   I.   Agency Determination Under Review ............................................................... 1

   II.  Issue Presented For Review .............................................................................. 2

STATEMENT OF FACTS ........................................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................................... 5

ARGUMENT ............................................................................................................... 5

   I.   Standard Of Review ......................................................................................... 5

   II.  Commerce's Decision Is Neither Arbitrary Nor Capricious, But Instead Fully Consistent With The Law And Past Practice ....................................................................... 6

      A.  The Framework for Successor-In-Interest Changed Circumstances Reviews ................. 6

      B.  Commerce Reasonably Applied Its Methodology In Determining That GreenFirst's Acquisition Of RYAM's Assets Was A Significant Change Precluding A Successor-In-Interest Determination ................................................................. 8

      C.  GreenFirst's Allegations Of Harm Are Unsubstantiated ................................................. 12

CONCLUSION ........................................................................................................... 13

## TABLE OF AUTHORIES

**CASES**                                                                 **Pages**

*Capella Sales & Servs. Ltd. v. United States*,
     180 F. Supp. 3d 1293, 1303 (Ct. Int'l Trade 2016) ......................................... 13

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*,
     467 U.S. 837 (1984) ............................................................................ 6, 11

*Consol. Bearings, Co. v. United States*,
     412 F.3d 1266 (Fed. Cir. 2005) ........................................................... 6

*E. Sea Seafoods LLC v. United States*,
     34 C.I.T. 438 (2010) ............................................................................ 6

*Marsan Gida Sanayi Ve Ticaret, AS v. United States*,
     35 C.I.T. 222 (2011) ................................................................... 6, 8, 9, 11

*Timken Co. v. United States*,
     354 F.3d 1334 (Fed. Cir. 2004) ........................................................... 6


**STATUTES**

5 U.S.C. § 706 ................................................................................................ 6

19 U.S.C. § 1671(a)(1) ................................................................................... 7

19 U.S.C. § 1675 ....................................................................................... 6, 13

19 U.S.C. § 1677f-1(e)(2)(A)(ii) ................................................................. 10

28 U.S.C. § 2640 ............................................................................................ 5


**RULES**

Rule 56.1 of the United States Court of Federal Claims.............................. 1


**ADMINISTRATIVE DETERMINATIONS**

*Certain Pasta from Turkey: Preliminary Results Countervailing Duty Changed Circumstances Review*,
     74 Fed. Reg. 47,225 (Dep't of Commerce Sept. 15, 2009) ..................... 6, 7, 9, 10, 11, 12

*Certain Pasta from Turkey: Final Results of Countervailing Duty Changed Circumstances*,
74 Fed. Reg. 54,022 (Dep't of Commerce Oct. 21, 2009)................................................. 13

*Certain Softwood Lumber Products from Canada: Final Affirmative Countervailing Duty
Determination, and Final Negative Determination of Critical Circumstances*,
82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8, 2017).................................................. 2

*Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing
Duty Determination and Countervailing Duty Order,*
83 Fed. Reg. 347 (Jan. 3, 2018) .................................................................................. 1, 2

*Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty
Administrative Review, 2017-2018*,
85 Fed. Reg. 77,163 (Dep't of Commerce Dec. 1, 2020).................................................. 2

*Certain Softwood Lumber Products from Canada: Final Results and Final Rescission, in Part, of
the Countervailing Duty Administrative Review, 2020*,
87 Fed. Reg. 48,455, 48459 (Dep't of Commerce Aug. 9, 2022)................................. 2, 13

*Commerce's Decision Not to Initiate Changed Circumstances Review Letter*,
(Dep't of Commerce Nov. 16, 2021) ................................................................................ 1

*Commerce's Decision Not to Initiate Changed Circumstances Review Request for
Reconsideration Letter,*
(Dep't of Commerce Feb. 24, 2022) ................................................................................ 2

*Certain Softwood Lumber Products from Canada: Final Results of Countervailing Duty
Administrative Review*,
86 Fed. Reg. 68,467 (Dep't of Commerce Dec. 2, 2021).................................................. 2

