**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |
|---|---|
| GREENFIRST FOREST PRODUCTS INC. AND GREENFIRST FOREST PRODUCTS (QC) INC., ) ) ) ) *Plaintiff*, ) ) v. ) ) UNITED STATES, ) ) *Defendant*. ) ) | Court No. 22-00097 |

**GREENFIRST'S REPLY TO THE UNITED STATES' RESPONSE TO RULE 56.1 MOTION FOR JUDGEMENT ON THE AGENCY RECORD**

Yohai Baisburd
Jonathan Zielinski
Sarah E. Shulman
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300
(202) 567-2301
*YBaisburd@cassidylevy.com*

*Counsel to GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc.*

Date: September 19, 2022

**Table of Contents**

Page

I. Argument ................................................................................................................. 1

    A. The United States' Argument That Commerce Need Not Satisfy Any Criterion When Applying Its Practice Is Unreasonable And Confirms That Commerce Acted Arbitrarily ................................................................................................ 2

        1. The United States ignores that Commerce and this Court have recognized that the *Pasta from Turkey* practice is designed to prevent the transfer of a predecessor company's individually-calculated subsidy rate to a successor company that might have a different "nature and extent of subsidization" ............ 3

        2. The United States ignores that Commerce and this Court have recognized that the *Pasta from Turkey* practice assumes Commerce will conduct a successor-in-interest analysis in a future administrative review ............................ 5

    B. Belittling GreenFirst's Harm As Being Temporary Because GreenFirst Will Likely Ultimately Receive The Unselected Respondent Rate Demonstrates Commerce's Arbitrary Choice To Refuse To Perform A Successor-In-Interest Analysis…..……........................................................................................................ 6

II. Conclusion ............................................................................................................... 7

i

**Table of Authorities**

Court Decisions                                                                 Page(s)

*Marsan Gida Sanayi Ve Ticaret A.S. v. United States,* 35 C.I.T. 222
(Ct. Int'l Trade 2011) ................................................................................................................. 4, 6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29
(1983) ............................................................................................................................................ 3

Administrative Determinations

*Certain Pasta from Turkey: Preliminary Results of Countervailing Duty Changed
Circumstances Review,* 74 Fed. Reg. 47,225 (Sept. 15, 2009) ............................................ 2-5, 7-8

*Certain Pasta from Turkey: Final Results of Countervailing Duty Changed
Circumstances Review,* 74 Fed. Reg. 54,022 (Oct. 21, 2009) ..................................................... 2-3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |  |
|---|---|---|
| GREENFIRST FOREST PRODUCTS INC. AND GREENFIRST FOREST PRODUCTS (QC) INC., | ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Court No. 22-00097 |
| UNITED STATES, | ) ) ) | |
| *Defendant*. | ) ) | |

**GREENFIRST'S REPLY TO THE UNITED STATES' RESPONSE TO RULE 56.1 MOTION FOR JUDGEMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.1(d) of the Rules of the United States Court of International Trade, Plaintiff GreenFirst Forest Products Inc. ("GFFP") and GreenFirst Forest Products (QC) Inc. ("GFFP (QC)") (collectively "GreenFirst") hereby submits this reply to Defendant's response to GreenFirst's motion for judgment on the agency record filed by Defendant the United States. ECF Doc No. 23 (Sep. 6, 2022).

**I.   Argument**

GreenFirst demonstrated in its opening brief that the US Department of Commerce's ("Commerce") refusal to initiate a successor-in-interest changed circumstances review was arbitrary and capricious because it was dependent upon a practice that did not apply to the facts of GreenFirst's request. *See, generally*, ECF. Doc. No. 22 (Jul. 29, 2022). Specifically, Commerce's practice of refusing to initiate a changed circumstances review in countervailing duty cases is premised upon two criteria, *i.e.*, (1) that the existing subsidy rate must have been calculated based upon the specific facts of the predecessor company and (2) that Commerce must

intend to calculate an individual subsidy rate for the successor company in a subsequent administrative review. *Id*. at 6. Neither of these criteria apply to GreenFirst because Rayonier A.M. Canada G.P. ("RYAM"), the predecessor company, has never been assigned a company-specific subsidization rate and GreenFirst was not selected to receive a unique subsidization rate. Consequently, Commerce acted arbitrarily when it relied upon an inapplicable practice, and Commerce's arbitrary actions harm GreenFirst to this day.

