**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

_____
|                                                                    )
GREENFIRST FOREST PRODUCTS INC. AND     )
GREENFIRST FOREST PRODUCTS (QC) INC.,      )
|                                                                    )
|                        *Plaintiffs*,                              )
|                                                                    )
|                        v.                                           )          Court No.  22-00097
|                                                                    )
UNITED STATES,                                            )
|                                                                    )
|                        *Defendant*.                           )
_____)

## PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc. (collectively, "GreenFirst"), respectfully provide this notice of supplemental authority concerning the U.S. Department of Commerce's ("the Department") recent initiation of GreenFirst's refiled request for a changed circumstance review ("CCR") to determine that GreenFirst is the successor-in-interest to Rayonier A.M. Canada G.P. for the purpose of assigning an antidumping duty ("AD") cash-deposit rate under the *Softwood Lumber from Canada* AD order.  For the Court's convenience, the initiation notice is attached.

GreenFirst initially requested the Department conduct an antidumping changed circumstance review in parallel with the countervailing duty ("CVD") changed circumstance review request before the Court.  The Department declined to initiate GreenFirst's request on November 17, 2021.  On September 29, 2022 — while the Department's failure to initiate GreenFirst's CVD CCR request has been pending before this Court — GreenFirst refiled its request for an AD CCR with the Department.  The Department now found that the "information submitted by GreenFirst supporting its claim that GFFP (QC) is the successor-in-interest to

RYAM demonstrates changed circumstances sufficient to warrant such a review." **Attachment** at 69,005.  The Department published its initiation of the AD CCR in the *Federal Register* at *Certain Softwood Lumber Products from Canada: Initiation of Antidumping Duty Changed Circumstances Review*, 87 Fed. Reg. 69,004 (Nov. 17, 2022).

We recognize that the Department applies a different standard for initiating and reviewing an AD CCR which is distinct from the CVD standard at issue in the case at bar. GreenFirst counsel submits this subsequent authority simply to make the Court aware that the Department has now initiated an AD CCR with respect to GreenFirst.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Jonathan Zielinski
Sarah E. Shulman

*Counsel to GreenFirst Forest Products Inc.*
*and GreenFirst Forest Products (QC) Inc.*

Date:   November 17, 2022

# Attachment

Dated: November 9, 2022.

**Lisa W. Wang,**
*Assistant Secretary for Enforcement and Compliance.*

## Appendix I—Scope of the Investigation

The products covered by this investigation are cold-polymerized emulsion styrene-butadiene rubber (ESB rubber). The scope of the investigation includes, but is not limited to, ESB rubber in primary forms, bales, granules, crumbs, pellets, powders, plates, sheets, strip, *etc.* ESB rubber consists of non-pigmented rubbers and oil-extended non-pigmented rubbers, both of which contain at least one percent of organic acids from the emulsion polymerization process.

ESB rubber is produced and sold in accordance with a generally accepted set of product specifications issued by the International Institute of Synthetic Rubber Producers (IISRP). The scope of the investigation covers grades of ESB rubber included in the IISRP 1500 and 1700 series of synthetic rubbers. The 1500 grades are light in color and are often described as "Clear" or "White Rubber." The 1700 grades are oil-extended and thus darker in color, and are often called "Brown Rubber."

Specifically excluded from the scope of this investigation are products which are manufactured by blending ESB rubber with other polymers, high styrene resin master batch, carbon black master batch (*i.e.,* IISRP 1600 series and 1800 series) and latex (an intermediate product).

The products subject to this investigation are currently classifiable under subheadings 4002.19.0015 and 4002.19.0019 of the Harmonized Tariff Schedule of the United States (HTSUS). ESB rubber is described by Chemical Abstracts Services (CAS) Registry No. 9003–55–8. This CAS number also refers to other types of styrene butadiene rubber. Although the HTSUS subheadings and CAS registry number are provided for convenience and customs purposes, the written description of the scope of this investigation is dispositive.

