Slip Op. 22-126

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **GREENFIRST FOREST PRODUCTS, and GREENFIRST FOREST PRODUCTS (QC) INC.,** <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant. | Before: Claire R. Kelly, Judge <br><br> Court No. 22-00097 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's denial of plaintiffs' request for a changed circumstances review.]

Dated: November 18, 2022

Yohai Baisburd, Sarah E. Shulman, and Jonathan Zielinski, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for plaintiffs GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc.

Bret R. Vallacher, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Claudia Burke, Assistant Director. Of counsel was Jesus N. Saenz, Attorney, Office of the Chief Counsel for Trade, Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

**Kelly, Judge:** Plaintiffs GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc. (collectively, "GreenFirst") challenge the U.S. Department of Commerce's ("Commerce") refusal to conduct a changed circumstances review ("CCR") of Commerce's countervailing duty ("CVD") order covering softwood lumber

from Canada. For the following reasons, the court remands Commerce's decision for further explanation or reconsideration.

## BACKGROUND

On November 8, 2017, Commerce issued its final determination that the Canadian government provided countervailable subsidies for certain softwood lumber products from Canada. Certain Softwood Lumber Products from Canada, 82 Fed. Reg. 51,814 (Dep't Commerce Nov. 8, 2017) (Final Affirmative [CVD] Determination, and Final Neg. Determination of Critical Circumstances), as amended by Certain Softwood Lumber Products from Canada, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) (Amended Final Affirmative [CVD] Determination and [CVD] Order) ("Softwood Lumber from Canada"). When Commerce initially imposed the resulting CVDs, Rayonier A.M. Canada G.P. ("RYAM") was a Canadian softwood lumber producer subject to the CVD order. Compl. ¶ 2, Mar. 25, 2022, ECF No. 2. However, Commerce did not select RYAM as a respondent, so Commerce assigned it the "all-others rate" of 14.19%. See Softwood Lumber from Canada, 83 Fed. Reg. at 348. Although RYAM requested to be reviewed in subsequent administrative reviews, it was not selected for review and Commerce assigned RYAM the "non-selected companies rate." Compl. ¶ 2; Certain Softwood Lumber Products from Canada, 86 Fed. Reg. 68,467 (Dep't Commerce Dec. 2, 2021) (Final Results of the [CVD] Admin. Review, 2019), as amended by Certain Softwood Lumber Products from Canada, 87 Fed. Reg. 1,114, 1,115, 1,117 (Dep't Commerce Jan. 10, 2022) (Notice

of Amended Final Results of the [CVD] Admin. Review, 2019). As a non-selected company, RYAM's cash deposit rate is 6.32% based on the most recently completed administrative review. Id.[1]

GreenFirst claims it is the successor-in-interest to RYAM. Compl. ¶¶ 3–4. GreenFirst acquired RYAM's entire lumber and newsprint business, including RYAM's mills, inventory, employees, customers, and vendor relationships on August 28, 2021. Id. ¶¶ 2–3.[2] On October 4, 2021, GreenFirst requested that Commerce conduct a CCR to determine that it is RYAM's successor-in-interest. Id. ¶¶ 4, 13, Attach. A. If Commerce determines that GreenFirst is RYAM's successor-in-interest, GreenFirst would be subject to RYAM's cash deposit rate of 6.32% rather than the all-others rate of 14.19% from Commerce's initial investigation. Id. ¶ 4.

On November 16, 2021, Commerce denied GreenFirst's request to initiate a CCR. Compl. ¶¶ 5, 14, Attach. A. Commerce stated that as a matter of practice it does not conduct a CCR when there is evidence of a "significant change" that could have affected the nature and extent of subsidization. Id., Attach. A (citing Certain Pasta from Turkey, 74 Fed. Reg. 47,225, 47,227–28 (Dep't Commerce Sept. 15, 2009) (Prelim. Results of [CVD CCR]), unchanged in Certain Pasta from Turkey, 74 Fed. Reg. 54,022 (Dep't Commerce Oct. 21, 2009) (Final Results of [CVD CCR])) ("Pasta

---

[1] Companies which import merchandise subject to CVD orders must pay cash deposits for entries subject to ongoing administrative reviews at the rate assigned to them during the most recently completed administrative review. 19 C.F.R. § 351.212(a).
[2] GreenFirst claims it did not produce lumber prior to August 2021. Compl. ¶ 2.

