**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |
|---|---|
| GREENFIRST FOREST PRODUCTS INC. AND GREENFIRST FOREST PRODUCTS (QC) INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*. | Court No. 22-00097 |

**GREENFIRST'S COMMENTS ON FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

Yohai Baisburd
Jonathan Zielinski
Sarah E. Shulman
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300
(202) 567-2301
*YBaisburd@cassidylevy.com*

*Counsel to GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc.*

Date:  April 3, 2023

## Table of Contents

Page

I. Argument .................................................................................................................... 1

    A. The Court Determined Correctly When It Ordered The Remand That The *Pasta From Turkey* Practice Is Premised Upon The Predecessor Company Having An Individually Calculated Subsidy Rate ............................................................... 2

    B. The Final Remand Ignores The Court's Determination And The Purpose Of The *Pasta From Turkey* practice .......................................................................... 3

        1. Whether the predecessor company was previously examined is central to the *Pasta from Turkey* practice ............................................................... 4

        2. Commerce is wrong that the language in *Pasta from Turkey* does not require the predecessor company to have been individually examined ................... 5

II. Conclusion ................................................................................................................. 7

## **Table of Authorities**

Court Decisions                                                                                                                                  Page(s)

*Marsan Gida Sanayi Ve Ticaret A.S. v. United States,* 35 C.I.T. 222
(Ct. Int'l Trade 2011) ................................................................................................................. 3, 7

Administrative Determinations

*Certain Pasta from Turkey: Preliminary Results of Countervailing Duty Changed
Circumstances Review,* 74 Fed. Reg. 47,225 (Sept. 15, 2009) ..................................................... 1-6

*Certain Pasta from Turkey: Final Results of Countervailing Duty Changed
Circumstances Review,* 74 Fed. Reg. 54,022 (Oct. 21, 2009) ......................................................... 1

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| GREENFIRST FOREST PRODUCTS INC. AND GREENFIRST FOREST PRODUCTS (QC) INC., | ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) ) | Court No. 22-00097 |
| UNITED STATES, | ) ) ) | |
| *Defendant*. | ) ) ) | |

**GREENFIRST'S COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Pursuant to the Court's March 21, 2023 Order (ECF No. 31), Plaintiff GreenFirst Forest Products Inc. ("GFFP") and GreenFirst Forest Products (QC) Inc. ("GFFP (QC)") (collectively "GreenFirst") hereby comments on the U.S. Department of Commerce's ("Commerce") *Final Results of Redetermination Pursuant to Court Remand*. ECF No. 29 (February 16, 2023) ("Final Remand").

**I.   Argument**

When it remanded Commerce's refusal to initiate a successor-in-interest changed circumstances ("CCR"), this Court held that Commerce applied its *Pasta from Turkey*[1] practice unreasonably because inherent in that practice is that Commerce has calculate an individual subsidy rate for the predecessor company, which Commerce never did here. *See GreenFirst*

---

[1] *Certain Pasta from Turkey: Preliminary Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 47,225, 47,227 (Sept. 15, 2009) ("*Pasta from Turkey*") (unchanged in *Certain Pasta from Turkey: Final Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 54,022 (Oct. 21, 2009)).

*Forest Products, et al. v. United States*, Slip Op. 2022-126 (Nov. 18, 2022) ("*GreenFirst*") at 9 (finding that "the practice applies when a successor-in-interest stands to inherit a company's individually-calculated rate").  In light of this requirement, the Court ordered Commerce to reconsider or explain further why its prior determination was reasonable when the predecessor company has no individual subsidy rate.  *Id*. at 10.

In the Final Remand, Commerce again refuses to initiate a CCR, explaining that whether a predecessor company has been individually examined is irrelevant and that no language in *Pasta from Turkey* expressly requires the predecessor company to have an individual subsidy rate.  However, Commerce's repeating of its already rejected reasoning ignores the Court's previous findings and the purpose of the *Pasta from Turkey* practice.  The Court should remand this action again to Commerce with instructions to initiate the requested CCR.

    **A.**    **The Court Determined Correctly When It Ordered The Remand That The *Pasta From Turkey* Practice Is Premised Upon The Predecessor Company Having An Individually Calculated Subsidy Rate**

In promulgating the *Pasta from Turkey* practice, Commerce explained that the purpose is to prevent a rate of subsidization that was calculated based upon the unique facts of one company from being transferred to a new company without first calculating the new company's subsidy levels.  *Pasta from Turkey* at 47,227.  Commerce further explained that it is more appropriate to instead individually examine the new company's subsidy status in the context of a future administrative review, under which the longer time frame would allow "the submission and analysis of a full questionnaire response (and any supplemental responses), ample time for comment from interested parties, and possible verification." *Id*.  Thus, the *Pasta from Turkey* practice exists so that Commerce does not apply a subsidy rate calculated based upon specific facts of one company to a successor company before Commerce has an opportunity to calculate a new subsidy rate based upon the specific facts of that successor company.