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| **GREENFIRST FOREST PRODUCTS INC., AND  GREENFIRST FOREST PRODUCTS (QC) INC.,** | ) ) ) ) | **Court No. 22-00097** |
| *Plaintiffs*, | ) ) ) | |
| **v.** | ) ) | |
| **UNITED STATES,** | ) ) | |
| *Defendant*. | ) ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by GreenFirst Forest Products Inc., and GreenForest Products (QC) Inc., (collectively, GreenFirst) challenging the Department of Commerce's decision to not conduct a changed circumstances review.   As demonstrated below, plaintiffs' motion should be denied because Commerce's decision is lawful, and neither arbitrary nor capricious.  Accordingly, we respectfully request that the Court deny plaintiffs' motion and enter judgment in favor of the United States.

### STATEMENT PURSUANT TO RULE 56.1

**I.   Agency Determination Under Review**

GreenFirst challenges Commerce's determination not to initiate a changed circumstances review of a countervailing duty order, published as *Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347 (Jan. 3, 2018).  *See Commerce's Decision Not to Initiate Changed*

*Circumstances Review Letter* (Dep't of Commerce Nov. 16, 2021) (*Decision Letter*) (PR 13) and

*Commerce's Decision Not to Initiate Changed Circumstances Review Request for*

*Reconsideration Letter* (Dep't of Commerce Feb. 24, 2022) (*Reconsideration Letter*) (PR 19).

## II.   Issue Presented For Review

Whether Commerce's decision not to initiate GreenFirst's successor-in-interest changed

circumstances review is lawful and not otherwise arbitrary or capricious.

## STATEMENT OF FACTS

In 2018, Commerce published a countervailing duty order on imports of certain softwood

lumber products from Canada.  *Certain Softwood Lumber Products from Canada: Amended*

*Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed.

Reg. 347 (Jan. 3, 2018) (*Lumber from Canada Order*).

After participating in the investigation and in subsequent administrative reviews,

Rayonier A.M. Canada G.P. (RYAM) was consistently assigned a "non-selected" cash deposit

rate on its imports of softwood lumber into the United States.  *Certain Softwood Lumber*

*Products from Canada: Final Affirmative Countervailing Duty Determination, and Final*

*Negative Determination of Critical Circumstances*, 82 Fed. Reg. 51,814 (Dep't of Commerce

Nov. 8, 2017) (*Lumber from Canada Investigation*); *Certain Softwood Lumber Products from*

*Canada: Final Results of the Countervailing Duty Administrative Review, 2017-2018*, 85 Fed.

Reg. 77,163, 77,167 (Dep't of Commerce Dec. 1, 2020) (*Lumber from Canada First*

*Administrative Review*); *Certain Softwood Lumber Products from Canada: Final Results of*

*Countervailing Duty Administrative Review*, 86 Fed. Reg. 68,467, 68,471 (Dep't of Commerce

Dec. 2, 2021) (*Lumber from Canada Second Administrative Review*); *Certain Softwood Lumber*

*Products from Canada: Final Results and Final Rescission, in Part, of the Countervailing Duty*

2

*Administrative Review, 2020*, 87 Fed. Reg. 48,455, 48459 (Dep't of Commerce Aug. 9, 2022)

(*Lumber from Canada Third Administrative Review*).

On March 16, 2021, a firm named "9437-6001 Quebec Inc." was established.  *See*

Changed Circumstances Review Request (Oct. 4, 2021) (PR 1; CR 1) at 4–5.[1]  On April 10,

2021, that firm purchased six lumber mills and one newsprint mill from RYAM for USD 140

million plus the value of on-hand inventory.  *Id.*  Pursuant to a sales agreement, that firm paid 85

percent of the purchase price to RYAM in cash and the remainder in common shares of

GreenFirst Forest Products Inc.—the firm's parent company.  *Id.*  On June 28, 2021, the firm

changed its name to GreenForest Products (QC) Inc.  *Id.*  On August 28, 2021, GreenForest

Products (QC) Inc. formally completed the transaction and acquired the six mills and one

newspaper mill it purchased from RYAM.  *Id.*  RYAM continues to exist and will own shares in

the parent company.  *Id.*  In fact, per a March 9, 2022 initiation notice, both GreenFirst and

RYAM are producers/exporters that have requested an administrative review of the *Lumber from*

*Canada Order*.  *See Initiation Notice*, 87 Fed. Reg. at 13,261–13,262.