The United States does not dispute that the presumptions upon which Commerce's practice was based do not exist for GreenFirst and does not deny that Commerce caused harm to GreenFirst. Instead, the United States argues that Commerce may ignore those presumptions when applying its practice and excuses GreenFirst's harm as being temporary. As explained below, the United States' arguments demonstrate that Commerce acted arbitrarily, and that its determination is not supported by substantial evidence and not in accordance with law.[1]

**A. The United States' Argument That Commerce Need Not Satisfy Any Criterion When Applying Its Practice Is Unreasonable And Confirms That Commerce Acted Arbitrarily**

GreenFirst explained that the cornerstones of Commerce's practice are that a subsidy rate calculated based upon facts specific to a predecessor company should not be transferred to a successor company without a full reinvestigation of the successor company. *Certain Pasta from Turkey: Preliminary Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 47,225, 47,227 (Sept. 15, 2009) ("*Pasta from Turkey*") (unchanged in *Certain Pasta from*

---

[1] As an initial matter, the United States is wrong that GreenFirst does not contend that Commerce failed to abide by any law and does not contend that Commerce's determination is not supported by substantial evidence. ECF Doc No. 23 at 9. To the contrary, GreenFirst explained that Commerce refused to initiate the changed circumstances review despite GreenFirst complying with the requirements for initiating a changed circumstances review (ECF Doc. No. 22 at 5-6) and that Commerce acted arbitrarily when it ignored the substantial evidence against applying the *Pasta from Turkey* practice. *Id*. at 6.

2

*Turkey: Final Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 54,022 (Oct. 21, 2009)).  Thus, the practice presumes that (1) the existing subsidy rate must have been calculated based upon the specific facts of the predecessor company and (2) Commerce must intend to calculate an individual subsidy rate for the successor company in a subsequent administrative review.

Despite citing repeatedly to the above rationale from the *Pasta from Turkey* determination, the United States argues that these criteria do not exist but were "devised" by GreenFirst.  ECF Doc No. 23 at 9.  However, ignoring the purpose and facts that formed a practice when applying that practice is, by definition, arbitrary and capricious.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43-44 (1983) (an agency action is arbitrary and capricious when "the agency 'entirely failed to consider an important aspect of the problem, {and} offered an explanation for its decision that runs counter to the evidence'").

1. The United States ignores that Commerce and this Court have recognized that the *Pasta from Turkey* practice is designed to prevent the transfer of a predecessor company's individually-calculated subsidy rate to a successor company that might have a different "nature and extent of . . . subsidization"

There is no dispute that Commerce has never investigated the nature and extent of RYAM's or GreenFirst's subsidy levels.  Instead, the United States argues that it is unaware of any authority for the proposition that Commerce must have individually calculated the former company's subsidy rate to apply its practice.  ECF Doc No. 23 at 10.  However, Commerce was unambiguous when it implemented that practice, and when it rejected GreenFirst's submission, that this was the entire purpose of it.  Commerce explained that "{m}ajor changes to a company's ownership structure may affect the nature and extent of the countervailable subsidies attributable to the newly-formed company," and thus, it would be "inappropriate to affirm a cash deposit rate that had been calculated during a previous time-period based on a significantly

3

different factual pattern." P.R. 13 at 2.  In other words, the reason Commerce implemented the practice was because it is inappropriate to assign a subsidy rate based upon the specific factual pattern of a predecessor company to a successor company that might have a significantly different factual pattern that affects the nature and extent of that specific subsidy rate.  An individually calculated subsidy rate is the core of the entire practice, and ignoring that foundation is arbitrary.

This Court also recognized that this practice is premised upon there being an individually calculated subsidy rate based upon the unique facts of a company's subsidization.  *Marsan Gida Sanayi Ve Ticaret A.S. v. United States*, 35 C.I.T. 222, 231 (Ct. Int'l Trade 2011) ("{a}s Commerce explained, subsidization often seeks to stabilize a company's financial position or facilitate investment.  Thus, changes in a company's name, ownership, or structure because of corporate reorganization, merger, or acquisition by another company are relevant to subsidy benefits").  Indeed, it is unreasonable for the United States to claim it is unaware of this criterion when it cites repeatedly Commerce's explanation that the *Pasta from Turkey* practice is focused upon the "nature and extent of a respondent's level of subsidization." ECF Doc No. 23 at 4, 7, and 8.

The United States also argues that applying its practice only for companies that have received an individually calculated rate would prevent Commerce from refusing to conduct successor-in-interest changed circumstances reviews on hundreds of companies.  ECF Doc No. 23 at 10.  Although routine in nature, companies do not change names often.  In the nearly five years that the countervailing duty order has existed, and out of the hundreds of companies subject to it, we know of only two other instances of companies requesting a successor-in-

interest changed circumstances review. Commerce will not be burdened by applying its practice in a non-arbitrary manner.

In any event, the only reason applying its practice correctly to only companies that have received an individually calculated rate would limit Commerce is because Commerce *chose* to implement a second unrelated practice of individually examining only two or three companies. ECF Doc No. 23 at 10 (describing Commerce's respondent selection practice). It is unreasonable for Commerce to create one practice to limit its workload and then complain when it has the potential to slightly increase its workload for a second practice.