## Appendix II—List of Topics Discussed in the Issues and Decision Memorandum

I. Summary
II. Background
III. Period of Investigation
IV. Scope of the Investigation
V. Russia's Market Economy Status
VI. Changes Since the *Preliminary Determination*
VII. Use of Facts Available, and Adverse Inferences
VIII. Final Determinations of Affiliation and Single Entity Treatment
IX. Discussion of the Issues
   Comment 1: How to Treat SIBUR's Sales of Expired ESBR and Sales Without Production Date Data Found at Verification
   Comment 2: SIBUR's Inventory Carrying Costs and Total Sales Quantity and Value (Q&V) Reconciliation
   Comment 3: Whether to Apply Total Adverse Facts Available (AFA) to SIBUR
   Comment 4: How to Treat SIBUR's Affiliated Party Transactions
   Comment 5: SIBUR's Cost Verification Adjustments
   Comment 6: SIBUR's and TATNEFT's Payment Dates and Credit Expenses
   Comment 7: TATNEFT's U.S. Sales Destinations
   Comment 8: TATNEFT's General and Administrative (G&A) and Financial Expense—Packing Cost
   Comment 9: TATNEFT and TTK's G&A Expense Rate—Other Income and Expenses
X. Recommendation

[FR Doc. 2022–25050 Filed 11–16–22; 8:45 am]

**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### International Trade Administration

[A–122–857]

### Certain Softwood Lumber Products From Canada: Initiation of Antidumping Duty Changed Circumstances Review

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** In response to a request from GreenFirst Forest Products Inc. (GFFP) and GreenFirst Forest Products (QC) Inc. (GFFP (QC)) (collectively, GreenFirst), the Department of Commerce (Commerce) is initiating a changed circumstances review (CCR) of the antidumping duty (AD) order on certain softwood lumber products from Canada. This review will determine whether GFFP (QC) is the successor-in-interest to Rayonier A.M. Canada G.P. (RYAM).

**DATES:** Applicable November 17, 2022.

**FOR FURTHER INFORMATION CONTACT:** Zachary Shaykin, AD/CVD Operations, Office IV, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–2638.

**SUPPLEMENTARY INFORMATION:**

### Background

On August 9, 2022, Commerce published in the **Federal Register** the final results of the third administrative review of the AD *Order*[1] on certain softwood lumber products from Canada.[2] As a result of this administrative review, Commerce assigned a cash deposit rate of 4.76 percent to RYAM based on the non-selected respondent rate (*i.e.,* the weighted-average of the mandatory respondents' weighted-average dumping margins).[3]

The CCR Request explains that on August 28, 2021, GFFP (QC) acquired six lumber mills and one newsprint mill from RYAM. The CCR Request further explains that RYAM previously held an ownership stake in GreenFirst but that, in May 2022, RYAM sold all of its shares in GreenFirst, and as a result RYAM no longer has ties to the lumber industry. Thus, GreenFirst requests that Commerce initiate an expedited CCR to determine that GFFP (QC) is the successor-in-interest to RYAM and, thus, that the AD margin in effect for RYAM under the *Order* should be applied to entries from GFFP (QC).[4]

In its October 18, 2022, submission the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (COALITION, the petitioner) argues that Commerce should reject GreenFirst's request to conduct an expedited CCR of GFFP (QC) pursuant to 19 CFR 351.216(e).[5] The petitioner contends that GFFP (QC) is not the successor-in-interest to RYAM because the lumber assets RYAM sold to GFFP (QC) experienced significant changes to their ownership and management prior to their sale to GFFP (QC).[6] Further, the petitioner argues that the CCR Request improperly treated the names of certain GFFP (QC) officials as business proprietary information and for this reason the CCR Request should be rejected by Commerce.

On October 20, 2022, Commerce held an *ex-parte* meeting with certain government officials from the Government of Canada (GOC) in which Canadian government officials expressed their support for GreenFirst's CCR Request[7] and, on October 24, 2022, the GOC submitted a letter to Commerce expressing its support for GreenFirst's CCR Request.[8]

---

[1] *See Order,* 83 FR at 351.

[2] *See* GreenFirst's letter, "Softwood Lumber from Canada: GreenFirst Forest Products Request for Changed Circumstances Review," dated September 29, 2022 (CCR Request), at 3 and 4.

[3] *See* Petitioner's letter, "Certain Softwood Lumber Products from Canada: Comments on GreenFirst's Request for Changed Circumstances Review," dated October 18, 2022 (Petitioner Comments), at 3.

[4] *See* Petitioner Comments at 9 and 10.

[5] *See* Memorandum, "*Ex Parte* Meeting with the Government of Canada," dated October 21, 2022.

[6] *See* GOC's Letter submitted on October 24, 2022 (ACCESS Barcode: 4303828–01).

---

[1] *See Certain Softwood Lumber Products from Canada: Antidumping Duty Order and Partial Amended Final Determination,* 83 FR 350 (January 3, 2018) (*Order*).