from Turkey"). Commerce found that GreenFirst's acquisition of RYAM's lumber and newsprint businesses constituted a significant change, and therefore refused to initiate a CCR. Id. On January 18, 2022, GreenFirst requested that Commerce reconsider its refusal to initiate a CCR. Compl. ¶ 15. On February 24, 2022, Commerce denied GreenFirst's request for reconsideration, again finding that a significant change had taken place which precluded a CCR under its practice. Compl. ¶ 18, Attach. A. On March 25, 2022, GreenFirst challenged Commerce's refusal to initiate a CCR as arbitrary and capricious. Compl. ¶¶ 24, 27. GreenFirst filed a motion for judgment on the agency record, which is before the court. Pl.'s Mot. J. Agency Rec., July 29, 2022, ECF No. 22 ("Pl.'s Mot."); Memo. Points of Law and Fact Support [Pl.'s Mot.], July 29, 2022, ECF No. 22 ("Pl.'s Br.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(i)(2), (4) (2018). The court reviews an action brought under 28 U.S.C. § 1581(i) under the same standards as provided under section 706 of the Administrative Procedure Act ("APA"), as amended. See 28 U.S.C. § 2640(e). Under the statute, the reviewing court shall:

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law

5 U.S.C. § 706(1), (2)(A).

Under the arbitrary and capricious standard, courts consider whether the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Alabama Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

## DISCUSSION

GreenFirst contends Commerce arbitrarily and capriciously deviated from its practice of conducting CCRs for successor-in-interest companies by relying upon an inapposite exception to its practice. Pl.'s Br. at 4–9. It argues, and Defendant concurs, that Commerce's practice is to conduct successor-in-interest CCRs except where there is evidence of significant changes that could affect the subsidy rate calculated for the predecessor company. Id. at 5; Def.'s Resp. to [Pl.'s Mot], 6, Sept. 6, 2022, ECF No. 23 ("Def.'s Br."). However, GreenFirst argues that Commerce's exception to its practice only applies where: (1) the predecessor company was individually examined, and (2) the successor company will be administratively reviewed. Pl.'s Br. at 6. GreenFirst argues neither prerequisite is present, and therefore Commerce's reliance on its significant changes practice is arbitrary. Id. at 9. Defendant argues Congress delegated to Commerce the authority to set criteria for CCRs, which Commerce has done by explaining that it will only conduct a CCR

Court No. 22-00097 Page 6

where there is no evidence of significant changes to the company, and that its practice is reasonable. Def.'s Br. at 6–7. For the reasons that follow, the court remands Commerce's denial of GreenFirst's request for a CCR for further explanation or reconsideration.

Pursuant to section 751(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(b)(1) (2018),[3] Commerce shall review an affirmative CVD determination whenever it receives information from an interested party which shows "changed circumstances sufficient to warrant a review of such determination." Id. The statute does not define "changed circumstances." Through practice, Commerce has established that successor-in-interest companies may be entitled to a CCR. See, e.g., Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Turkey: Not. of Initiation and Prelim. Results of [CVD CCR], 87 Fed. Reg. 10,772, 10,773 (Feb. 25, 2022) (finding a respondent was a successor-in-interest for CVD purposes); Certain Cold-Rolled Steel Flat Products and Certain Corrosion-Resistant Steel Products from the Republic of Korea: Prelim. Results of [CVD CCRs], 86 Fed. Reg. 287, 287, (Jan. 5, 2021) (finding a respondent was not a successor-in-interest for CVD purposes).

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

Commerce has further established that it will not conduct a successor-in-interest CCR when there is evidence of significant changes to a company. In Pasta from Turkey, Commerce explained the rationale for its significant changes practice:

> As a general rule, in a CVD CCR, the Department will make an affirmative CVD successorship finding (i.e., that the respondent company is the same subsidized entity for CVD cash deposit purposes as the predecessor company) where there is no evidence of significant changes in the respondent's operations, ownership, corporate or legal structure during the relevant period . . . that could have affected the nature and extent of the respondent's subsidy levels.

Pasta from Turkey, 74 Fed. Reg. at 47,227. As illustrated by Pasta from Turkey, Commerce has concluded that because it will not allow a putative successor-in-interest company with significant changes to acquire the cash deposit rate of a predecessor company, it will not conduct a CCR where it has evidence of significant changes. Id. at 42,225, 42,227. Thus, Commerce uses its significant changes practice as a screening mechanism to weed out CCR requests where changes in the company may have impacted the rate of subsidization. See, e.g., Commerce Ltr. re: POSCO Request for [CCR], bar code 4260700-01 (July 6, 2022) (declining to conduct CCR due to significant changes in respondent); Commerce Ltr. re: CHAP Request for [CCR], bar code 4140114-01 (July 6, 2021) (declining to conduct CCR under Pasta from Turkey practice).