2

Because the *Pasta from Turkey* practice exists to foreclose CCRs where there has been a significant change that could impact the rate of subsidization, its foundation is that there be an individually calculated subsidy rate for the predecessor company. If there is no individually calculated rate, then there can be no concern of transferring one company's "level of subsidization" to another company that experienced significant changes "that could have affected the nature and extent of the respondent's subsidy levels." *Id*. Put simply, there is no reason for the *Pasta from Turkey* practice to exist when the predecessor company has no individually calculated rate.

Citing *Pasta from Turkey* and its affirmance of that practice in *Marsan Gida Sanayi Ve Ticaret A.S. v. United States*, 35 C.I.T. 222, 231 (Ct. Int'l Trade 2011) ("*Marsan*"), the Court recognized this precondition when it held that "the practice applies when a successor-in-interest stands to inherit a company's individually-calculated rate." *GreenFirst* at 9. Applying this logic to Commerce's reliance on *Pasta from Turkey* in the instant case, the Court accurately found it indiscernible "why it would be reasonable for Commerce to apply its *Pasta from Turkey* practice to deny GreenFirst's request for a CCR." *Id*. at 10. In other words, it would be unreasonable to apply *Pasta from Turkey*, a practice built upon avoiding the improper transfer of an individual subsidy rate from one company to another, to a situation where a company never received an individual subsidy rate.

    **B.  The Final Remand Ignores The Court's Determination And The Purpose Of The *Pasta From Turkey* practice**

Despite the Court's correct determination that the *Pasta from Turkey* practice applies when a company "stands to inherit a company's individually-calculated rate," Commerce continued to apply *Pasta from Turkey* in the Final Remand because 1) whether a predecessor company has been individually examined is irrelevant and 2) no language in *Pasta from Turkey*

3

expressly requires the predecessor company to have an individual subsidy rate. As explained below, Commerce's Final Remand ignores the Court's findings and the explicit reasoning of *Pasta from Turkey*.

### 1. Whether the predecessor company was previously examined is central to the *Pasta from Turkey* practice

Commerce determined that whether the predecessor company was individually examined is not a required criterion under the *Pasta from Turkey* practice because "{t}he crux of the CVD successor-in-interest methodology is not whether the predecessor company was individually examined but whether the successor company underwent significant changes in ownership, structure, and productive facilities, such that it is not the same entity as the predecessor company." Final Remand at 7 and 14. However, as explained above, the *Pasta from Turkey* practice is clear that the only reason it would matter that the successor company underwent such significant changes is if those changes "could have affected the nature and extent of the {predecessor company's} subsidy levels." *Pasta from Turkey* at 47,227. And of course, this means the practice only applies when Commerce has determined the nature and extent of the predecessor company's subsidy levels by individually examining it in the first place. Without an individually calculated rate for the predecessor company, there is no nature and extent of subsidization that could be affected by changes in a successor company. This inherent premise is why the Court held that "the practice applies when a successor-in-interest stands to inherit a company's individually-calculated rate." *GreenFirst* at 9.

Moreover, the Court already considered and rejected Commerce's view that the "*Pasta from Turkey* practice applies regardless of whether a company has been individually examined" because it "is only concerned with whether or not a change occurred." *Id*. The Final Remand simply repeats that whether there has been a significant change is a "distinct issue from whether

4

or not the predecessor company was individually examined," but Commerce again fails to explain how a practice that was created to prevent a successor company from inheriting a rate reflective of a predecessor company's level of subsidization can apply when the predecessor company's level of subsidization was never determined.  This lack of rationale is the exact problem the Court already found unreasonable, and Commerce's failure to cure this problem warrants another remand.  *Id*. at 9-10 (explaining that ". . . the reasonableness of Commerce's practice depends on its rationale," and holding that the Court "cannot discern why it would be reasonable for Commerce to apply its Pasta from Turkey practice" when the predecessor company was "never individually examined" (citation omitted)).

### 2. Commerce is wrong that the language in *Pasta from Turkey* does not require the predecessor company to have been individually examined

Rather than addressing with substance the blatant purpose behind the *Pasta from Turkey* practice, Commerce dismisses it as a diversion, stating that if the practice were meant to apply only when a predecessor company had its own calculated rate, "{Commerce} would have stated so," and that there is "no language within *Pasta from Turkey* that expressly limits Commerce's successor-in-interest analysis . . . to cases in which the predecessor company was individually examined." Final Remand at 7-8 and 15.  However, this Court rejected Commerce's previous attempt to divorce its practice from the rationale behind it, explaining that "the reasonableness of Commerce's practice depends on its rationale."  *GreenFirst* at 9-10.