On October 4, 2021, GreenFirst submitted a request to initiate a changed circumstances

review (CCR) of the countervailing duty order to determine that GreenFirst is the successor-in-

interest to RYAM for the purpose of assigning countervailing duty cash deposit rates under the

order.  *See* Changed Circumstance Review Request.  In that request, GreenFirst asserted that it

was RYAM's successor-in-interest, and on that basis, requested that Commerce assign

GreenFirst the "non-selected" cash deposit rate that had been assigned to RYAM (specifically, a

7.42 percent *ad valorem* countervailing duty cash deposit rate) instead of the 14.19 percent *ad*

---

[1] Because Commerce's decision is based on GreenFirst's factual assertions in its request, we rely
on the facts asserted in that request for the purposes of this brief.

*valorem* "all-others" cash deposit rate GreenFirst's imported merchandise had been subject to. *Id.* at 3–8.  In support, GreenFirst claimed it purchased "100 percent ownership of six RYAM lumber mills and one newspaper mill," *id.* at 4, and attached the corresponding "Asset Purchase Agreement," *id.* at 51–209 (Attachment 6).[2]  GreenFirst noted that the RYAM lumber and newsprint employees and management are now employed by GreenFirst, except that "the operational management of the six lumber mills will undergo certain changes," *id.* at 4–5. Notably, GreenFirst did **not** claim, for example, that GreenFirst acquired RYAM itself, that RYAM no longer exists, or that GreenFirst was actually the same entity as RYAM, simply operating under that name until it changed its name.

On November 16, 2021, Commerce determined not to initiate GreenFirst's changed circumstances request based on the facts set forth in GreenFirst's request.  *Decision Letter* (PR 13).  Commerce determined that GreenFirst's request and supporting information demonstrated that GreenFirst's acquisition involved the purchase of assets, as opposed to the purchase of a firm, and that RYAM continues to operate.  *See id.*  Commerce explained that GreenFirst's "purchase of the newsprint mill and six sawmills from RYAM constitutes a significant change" that could have affected the nature and extent of the company's level of subsidization, and therefore it would be "inappropriate" to simply "affirm a cash deposit rate" applicable to RYAM. *See Decision Letter* at 2.  Thus, in accordance with Commerce's past practices and the relevant authorities, Commerce declined to initiate a changed circumstances review.  *Id.*

On January 18, 2022, GreenFirst submitted a request for reconsideration.  *GreenFirst Request for Reconsideration* (PR 15).  In response to GreenFirst's Request for Reconsideration,

---

[2] GreenFirst's Changed Circumstances Review Request was also accompanied by information regarding both entities' management/ownership, production facilities, supplier relationships, customer base, and cash deposit payments.  *Id.* at 4–8, and Attachments 1–14.

Commerce again determined, for the same reasons, not to initiate GreenFirst's request for a changed circumstances review. *Reconsideration Letter* (PR 19). GreenFirst then filed this challenge to Commerce's decision not to initiate the changed circumstances review request.

## SUMMARY OF THE ARGUMENT

In an attempt to obtain RYAM's lower cash-deposit rate to accompany the assets it acquired from RYAM, GreenFirst requested that Commerce deem it RYAM's successor-in-interest. Commerce correctly denied GreenFirst's request because GreenFirst—on the face of its request—did not meet the narrow circumstances in which a successor-in-interest determination could be made under *Certain Pasta from Turkey: Preliminary Results Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 47,225, 47,227 (Dep't of Commerce Sept. 15, 2009) (*Pasta from Turkey Preliminary Results*).