> 2. The United States ignores that Commerce and this Court have recognized that the *Pasta from Turkey* practice assumes Commerce will conduct a successor-in-interest analysis in a future administrative review

The United States admits that Commerce supported its *Pasta from Turkey* practice by explaining that a successor-in-interest analysis should only be done in the context of an administrative review but argues Commerce never "commit{ed}" to actually doing that analysis. ECF Doc No. 23 at 10-11. Contrary to the United States' argument, Commerce's explanation was not simply an "unremarkable" sentence. *Id*. at 11. It describes the reason why Commerce will decline to conduct a successor-in-interest analysis and dictates the alternative forum in which it will conduct that analysis – it will not do it in a changed circumstances review *because* it will do it in an administrative review. Commerce was blunt when it explained that a sufficient review would not be "feasible within the condensed time frame of a CCR . . . Rather, the Department conducts such an analysis in an administrative review, which is the administrative procedure provided in the statute precisely for this purpose." *Certain Pasta from Turkey*, 74 Fed. Reg. at 47,227. This is why this Court premised its affirmance of the *Pasta from Turkey* practice on the assumption that Commerce would conduct a subsequent administrative review of a successor company, holding that "it is reasonable for Commerce to refrain from delving into an

analysis of subsidization because that requires deeper analysis appropriate for a full administrative review." *Marsan v. United States*, 35 C.I.T. at 229. The United States cannot paradoxically claim that Commerce may refuse to conduct a successor-in-interest analysis in a changed circumstances review because it must be done in an administrative review but also claim that Commerce is not required to conduct that same successor-in-interest analysis in a future administrative review.

The United States is also wrong that GreenFirst's unlikelihood of being individually investigated in the future is speculative. ECF Doc No. 23 at 12. The United States admits that 1) its practice is to only select a few companies for individual examination (*Id*. at 10), 2) that RYAM and GreenFirst have never been selected for individual examination (*Id*. at 2), and 3) that there are hundreds of companies subject to this proceeding (*Id*. at 10). Under this reality, GreenFirst will never be selected for individual examination. To the contrary, it is the United States that is speculating that GreenFirst might suddenly grow multiples of its current production to be selected in the future. *Id*. at 12, n.3. Such speculation cannot excuse Commerce's arbitrary application of its practice.

Finally, The United States repeats its argument that a non-arbitrary application of its practice would limit Commerce's ability to reject changed circumstances requests. *Id*. at 11. As explained above, any limiting of authority is a consequence of Commerce *choosing* to implement two separate practices and refusing to recognize how one might affect the other.

**B.     Belittling GreenFirst's Harm As Being Temporary Because GreenFirst Will Likely Ultimately Receive The Unselected Respondent Rate Demonstrates Commerce's Arbitrary Choice To Refuse To Perform A Successor-In-Interest Analysis**

GreenFirst explained the continual, multimillion-dollar harm it suffers by Commerce's refusal to initiate a changed circumstances review. ECF Doc No. 22 at 10-12. This includes the

burden of posting cash deposits at an unnecessarily high rate despite it being the successor to RYAM. The United States does not dispute this harm but argues incorrectly that it is temporary because there should be no additional RYAM entries and GreenFirst will likely ultimately receive the same non-selected rate as the hundreds of other non-selected companies at the end of the current administrative review. ECF Doc No. 23 at 12-13.

GreenFirst's harm is not limited to the current administrative review. By the time the current review ends, GreenFirst will have posted at least three years' worth of inappropriately high cash deposits. These deposits will cover several review periods and, with each review likely lasting 18 months, this multimillion-dollar harm will not be cured for many years at best.

Finally, the fact that the United States admits that GreenFirst will ultimately receive the same rate as the other non-selected companies demonstrates Commerce's arbitrariness in refusing to initiate the successor-in-interest analysis. As explained above, the entire point of the *Pasta from Turkey* practice is to prevent the individually calculated rate of the predecessor company from transferring to the successor company without an individual investigation of that successor. All parties agree here that:

- RYAM did not receive an individually calculated rate;
- GreenFirst will not receive an individually calculated rate in the current administrative review; and
- GreenFirst will receive the same rate as RYAM in the current administrative review.

In this circumstance, there is simply no reasonable basis for Commerce's refusal to initiate a successor-in-interest changed circumstances review, and that action was arbitrary.

## II. Conclusion

GreenFirst demonstrated why Commerce's reliance on the *Pasta from Turkey* practice to refuse to initiate a changed circumstances review was arbitrary because the purpose and factual

7

basis for that practice do not exist for GreenFirst.  The United States responded by arguing that Commerce may ignore the assumptions built into its practice and that practice's reason for existing.  Blindly applying a practice to a factual circumstance that does not match its purpose is arbitrary and capricious.  This Court should find unlawful Commerce's determination to not initiate a changed circumstances review and should order Commerce to initiate that review.

                         Respectfully submitted,

                         /s/ Yohai Baisburd

                         Yohai Baisburd
                         Jonathan Zielinski
                         Sarah E. Shulman
                         CASSIDY LEVY KENT (USA) LLP
                         *Counsel to GreenFirst Forest Products Inc. and*
                         *GreenFirst Forest Products (QC) Inc.*

September 19, 2022

**Certificate of Compliance with Chambers Procedures 2(B)(1)**

The undersigned hereby certifies that the forgoing submission of "GreenFirst's Reply to the United States' Response to Rule 56.1 Motion for Judgement on the Agency Record" filed on September 19, 2022, contains 2,187 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 7,000 word count limitation set forth in rule 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade.

By: /s/ Yohai Baisburd
Yohai Baisburd