[2] *See Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020,* 87 FR 48465 (August 9, 2022) (*Lumber V AR3*).

## Scope of the Order

The merchandise covered by the *Order* is softwood lumber, siding, flooring and certain other coniferous wood (softwood lumber products). The scope includes:

• Coniferous wood, sawn, or chipped lengthwise, sliced or peeled, whether or not planed, whether or not sanded, or whether or not finger-jointed, of an actual thickness exceeding six millimeters.

• Coniferous wood siding, flooring, and other coniferous wood (other than moldings and dowel rods), including strips and friezes for parquet flooring, that is continuously shaped (including, but not limited to, tongued, grooved, rebated, chamfered, V-jointed, beaded, molded, rounded) along any of its edges, ends, or faces, whether or not planed, whether or not sanded, or whether or not end-jointed.

• Coniferous drilled and notched lumber and angle cut lumber.

• Coniferous lumber stacked on edge and fastened together with nails, whether or not with plywood sheathing.

• Components or parts of semi-finished or unassembled finished products made from subject merchandise that would otherwise meet the definition of the scope above.

Finished products not covered by the scope of this *Order*. For the purposes of this scope, finished products contain, or are comprised of, subject merchandise and have undergone sufficient processing such that they can no longer be considered intermediate products, and such products can be readily differentiated from merchandise subject to this *Order* at the time of importation. Such differentiation may, for example, be shown through marks of special adaptation as a particular product. The following products are illustrative of the type of merchandise that is considered "finished" for the purpose of this scope: I-joists; assembled pallets; cutting boards; assembled picture frames; garage doors.

The following items are excluded from the scope of this *Order*:

• Softwood lumber products certified by the Atlantic Lumber Board as being first produced in the Provinces of Newfoundland and Labrador, Nova Scotia, or Prince Edward Island from logs harvested in Newfoundland and Labrador, Nova Scotia, or Prince Edward Island.

• U.S.-origin lumber shipped to Canada for processing and imported into the United States if the processing occurring in Canada is limited to one or more of the following: (1) Kiln drying;

(2) planing to create smooth-to-size board; or (3) sanding.

• Box-spring frame kits if they contain the following wooden pieces— two side rails, two end (or top) rails and varying numbers of slats. The side rails and the end rails must be radius-cut at both ends. The kits must be individually packaged and must contain the exact number of wooden components needed to make a particular box-spring frame, with no further processing required. None of the components exceeds 1″ in actual thickness or 83″ in length.

• Radius-cut box-spring-frame components, not exceeding 1″ in actual thickness or 83″ in length, ready for assembly without further processing. The radius cuts must be present on both ends of the boards and must be substantially cut so as to completely round one corner.

Softwood lumber product imports are generally entered under Chapter 44 of the Harmonized Tariff Schedule of the United States (HTSUS). This chapter of the HTSUS covers "Wood and articles of wood." Softwood lumber products that are subject to this *Order* are currently classifiable under the following ten-digit HTSUS subheadings in Chapter 44: 4406.91.0000; 4407.10.01.01; 4407.10.01.02; 4407.10.01.15; 4407.10.01.16; 4407.10.01.17; 4407.10.01.18; 4407.10.01.19; 4407.10.01.20; 4407.10.01.42; 4407.10.01.43; 4407.10.01.44; 4407.10.01.45; 4407.10.01.46; 4407.10.01.47; 4407.10.01.48; 4407.10.01.49; 4407.10.01.52; 4407.10.01.53; 4407.10.01.54; 4407.10.01.55; 4407.10.01.56; 4407.10.01.57; 4407.10.01.58; 4407.10.01.59; 4407.10.01.64; 4407.10.01.65; 4407.10.01.66; 4407.10.01.67; 4407.10.01.68; 4407.10.01.69; 4407.10.01.74; 4407.10.01.75; 4407.10.01.76; 4407.10.01.77; 4407.10.01.82; 4407.10.01.83; 4407.10.01.92; 4407.10.01.93; 4407.11.00.01; 4407.11.00.02; 4407.11.00.42; 4407.11.00.43; 4407.11.00.44; 4407.11.00.45; 4407.11.00.46; 4407.11.00.47; 4407.11.00.48; 4407.11.00.49; 4407.11.00.52; 4407.11.00.53; 4407.12.00.01; 4407.12.00.02; 4407.12.00.17; 4407.12.00.18; 4407.12.00.19; 4407.12.00.20; 4407.12.00.58; 4407.12.00.59; 4407.13.0000; 4407.14.0000; 4407.19.0001; 4407.19.0002; 4407.19.0054; 4407.19.0055; 4407.19.0056; 4407.19.0057; 4407.19.0064; 4407.19.0065; 4407.19.0066; 4407.19.0067; 4407.19.0068; 4407.19.0069; 4407.19.0074; 4407.19.0075;