This court held that Commerce's significant changes practice as articulated in Pasta from Turkey was reasonable in Marsan Gida Sanayi Ve Ticaret A.S. v. United States, 35 CIT 222, 225 (2011) ("Marsan"). The court explained that a CVD CCR

Court No. 22-00097                                                                                                    Page 8

determines whether a company is the same subsidized entity as a predecessor company; if the company is the same, then the CCR will allow it to obtain the same rate. Id. at 231. If the successor is different from its predecessor, it would likely have different levels of subsidization such that it would be inappropriate for it to obtain the predecessor's rate. Id. at 231–32. The respondent in Pasta from Turkey had been individually examined in the prior administrative review, and Marsan sought a CCR claiming to be its successor-in-interest. Certain Pasta from Turkey: Final Results of [CVD] Admin. Rev., 71 FR 52,774 (Sept. 7, 2006) (final determination of CVD rate for respondent). Marsan challenged Commerce's denial of its CCR request and assignment of the all-others rate, arguing that a change in the company's ownership should not, as a significant change, automatically preclude a successorship finding in the CVD context. Marsan, 35 CIT at 226. The court held Commerce's practice was reasonable, stating "subsidization often seeks to stabilize a company's financial position or facilitate investment." Id. at 231. Thus, the court reasoned "changes in a company's name, ownership pr structure because of corporate reorganization, merger or acquisition by another company are relevant to subsidy benefits." Id.

In this case it is unclear from Commerce's explanation why its significant change practice applies. In denying the request for a CCR Commerce invokes its Pasta from Turkey practice explaining when a significant change is present Commerce finds it "inappropriate to affirm a cash deposit rate that had been calculated during a previous time period based upon a significantly different fact

pattern." [CVD CCR] Decision not to Initiate, 2, Nov. 16, 2021, ECF 18-4. As explained in Pasta from Turkey and Marsan, the practice applies when a successor-in-interest stands to inherit a company's individually-calculated rate. In Commerce's letter rejecting GreenFirst's request for a CCR, Commerce notes that acquisition of RYAM's six lumber mills and one pulp mill constitutes a significant change. Id. Implicit in Commerce's explanation is that the rate is a function of RYAM's actual level of subsidization, which is unique to RYAM and not necessarily applicable to GreenFirst. As GreenFirst points out, however, Commerce calculated RYAM's rate by averaging the rates of non-selected companies, and not by individually examining RYAM. See Softwood Lumber from Canada, 83 Fed. Reg. at 348; Pl.'s Mot. at 7.

Defendant contends that Commerce's Pasta from Turkey practice applies regardless of whether a company has been individually examined. It explains it "does not examine *how* a 'significant change' impacted subsidization levels of the predecessor," but is only concerned with whether or not a change occurred. [CVD CCR] Request Recon. Decision not to Initiate, 2, Feb. 24, 2022, ECF 18-5 (emphasis in original). But Commerce does not explain why applying the practice in such circumstances is reasonable. Defendant argues that Commerce's rationale is distinct from its practice, Def.'s Br. at 10 ("Greenfirst provides no authority . . . for the proposition that Commerce must have calculated the former company's specific cash deposit rate via individual examination"); however, the reasonableness of Commerce's practice depends on its rationale. See Ceramica Regiomontana, S.A. v.

United States, 636 F. Supp. 961, 966 (Ct. Int'l Trade 1986), aff'd, 810 F.2d 1137 (Fed. Cir. 1987) ("As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose . . . the court will not . . . question the agency's methodology"). Here, because RYAM was never individually examined, the court cannot discern why it would be reasonable for Commerce to apply its Pasta from Turkey practice to deny GreenFirst's request for a CCR.[4] On remand, Commerce must either reconsider or further explain the basis for its determination that its significant changes practice applies where the predecessor company was not individually examined.

## CONCLUSION

In accordance with the foregoing, it is

**ORDERED** that Commerce's determination is remanded for further explanation or reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the court within 90 days of this date; and it is further

---

[4] GreenFirst also contends Commerce's application of its significant changes practices is arbitrary unless Commerce individually calculates the successor company's rate during a later administrative review. Pl.'s Br. at 6, 8–9. This misinterprets Commerce's practice. The reason why Commerce refuses to grant successor-in-interest status is the potential for improper inheritance of an individually-calculated rate. See Marsan, 35 CIT at 231–32. Commerce has not indicated that whether a company is later examined forms any part of the rationale for its significant changes practice. Indeed, such an exception would swallow the rule because, as GreenFirst admits, the vast majority of companies will never be examined. Pl.'s Br. at 9. Rather, Commerce's practice is not to calculate a new subsidy rate during a CCR, owing to the abbreviated nature of the process. Pasta from Turkey, 74 Fed. Reg. at 47227.

Court No. 22-00097 Page 11

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing of its remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix within 14 days of the date of filing of responses to the comments on the remand redetermination.

    /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: November 18, 2022
New York, New York