In any event, Commerce is wrong about the lack of limiting language in *Pasta from Turkey*.  When promulgating its practice, Commerce explained that "the limited purpose of a CVD CCR generally is to determine whether a company is essentially the same subsidized entity as the alleged predecessor company *for cash deposit purposes*."  *Pasta from Turkey* at 47,227 (emphasis added).  Because the cash deposit rate is the focus, Commerce further explained that

5

"Significant changes . . . that potentially could affect *the nature and extent of the company's subsidization* are a sufficient basis for *reconsidering what constitutes the best estimate of the respondent's existing subsidy levels*." *Id*. (emphasis added). In other words, the new practice assumed that there was a cash deposit rate that reflected the respondent's existing subsidy levels and declared that significant changes affecting the nature and extent of the subsidization that led to that individual rate would require Commerce to "reconsider" the previously established subsidy levels. Fundamental to this language about the nature and extent of a company's subsidization and reconsidering existing subsidy levels is that Commerce had previously analyzed the predecessor company's level of subsidization, *i.e.*, that it calculated an individual subsidy rate for that company. Without that crucial fact, Commerce's language (and practice) makes no sense.

Indeed, to be crystal clear, Commerce went on to explain that if there are significant changes, "it normally would be inappropriate for the Department to affirm a cash deposit rate *that had been calculated during a previous time period based on a significantly different factual pattern*," and "{c}onversely, where there have not been any such significant changes . . ., it normally is appropriate and reasonable for the Department *to reaffirm the existing 'predecessor' duty deposit rate as the best estimate of the respondent's existing rate of subsidization*." *Id*. (emphasis added). Commerce was unambiguous that the whole point of the practice is to determine whether the previously calculated rate for the predecessor company was based upon a fact pattern that has changed significantly to the point that the individually calculated rate no longer reflects the successor company's rate of subsidization. Underlying all of this explicit language is the understanding that the predecessor company had an individually calculated subsidy rate.

The Court in *Marsan* relied upon the explicit language in *Pasta from Turkey*, finding that "{a}s Commerce explained, subsidization often seeks to stabilize a company's financial position or facilitate investment. Thus, changes in a company's name, ownership, or structure because of corporate reorganization, merger, or acquisition by another company *are relevant to subsidy benefits*." *Marsan* at 231 (emphasis added). Understanding that the new practice was focused upon the predecessor company's calculated subsidy benefits, the Court found that "when Commerce conducts a CCR to determine whether a company is entitled to a *previously calculated CVD cash deposit rate*, it is reasonable for Commerce to refrain from delving into an analysis of subsidization because that requires deeper analysis, appropriate for a full administrative review." *Id*. at 229 (emphasis added). In other words, the Court held that the *Pasta from Turkey* practice is reasonable when subsidy benefits were actually calculated for a predecessor company. And again, the Court in this matter agreed that Commerce's language is clear, explaining that "{a}s explained in *Pasta from Turkey* and *Marsan*, the practice applies when a successor-in-interest stands to inherit a company's individually-calculated rate." *GreenFirst* at 9.

Therefore, the language in *Pasta from Turkey* is explicit that its entire reason for existing is for Commerce to avoid performing CCRs when significant changes exist that affect the previously determined nature and extent of a company's subsidization, *i.e.*, when the predecessor company has an individually calculated rate.

## II.  Conclusion

When it issued its remand in this matter previously, the Court held that the "reasonableness of Commerce's practice depends upon its rationale," and it rejected Commerce's reasoning that its *Pasta from Turkey* practice does not require an individually calculated rate for the predecessor company. *Id*. Commerce's Final Remand repeats the same rejected reasoning.

7

Commerce continues to ignore the purpose of the *Pasta from Turkey* practice and continues to arbitrarily and unreasonably use it where it is inapplicable. For the reasons above, the Court should again remand the matter to Commerce with instructions to initiate the requested CCR.

                                        Respectfully submitted,

                                        /s/ Yohai Baisburd

                                        Yohai Baisburd
                                        Jonathan Zielinski
                                        Sarah E. Shulman
                                        CASSIDY LEVY KENT (USA) LLP
                                        *Counsel to GreenFirst Forest Products Inc. and*
                                        *GreenFirst Forest Products (QC) Inc.*

April 3, 2023