In response, GreenFirst argues for the imposition of two new limitations on Commerce's ability to decline such requests under that standard. GreenFirst essentially argues that Commerce should be prevented from denying a changed circumstances review request whenever the original company was not individually examined in a previous administrative review and/or the requesting company is unlikely to be individually examined in the next administrative review. However, neither of these so-called "criteria" has any basis in law or in Commerce's past practice. Moreover, imposing these criteria would strip Commerce of its ability to decline CCR requests in many, if not most, circumstances, and would also prove unworkable in practice. Because Commerce acted reasonably, and well within its discretion, in declining to conduct a changed circumstances review, this Court should sustain Commerce's decision.

## ARGUMENT

### I.   Standard Of Review

The standard of review for actions commenced under 28 U.S.C. § 1581(i) is provided by

the Administrative Procedure Act (APA).  *See* 28 U.S.C. § 2640(e) (citing 5 U.S.C. § 706).

Under the APA, the Court will "hold unlawful and set aside agency action, findings, and

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2)(A); *Consol. Bearings, Co. v. United States*, 412 F.3d

1266, 1269 (Fed. Cir. 2005).

### II.   Commerce's Decision Is Neither Arbitrary Nor Capricious, But Instead Fully Consistent With The Law And Past Practice

#### A.   The Framework for Successor-In-Interest Changed Circumstances Reviews

Although the relevant statute requires Commerce to conduct a review of a countervailing

duty order when it receives a request "which shows changed circumstances sufficient to warrant

a review of such determination or agreement," 19 U.S.C. § 1675(b)(1), the statute does not

define what constitutes "changed circumstances," *id.*  In fact, Commerce acknowledged as much

in the course of the *Pasta from Turkey* proceedings upon which GreenFirst heavily relies.  *See*

*Pasta from Turkey Preliminary Results*, 74 Fed. Reg. at 47,227 ("The statute does not define the

term 'changed circumstances.'").  Similarly, as this Court recognized, the "successor-in-interest

analysis was not explicitly created by statute or by regulation, but is an agency practice," *E. Sea*

*Seafoods LLC v. United States*, 34 C.I.T. 438, 455 (2010).  Accordingly, "the statute is silent or

ambiguous with respect to the specific issue" of the circumstances requiring Commerce to

initiate a changed circumstances review, *Timken Co. v. United States*, 354 F.3d 1334, 1341(Fed.

Cir. 2004) (quoting *Chevron*, 467 U.S. at 842–43).

Because "statutory silence provides 'an express delegation of authority to the agency to

elucidate a specific provision of the statute by regulation,'" this Court has held that Commerce

has "discretion to construe the breadth of CCRs," *Marsan Gida Sanayi Ve Ticaret, AS v. United*

*States*, 35 C.I.T. 222, 228 (2011) (quoting *Chevron*, 467 U.S. at 843–44).  In fact, this Court has

already held that Commerce's methodology—outlined in detail below—is "reasonable and in accordance with law." *Id.* at 231.

In 2009, Commerce explained that, in the context of a countervailing duty changed circumstances review, "the Department interprets the term 'changed circumstances' in a manner consistent with the purpose of the CVD statute," in which the "analytical focus" is subsidization. *Pasta from Turkey Preliminary Results*, 74 Fed. Reg. at 47,227; *accord* 19 U.S.C. § 1671(a)(1) (providing for countervailing duties when, *inter alia*, the government of another country "is providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, or sold . . . for importation, into the United States").  Accordingly, as Commerce explained:

> As a general rule, in a CVD CCR {countervailing duty changed circumstances review}, {Commerce} will make an affirmative CVD successorship finding (*i.e.,* that the respondent company is the **same subsidized entity** for CVD cash deposit purposes as the predecessor company) **where there is no evidence of significant changes in the respondent's operations, ownership, corporate or legal structure** . . . **that could have affected the nature and extent of the respondent's subsidy levels.**

*Pasta from Turkey Preliminary Results*, 74 Fed. Reg. at 47,227 (emphases added).