4407.19.0076; 4407.19.0077; 4407.19.0082; 4407.19.0083; 4407.19.0092; 4407.19.0093; 4409.10.05.00; 4409.10.10.20; 4409.10.10.40; 4409.10.10.60; 4409.10.10.80; 4409.10.20.00; 4409.10.90.20; 4409.10.90.40; 4418.30.0100; 4418.50.0010; 4418.50.0030; 4418.50.0050; and 4418.99.10.00.

Subject merchandise as described above might be identified on entry documentation as stringers, square cut box-spring-frame components, fence pickets, truss components, pallet components, flooring, and door and window frame parts. Items so identified might be entered under the following ten-digit HTSUS subheadings in Chapter 44: 4415.20.40.00; 4415.20.80.00; 4418.99.9105; 4418.99.9120; 4418.99.9140; 4418.99.9195; 4421.99.70.40; and 4421.99.9880.

Although these HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of this *Order* is dispositive.

## Initiation of CCR

Pursuant to section 751(b)(1)(A) of the Tariff Act of 1930, as amended (the Act), and 19 CFR 351.216(d), Commerce will conduct a CCR upon receipt of a request from an interested party for a review of an AD order which shows changed circumstances sufficient to warrant a review of the order. In the past, Commerce has used CCRs to address the applicability of cash deposit rates after there have been changes in the name or structure of a respondent, such as a merger or spinoff (successor-in interest or successorship determinations).[9] The information submitted by GreenFirst supporting its claim that GFFP (QC) is the successor-in-interest to RYAM demonstrates changed circumstances sufficient to warrant such a review.[10] Therefore, in accordance with section 751(b)(1)(A) of the Act and 19 CFR 351.216(d) and (e), we are initiating this CCR based on the information contained in the GreenFirst's CCR Request.[11]

Commerce will issue a questionnaire requesting additional information for the review, and will publish in the **Federal Register** a notice of the

[9] *See, e.g., Diamond Sawblades and Parts Thereof from the People's Republic of China: Initiation and Preliminary Results of Antidumping Duty Changed Circumstances Review,* 82 FR 51605 and 51606 (November 7, 2017), unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Review,* 82 FR 60177 (December 19, 2017).

[10] *See* 19 CFR 351.216(d).

[11] *See* CCR Request.

preliminary results, in accordance with 19 CFR 351.221(b)(2) and (4), and 19 CFR 351.221(c)(3)(i). The notice will set forth the factual and legal conclusions upon which our preliminary results are based and a description of any action proposed based on those results. Pursuant to 19 CFR 351.221(b)(4)(ii), interested parties will have an opportunity to comment on the preliminary results. In accordance with 19 CFR 351.216(e), Commerce intends to issue the final results no later than 270 days after the date on which the review is initiated. Note that Commerce has modified certain of its requirements for serving documents containing business proprietary information until July 17, 2020, unless extended.[12]

**Notification to Interested Parties**

This notice is published in accordance with sections 751(b)(1) and 777(i)(1) of the Act, and 19 CFR 351.216(b), 351.221(b), and 351.221(c)(3).

Dated: November 14, 2022.

**James Maeder,**

*Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations.*

[FR Doc. 2022–25075 Filed 11–16–22; 8:45 am]

**BILLING CODE 3510–DS–P**

# DEPARTMENT OF COMMERCE

## National Oceanic and Atmospheric Administration

[RTID 0648–XC532]

## Caribbean Fishery Management Council; Public Meeting

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice of public hybrid meeting (in-person/virtual).

**SUMMARY:** The Caribbean Fishery Management Council (CFMC) will hold the 180th public hybrid meeting to address the items contained in the tentative agenda included in the **SUPPLEMENTARY INFORMATION.**

**DATES:** The 180th CFMC public hybrid meeting will be held on December 6, 2022, from 9 a.m. to 5 p.m., and on December 7, 2022, from 9 a.m. to 4:45 p.m., AST.