For the sake of providing "clarity, consistency, and predictability," Commerce identified "the following non-exhaustive list of the types of changes that {it} normally consider{s} to be significant and would affect the nature and extent of the requesting party's subsidization." *Id.* These changes include:

> (1) **Changes in ownership**, other than regular buying and selling of publicly owned shares held by a broad array of investors,
>
> (2) **corporate mergers and acquisitions** involving the respondent's consolidated or cross-owned corporate family and outside companies,
>
> and (3) **purchases or sales of significant productive facilities**.

*Id.* at 47,228.  As Commerce explained, in the face of such "{s}ignificant changes in the respondent's operations, ownership, corporate or legal structure that potentially could affect the nature and extent of the company's subsidization," it would be "inappropriate for the Department to affirm a cash deposit rate that had been calculated during a previous time period based on a significantly different factual pattern." *Id.* at 47,227.

Notably, a CCR would **not** determine "whether those changes, in fact, ultimately did affect the respondent's subsidization or by how much" because that question cannot be decided "on the limited facts or within the abbreviated time frame of a CVD CCR."  *Id.* at 47,228.  As this Court has similarly recognized, Commerce's successor-in-interest methodology "simply evaluates the **changes** to a company to determine whether those changes would make it appropriate to treat the former and subsequent company as if they were the **same entity** and entitled to the same cash deposit rate."  *Marsan*, 35 C.I.T. at 231 (second emphasis added).

**B.   Commerce Reasonably Applied Its Methodology In Determining That GreenFirst's Acquisition Of RYAM's Assets Was A Significant Change Precluding A Successor-In-Interest Determination**

Commerce denied GreenFirst's request because "according to the CCR Request" itself, GreenFirst's "acquisition involved the purchase of assets, as opposed to the purchase of the firm, and that RYAM, for which {GreenFirst} claims to be the {successor in interest} continues as a going concern that now partially owns GFFP, the parent of GFFP QC."  *Decision Letter* (PR 13) at 2.  Commerce explained its long-standing position that a successorship finding can be made "**only where there is no evidence of a significant change** that could have affected the nature and extent of respondent's level of subsidization" and then relayed the three examples of significant changes in *Pasta from Turkey*, discussed above, which includes "purchases or sales of significant productive facilities" and "changes" in "ownership." *id.*  Consistent with this explanation, Commerce concluded that GreenFirst's "purchase of the newsprint mill and six

sawmills from RYAM constitutes a 'significant' change under the CCR practice set forth in *Pasta from Turkey*," and therefore, it would be "inappropriate to affirm a cash deposit rate that had been calculated during a previous time-period based on a significantly different factual pattern." *Id.*

This reasoning is entirely consistent with the methodology discussed in Section II.A., which this Court has previously held to be "reasonable and in accordance with law." *Marsan*, 35 C.I.T. at 231. And it is indisputable that this reasoning accurately reflects the facts apparent on the face of GreenFirst's request. *See generally* Changed Circumstance Review Request (PR 1; CR 1). In its request, GreenFirst stated that its predecessor firm (named "9437-6001 Quebec Inc.") paid RYAM $140 million in exchange for "six RYAM lumber mills and one newspaper mill." *Id.* at 4–5. This transaction neatly maps onto the "purchase{} or sale{} of significant productive facilities" example provided in *Pasta from Turkey*. *See Pasta from Turkey Preliminary Results*, 74 Fed. Reg. at 47,228. Additionally, even assuming the mills themselves could be considered the "same entity," they, at a minimum, underwent "changes in ownership, other than regular buying and selling of publicly owned shares held by a broad array of investors," *id.*

In response to Commerce's reasonable application of its lawful methodology, GreenFirst has devised two arguments. To be clear, however, Greenfirst does **not** contend that Commerce failed to abide by any statute or regulation, and does not contend that a factual determination Commerce reached lacks a basis in the record (i.e., substantial evidence). Instead, plaintiffs' arguments rest exclusively on their misguided interpretation of Commerce's decision in *Pasta from Turkey*. GreenFirst Br. at 5–9. Specifically, GreenFirst argues that methodology articulated by Commerce in *Pasta from Turkey* requires two criteria: "(1) the subsidy rate must

have been calculated based upon the specific facts of the predecessor company, and (2)

{Commerce} must intend to calculate an individual subsidy rate for the successor company in an

administrative review."  GreenFirst Br. (ECF No. 22) at 6.  GreenFirst is mistaken.  Commerce's

CVD changed circumstances review methodology does not turn on either supposed criterion.