**ADDRESSES:**

*Meeting address:* The meeting will be held at the Embassy Suites Hotel, Tartak Street, Carolina, Puerto Rico 00979.

[12] *See Temporary Rule Modifying AD/CVD Service Requirements Due to COVID–19; Extension of Effective Period,* 85 FR 29615 (May 18, 2020).

You may join the 180th CFMC public hybrid meeting via Zoom, from a computer, tablet or smartphone by entering the following address: Join Zoom Meeting, *https:// us02web.zoom.us/j/83060685915? pwd=VmVsc1orSUtKck8x Yk1XOXNDY1ErZz09.*

*Meeting ID:* 830 6068 5915.
*Passcode:* 995658.
*One tap mobile:*
+17879451488,,83060685915#,,,,,,
0#,,995658# Puerto Rico
+17879667727,,83060685915#,,,,,,
0#,,995658# Puerto Rico
*Dial by your location:*
+1 787 945 1488 Puerto Rico
+1 787 966 7727 Puerto Rico
+1 939 945 0244 Puerto Rico
*Meeting ID:* 830 6068 5915.
*Passcode:* 995658.

In case there are problems and we cannot reconnect via Zoom, the meeting will continue using GoToMeeting.

You can join the meeting from your computer, tablet or smartphone. *https:// global.gotomeeting.com/join/ 971749317.* You can also dial in using your phone. United States: +1 (408) 650–3123 Access Code: 971–749–317.

**FOR FURTHER INFORMATION CONTACT:** Miguel A. Rolón, Executive Director, Caribbean Fishery Management Council, 270 Muñoz Rivera Avenue, Suite 401, San Juan, Puerto Rico 00918–1903, telephone: (787) 398–3717.

**SUPPLEMENTARY INFORMATION:** The following items included in the tentative agenda will be discussed:

**December 6, 2022**

*9 a.m.–9:30 a.m.*

—Call to Order
—Roll Call
—Adoption of Agenda
—Consideration of 179th Council Meeting Verbatim Transcriptions
—Executive Director's Report

*9:30 a.m.–10:45 a.m.*

—Updates on Island Based Fishery Management Plans (FMPs) and Current Amendments (Spiny Lobster Amendment, Buoy Gear Amendment)
—Trawl and Net Gear and Descending Devices Amendment to the Island-Based FMPs

*10:45 a.m.–11 a.m.*

—Break

*11 a.m.–12 p.m.*

—Pelagic Fish Amendment to the Island-Based FMPs
—Dolphinfish Issues

*12 p.m.–1:30 p.m.*

—Lunch

*1:30–2:30*

—Managing Trap Fisheries in the USVI: Review of Pertinent State and Federal Regulations

*2:30 p.m.–3:30 p.m.*

—NMFS Protected Resources Updates -Southeast Regional Office (SERO)
—Proposed Rule to List the Queen Conch as Threatened Under the Endangered Species Act
—Proposed Rule to Designate Critical Habitat for the Threatened Nassau Grouper

*3:30 p.m.–3:45 p.m.*

—Break

*3:45 p.m.–4:15 p.m.*

—Scientific and Statistical Committee (SSC) Report—Richard Appeldoorn, Chair
—SEDAR 80 Queen Triggerfish
—Spiny Lobster Update—SEDAR 57 Update

*4:15 p.m.–4:45 p.m.*

—Southeast Fisheries Science Center (SEFSC) Update

*4:45 p.m.–5 p.m.*

—Public Comment Period (5-minute presentations)

*5 p.m.*

—Adjourn for the Day

*5:15 p.m.–5:45 p.m.*

—Closed Session

**December 7, 2022**

*9 a.m.–10 a.m.*

—Caribbean Fishery Management Council, Scientific and Statistical Committee Practices and Procedures Concerning Objectivity and Conflicts of Interest—K. Zamboni, NOAA–GC

*10 a.m.–10:30 a.m.*

—Descending Devices Presentation and Discussion—Melissa Crouch

*10:30 a.m.–10:45 a.m.*

—Break

*10:45 a.m.–11 a.m.*

—Recreational Fisheries—Russell Dunn, NOAA National Policy Advisor on Recreational Fisheries

*11 a.m.–12 p.m.*

—Outreach and Education Advisory Panel Report—Alida Ortiz, Chair
—Social Network Activities Report—Cristina Olán

*12 p.m.–1:30 p.m.*

—Lunch Break