      To begin, Greenfirst provides no authority, and we are aware of none, for the proposition

that Commerce must have calculated the former company's specific cash deposit rate *via*

individual examination to decline to conduct a changed circumstances review.  Such a threshold

would essentially strip from Commerce its ability to decline a successor-in-interest changed

circumstances review request made by the vast majority of companies—including hundreds of

companies in this proceeding.  *See* GreenFirst Br. at 7 (explaining that there are "hundreds of

other Canadian companies that have not been selected for individual examination"); GreenFirst

Br. Attachment I (Commerce's Respondent Selection Memorandum) (ECF No. 22) at 23

(identifying "290 exporters or producers of softwood lumber from Canada").  Such an

interpretation is not grounded in any authority and should be rejected.

      GreenFirst's second "criterion" fares no better.  GreenFirst is correct that Commerce's

"general practice under {19 U.S.C. § 1677f-1(e)(2)(A)(ii)} is to select respondents accounting

for the largest volume of subject merchandise imports," during the period of review.  *See*

GreenFirst Br. Attachment I (Commerce's Respondent Selection Memorandum) (ECF No. 22) at

29.  However, neither Commerce nor this Court have established that the likelihood of future

individual examination is a factor—much less a requirement—in Commerce's CVD changed

circumstances review analysis under *Pasta from Turkey* or otherwise.

      Contrary to GreenFirst's assertion, the *Pasta from Turkey* decision does not commit that

Commerce "**would** conduct the successor-in-interest analysis" during a future administrative

review in that case, GreenFirst Br. at 8, but merely explains that the "question" of "whether those changes in fact, ultimately did affect the respondent's subsidization or by how much . . . . **can only be decided** based on a full analysis of a complete record compiled in the course of an administrative review and not on the limited facts or within the abbreviated time frame of a CVD CCR." *Pasta from Turkey*, 74 Fed. Reg. at 47,228.  The sentence GreenFirst quotes from *Marsan* is consistent with this unremarkable proposition, merely stating that "it is reasonable for Commerce to **refrain** from delving into an analysis of subsidization because that requires deeper analysis, appropriate for a full administrative review." *Marsan*, 35 C.I.T. at 229.

Because Commerce's CCR methodology does not address—much less require—a likelihood of individual examination in future reviews, this Court should not impose such a criterion here.  *See Marsan*, 35 C.I.T. at 228 (Because "statutory silence provides 'an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,'" Commerce has "discretion to construe the breadth of CCRs" (quoting *Chevron*, 467 U.S. at 843–44)).

In any case, applying GreenFirst's baseless criterion would result in stripping Commerce of its ability to decline a successor-in-interest changed circumstances review request made by the vast majority of companies—including hundreds of companies in this proceeding—because in certain proceedings, only the largest producers are likely to undergo individual examination. Additionally, imposing this supposed criterion would be unworkable because Commerce does not have the foresight to know the future state of RYAM or GreenFirst's production capabilities, or those of the other companies, to determine which producers/exporters will be individually

examined in future administrative reviews.  Thus, GreenFirst's contention that it "will never be selected for individual examination," GreenFirst Br. at 8, is speculative.[3]

**C.   GreenFirst's Allegations Of Harm Are Unsubstantiated**

GreenFirst argues that Commerce's determination makes it less likely that it will be selected for individual examination because RYAM and GreenFirst will be considered as separate entities for respondent selection in future administrative reviews, and Commerce "will not combine the volume" of the two.  GreenFirst Br. at 10–11.  This assertion is flatly contradicted by GreenFirst's representations:  If GreenFirst acquired all of RYAM's lumber producing assets in 2021, then there should be no future entries of lumber from Canada produced or exported by RYAM.

GreenFirst also argues that it will continue to suffer a "perpetual injury of millions of dollars" because its entries will be subject to the "all-others" rate as opposed to RYAM's "non-selected" rate.  GreenFirst Br. at 12.  As a result, according to GreenFirst, it will have to allocate "approximately three years of cash deposits at a 14.19 percent *ad valorem* rate, a significant strain on the company."  *Id.*  As an initial matter, a company's potential or future experience of a "significant strain" is not a criterion of Commerce's analysis of whether to conduct a changed circumstances review.  *See Pasta from Turkey Preliminary Results*, 74 Fed. Reg. 47,225; *see also Certain Pasta from Turkey: Final Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 54,022 (Oct. 21, 2009) (adopting methodology).

---

[3]  GreenFirst's production capabilities at the time of the next administrative review are particularly difficult to predict because GreenFirst owns another lumber mill (Kenora Sawmill) that was merely "idle" as of the date of GreenFirst's nearly year-old request.  *See* Changed Circumstances Review Request (Oct. 4, 2021) at 4.  If GreenFirst turns Kenora Sawmill back online, it could increase the amount of subject merchandise produced and exported by GreenFirst, which could impact where GreenFirst falls on the list of largest producers or exporters for purposes of respondent selection, and therefore, individual examination.

In any case, although we cannot know with certainty, GreenFirst will most likely receive the same non-selected company cash deposit rate as RYAM following the 2021 administrative review because both GreenFirst and RYAM (which is still an operating entity) requested an administrative review for the 2021 period of review.  *Initiation Notice*, 87 Fed. Reg. at 13,261–13,262 (both GreenFirst and RYAM are listed as producers/exporters that requested an administrative review for the 2021 period of review).  Thus, if each are not selected as a mandatory respondent to be individually reviewed, both RYAM and GreenFirst will receive the *same* non-selected cash deposit rate as a result of the review covering the 2021 period.  *See Initiation Notice* 87 Fed. Reg. at 13,261; *see also Certain Softwood Lumber Products From Canada: Final Results and Final Rescission, In Part, of the Countervailing Duty Administrative Review, 2020,* 87 Fed. Reg. at 48,455, 48,456 ("we applied a subsidy rate based on a weighted average of the subsidy rates calculated for the reviewed companies using sales data submitted by those companies to calculate a rate for the companies not selected for review.").  Accordingly, GreenFirst's cash deposit rate—which is only an estimate until the completion of the administrative review—will only be higher than RYAM's for a relatively short amount of time. *See Capella Sales & Servs. Ltd. v. United States*, 180 F. Supp. 3d 1293, 1303 (Ct. Int'l Trade 2016) ("The final determination in an administrative review is 'the basis for the assessment of countervailing{ } duties on entries of merchandise covered by the determination and for deposits of estimated duties,' the cash deposit rate, for entries made by the party thereafter." (quoting 19 U.S.C. § 1675(a)(2)(C))), *aff'd sub nom. Capella Sales & Servs. Ltd. v. United States, Aluminum Extrusions Fair Trade Comm.*, 878 F.3d 1329 (Fed. Cir. 2018).

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's decision and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL:

Jesus N. Saenz
Attorney
Office of the Chief Counsel
  for Trade, Enforcement, and Compliance
U.S. Department of Commerce
Washington, D.C. 20230

Dated September 6, 2022

/s/ Bret R. Vallacher
BRET R. VALLACHER
Trial Attorney
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-0465
Email: bret.r.vallacher@usdoj.gov

*Attorneys for Defendant*

14

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the word-count limitation, in that it contains 3920 words according to the word-count function of the word-processing software used to prepare the memorandum, including text, footnotes, and headings.

/s/Bret Vallacher

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of September, 2022, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

/s/ Bret R. Vallacher