UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| **GREENFIRST FOREST PRODUCTS INC., AND GREENFIRST FOREST PRODUCTS (QC) INC.,** ) ) ) ) *Plaintiffs*, ) ) v. ) ) **UNITED STATES,** ) ) *Defendant.* ) ) | Court No. 22-00097 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

|  |  |
|---|---|
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
| OF COUNSEL: | CLAUDIA BURKE<br>Deputy Director |
| Jesus N. Saenz<br>Attorney<br>Office of the Chief Counsel<br>   for Trade, Enforcement, and Compliance<br>U.S. Department of Commerce<br>Washington, D.C. 20230 | BRET R. VALLACHER<br>Trial Attorney<br>Civil Division, Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C.  20044<br>Telephone: (202) 616-0465 |
| Dated: May 3, 2023 | *Attorneys for Defendant* |

Defendant, the United States, respectfully submits this response to the comments from plaintiffs GreenFirst Forest Products Inc., and GreenForest Products (QC) Inc., (collectively, GreenFirst) concerning the Department of Commerce remand redetermination in this matter. *See* GreenFirst's April 3, 2023 Remand Comments (Comments) (ECF No. 32); *see also GreenFirst Forest Products, et al. v. United States*, Court No. 22-00097, Slip Op. 2022-126 (CIT Nov. 18, 2022) (ECF No. 26) (Opinion) (remanding case); Final Results of Redetermination Pursuant to Court Remand (Remand Redetermination) (ECF No. 29-1) (P.R.R. 3).[1]

## INTRODUCTION

As this Court recognized, in the context of assessing countervailing duties, "the vast majority of companies will never be examined" on an individual basis to determine each company's level of subsidization. Opinion at 10, fn.4. In this case, Rayonier A.M. Canada G.P. (RYAM) was not selected for individual review, and instead, was assigned the "non-selected companies rate." *Id.* at 2; *see also Certain Softwood Lumber Products from Canada: Notice of Amended Final Results of the Countervailing Duty Administrative Review*, 87 Fed. Reg. 1,114 (Dep't of Commerce Jan. 10, 2021) (*Notice of Amended Final Results*). To "calculate a rate for the companies not selected for review," Commerce "applied a subsidy rate based on a weighted average of the subsidy rates calculated for the reviewed companies using sales data submitted by those companies," *Certain Softwood Lumber Products from Canada: Final Results of Countervailing Duty Administrative Review*, 86 Fed. Reg. 68,467, 68,468 (Dep't of Commerce Dec. 2, 2021) (*Final Results*). Based on this process, RYAM was assigned a 6.32% cash deposit rate. Opinion at 3.

GreenFirst—which is subject to a 14.19% "all-others" rate—seeks to be assigned

---

[1] "P.R." refers to documents in the public record and "C.R." refers to documents in the confidential record. *See* Public Record Index (ECF No. 18-1) and Confidential Record Index (ECF No. 18-2). "P.R.R." refers to the public remand record. *See* Index (ECF No. 30-1).

1

RYAM's lower rate by being declared RYAM's successor company.  *Id.*  As Commerce explained in *Pasta from Turkey*, successorship is a finding "that the respondent company is the **same subsidized entity** for CVD cash deposit purposes as the predecessor company."  *Certain Pasta from Turkey: Preliminary Results Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 47,225, 47,227 (Dep't of Commerce Sept. 15, 2009) (*Pasta from Turkey*) (emphasis added).  Commerce explained that it will make such a finding "where there is no evidence of significant changes in the respondent's operations, ownership, corporate or legal structure during the relevant period . . . that could have affected the nature and extent of the respondent's subsidy levels."  *Id.*

Commerce determined that GreenFirst is not the same company as RYAM due to the transfer of certain assets from RYAM to GreenFirst (as opposed to the purchase of a firm)—especially because both companies continue to exist with different legal structures and operations from one another.  *See Commerce's Decision Not to Initiate Changed Circumstances Review Letter* (Dep't of Commerce Nov. 16, 2021) (*Decision Letter*) (P.R. 13).  GreenFirst challenged this decision in this Court. *See* GreenFirst's MJAR (ECF No. 22).  Notably, GreenFirst did not argue that it satisfies this successorship test (nor could it), but instead seeks to drastically curtail the applicability of the test itself so that the test does not apply to the majority of countervailing duty assignments.  *See* GreenFirst Br. (ECF No. 22) at 7 (explaining that there are "hundreds of other Canadian companies that have not been selected for individual examination").

Because the successorship test derived from circumstances in which the alleged predecessor company was individually examined, the Court remanded the matter to Commerce to reconsider or to "further explain the basis for its determination that its significant changes practice applies where the predecessor company was not individually examined."  Opinion at 10.

In the Remand Redetermination, Commerce opted to explain why its significant changes

2

practice "as articulated in *Pasta from Turkey* and upheld in *Marsan*, is applicable when considering whether to initiate a request for a countervailing duty (CVD) CCR when the predecessor company was not individually examined." Remand Redetermination at 13. As Commerce summarized, "{t}he crux of the CVD successor-in-interest methodology is not whether the predecessor company was individually examined but whether the successor company underwent significant changes in ownership, structure, and productive facilities, such that it is not the same entity as the predecessor company." *Id.* at 7. Commerce further explained that "{i}n such circumstances where 'significant changes' are present, it is not appropriate for the requesting company to inherit the cash deposit rate of essentially a different company." *Id.* "Thus, the successor-in-interest analysis evaluates the changes to a company to determine whether those changes would make it appropriate to treat the former and subsequent company as if they were the same entity regardless of whether the predecessor company participated in the investigation or an administrative review." *Id.* at 8.

In its Comments, GreenFirst argues that the Remand Redetermination is inconsistent with the Court's Opinion in this case and Commerce's rule in *Pasta from Turkey*. As explained below, however, GreenFirst's arguments misleadingly cherry-pick language from those decisions, while applying the reasoning from neither. This Court should not indulge GreenFirst's attempt to overturn the poker table (by severely restricting the successorship test) merely because Greenfirst has a bad hand (*i.e.*, the facts do not show that GreenFirst is a successor to RYAM under that test).

**ARGUMENT**

I.     **Standard Of Review**

The "successor-in-interest analysis was not explicitly created by statute or by regulation, but is an agency practice designed to facilitate the proper implementation of the {trade} laws."

3

*East Sea Seafoods, LLC v. United States*, 703 F.Supp.2d 1336, 1352 (2010).  "Thus, the successor-in-interest analysis is precisely the type of methodology Commerce is tasked with identifying and applying, and the Court must not direct Commerce on how to create that methodology."  *Marsan Gida Sanayi Ve Ticaret, AS v. United States*, 35 C.I.T. 222, 230 (2011).  "Rather, the Court must defer to Commerce's methodology if it is reasonable."  *Id.* (citing *JTEKT Corp. v. United States*, 675 F.Supp.2d 1206, 1219 (2009)).  "In fact, '{t}his deference is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute, as opposed to interpreting the meaning of the statute itself where ambiguous.'"  *Id.* (alteration in original) (quoting *Fujitsu General Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996)).

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

**II.     Commerce Complied With The Court's Remand Order**

GreenFirst argues that Commerce's Remand Redetermination "ignores the Court's previous findings," in which the Court purportedly "rejected" Commerce's reasoning and supposedly "held that Commerce applied its *Pasta from Turkey* practice unreasonably because inherent in that practice is that Commerce has calculate{d} an individual subsidy rate for the predecessor company."  Comments at 1–2.  GreenFirst is incorrect.

It is true that, the Court stated it was "unclear from Commerce's explanation why its significant change practice applies" where, as here, the predecessor company (RYAM) was not individually examined.  Opinion at 8.  The Court sought additional clarity because in both *Pastas*

4

*from Turkey* and *Marsan* the successorship analysis involved predecessor companies whose rates had been individually calculated. However, the Court offered Commerce the option to "further explain the basis for its determination that its significant changes practice applies where the predecessor company was not individually examined." Opinion at 10.

In the Remand Redetermination, Commerce opted to explain why its significant changes practice "as articulated in *Pasta from Turkey* and upheld in *Marsan*, is applicable when considering whether to initiate a request for a countervailing duty (CVD) CCR when the predecessor company was not individually examined." Remand Redetermination at 13. As explained below, its explanation is reasonable.

### III. Applying The Practice Articulated In *Pasta From Turkey* And *Marsan* To Instances In Which The Predecessor Entity Was Not Individually Examined Is Reasonable

GreenFirst argues that the purpose of the *Pasta from Turkey* practice is "to prevent a rate of subsidization that was calculated based upon the unique facts of one company from being transferred to a new company without first calculating the new company's subsidy levels." Comments at 2. However, a closer analysis of the *Pasta from Turkey* decision, and this Court's decision in *Marsan*, shows that this construction is unduly narrow relative to both the purpose and scope of the rule, and that both the rule and its purpose reasonably apply when the predecessor's rate was not individually calculated.

To begin, the articulated purpose behind the rule in *Pasta from Turkey*, as re-articulated by this Court in *Marsan*, is not limited to circumstances in which the predecessor entity was individually examined. Before outlining its approach in *Pasta from Turkey*, Commerce explained that "the limited purpose of a CVD CCR generally is to determine whether a company is essentially the same subsidized entity as the alleged predecessor company for cash deposit purposes." *Pasta from Turkey*, 74 Fed. Reg. at 47,227. "Accordingly, the Department decides

5

whether the alleged predecessor company's rate applies to the party being examined." *Id.* This Court has itself articulated the successorship test in essentially the same terms: "Commerce's methodology simply evaluates the changes to a company to determine whether those changes would make it inappropriate to treat the former and subsequent company as if they were the same entity and entitled to the same cash deposit rate." *Marsan*, 35 C.I.T. at 231 (emphasis in original). Commerce further explained that it does not calculate a new subsidy rate in the context of a CCR because such an analysis "would not be feasible within the condensed time frame of a CCR," but rather is more appropriate during the next administrative review. *Pasta from Turkey*, 74 Fed. Reg. at 47,227.

Thus, the purpose of the rule is **not** to attempt to determine actual subsidy rates, but merely to create a feasible method of determining whether the company "is essentially the same subsidized entity as the alleged predecessor company for cash deposit purposes" within "the condensed time frame of a CCR" such that "the alleged predecessor company's rate applies to the party being examined." *Id.* (citing 19 CFR 351.216(e)). Logically, this purpose applies equally to successorship requests regardless of how the claimed predecessor entity's cash deposit rate was originally assigned. In fact, it is difficult to conceive of how (or why) Commerce would accomplish the same objective (evaluating whether an entity may inherit the cash deposit rate of its alleged predecessor within the narrow timeframe of a CCR) any differently when addressing non-reviewed companies.[2]

---

[2] Because the timing constraints of a CCR make it an inappropriate forum to calculate subsidization levels, if GreenFirst sincerely believed that the purpose of the *Pasta from Turkey* practice were "to prevent a rate of subsidization that was calculated based upon the unique facts of one company from being transferred to a new company *without first calculating the new company's subsidy levels*," Comments at 2 (emphasis added), then GreenFirst appears to be advocating that its successorship request regarding RYAM be denied until the next administrative review (when it would be feasible for Commerce to calculate subsidy rates).

6

Following this articulation of purpose in *Pasta from Turkey*, Commerce stated "{w}ith this in mind, our approach to CVD CCRs going forward will be as follows." *Id.* The plain language of that statement shows that Commerce "was unequivocal that its successor-in-interest methodology was to be the standard for **all** CVD CCRs," Remand Redetermination at 15 (emphasis added)—not just where the alleged predecessor company had been assigned a rate following individual examination.

Moreover, the approach itself focuses on whether the respondent is "the same subsidized entity" based on "operations, ownership, corporate or legal structure." *Pasta from Turkey*, 74 Fed. Reg. at 47,227. Although the Court is correct that "the practice applies when a successor-in-interest stands to inherit a company's individually-calculated rate," Opinion at 9, it does not follow that the practice applies "only when" there is an individually calculated rate. Rather, as explained in *Pasta from Turkey* and the Remand Redetermination, Commerce's successorship test is expressly **not** concerned with calculating the respondent's actual subsidization rate:

> To that end, Commerce's analysis 'will focus on whether a significant change occurred in the {successor} company's operations, ownership, corporate or legal structure and **not** whether those changes, in fact, ultimately did affect the respondent's subsidization or by how much.'

*See* Remand Redetermination at 8 (quoting *Pasta from Turkey Preliminary Results*, 74 FR at 47228) (emphasis added). Thus, despite GreenFirst's attempt to graft an unwritten pre-requisite regarding a determination of subsidization levels onto this test, there is no basis for doing so. In fact, as this Court previously recognized, "Commerce's methodology does **not** determine, analyze, or presume subsidization" at all, but "simply focuses on certain changes to a company that would make it inappropriate to treat the old and new company similarly for purposes of the CVD order." *Marsan*, 35 C.I.T. at 232.

Put another way, the question in a successorship review is whether the purported

7

successor should stand in the shoes of the predecessor.  There is no reason why the test should turn on how the predecessor's shoes were made (i.e., whether by individual examination or by application of an average).   There is nothing within the *Pasta from Turkey* rule that would confine the application of the rule to circumstances in which the predecessor entity was assigned an individually calculated rate.  *See Pasta from Turkey*, 74 Fed. Reg. at 47,227; Remand Redetermination at 15.

Additionally, it would be unlikely for there to exist an undisclosed exception to that rule whenever the predecessor company was not individually examined—particularly because, as this Court recognized, "the vast majority of companies will never be examined" on an individual basis, Opinion at 10, fn.4.  Accordingly, GreenFirst's argument would require this Court to assume the existence of an undisclosed exception that would apply more frequently than the rule.  Such a result would be absurd.  Moreover, GreenFirst has not even articulated what test it thinks should apply in the majority of circumstances in which the alleged predecessor was not individually examined.  Respondents should not be given free rein to claim any company as their predecessor without Commerce reviewing whether the two are the same company.

Finally, GreenFirst seizes upon language regarding a "different factual pattern" and regarding the "best estimate of the respondent's existing rate of subsidization," to argue that there must be an implicit "understanding that the predecessor company had an individually calculated subsidy rate."  Comments at 6.  However, the context reveals that this language does nothing to confine the rule to circumstances where the predecessor entity was individually calculated.  In *Pasta from Turkey*, Commerce explained:

> Structured in this manner, this CVD CCR analysis is intended to serve as a type of screening mechanism. Significant changes in the respondent's operations, ownership, corporate or legal structure that potentially could affect the nature and extent of the company's subsidization

8

> are a sufficient basis for reconsidering what constitutes the best estimate of the respondent's existing subsidy levels. In the face of such changes, it normally would be inappropriate for the Department to affirm a cash deposit rate that had been calculated during a previous time period based on a significantly different factual pattern. The most appropriate CVD cash deposit rate in this instance is the rate under which the merchandise of a newly-renamed entity would normally be entered, i.e., the "all others" cash deposit rate. Conversely, where there have not been any such significant changes during the look-back window, it normally is appropriate and reasonable for the Department to re-affirm the existing "predecessor" duty deposit rate as the best estimate of the respondent's existing rate of subsidization.

*Pasta from Turkey*, 74 Fed. Reg. at 47,227.  Ironically, this paragraph outlines the process that occurred in this case:  Commerce determined that there were "significant changes" in GreenFirst's "operations, ownership, corporate or legal structure" such that RYAM's rate would not be the "best estimate" of GreenFirst's subsidy levels, and determined it would be "inappropriate for the Department to affirm a cash deposit rate" that had been "based on a significantly different factual pattern," *i.e.*, there is no reason to conclude that GreenFirst is the successor to RYAM.  *Id.*  Accordingly, GreenFirst was assigned the "'all-others' cash deposit rate."  *Id.; accord Marsan*, 35 C.I.T. at 231–32 ("If, as here, the changes indicated the companies are not the same entity, the 'all others' rate would be assigned until the respondent requested a full administrative review to determine its specific rate.").

Commerce's statement that, in the absence of any significant changes, it would be "reasonable for the Department to re-affirm the existing 'predecessor' duty deposit rate as the best estimate of the respondent's existing rate of subsidization," *Pasta from Turkey*, 74 Fed. Reg. at 47,227, does nothing to change this conclusion.  The word "estimate" is not specific to individually calculated rates.  In fact, Commerce uses the term within the context of this CVD proceeding to include rates for both individually examined companies and companies that were

9

not individually reviewed. *See, e.g.*, *Final Results*, 86 Fed. Reg. 68,467 (Commerce "intends to instruct CBP to collect cash deposits of estimated countervailing duties in the amounts shown for the companies subject to this review" and "{f}or all non-reviewed companies, we will instruct CBP to continue to collect cash deposits of estimated countervailing duties at the most recent company-specific or all-others rate"); *Notice of Amended Final Results*, 87 Fed. Reg. 1,114 (same) (emphasis added). Moreover, when Commerce has not individually reviewed a predecessor company, the "best estimate" for that predecessor company is the non-selected rate Commerce is applying. *Accord Final Results*, 86 Fed. Reg. at 68,468 (to "calculate a rate for the companies not selected for review," Commerce "applied a subsidy rate based on a weighted average of the subsidy rates calculated for the reviewed companies using sales data submitted by those companies").

At bottom, the scope and purpose of the successorship test applies regardless of whether the predecessor entity was individually examined: in neither case would it be "appropriate for the requesting company to inherit the cash deposit rate of essentially a different company." Remand Redetermination at 7. This Court should reject GreenFirst's attempt to graft an unwritten exception to the rule which is not found in the rule, not consistent with the purpose of the rule, and would result in the exception swallowing the rule.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Remand Redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

|  |  |
|---|---|
|  | /s/ Claudia Burke |
|  | CLAUDIA BURKE |
|  | Deputy Director |
|  |  |
|  | /s/ Bret Vallacher |
| OF COUNSEL: | BRET R. VALLACHER |
| JESUS N. SAENZ | Trial Attorney |
| Attorney | U.S. Department of Justice |
| Office of the Chief Counsel | Civil Division, |
|   for Trade Enforcement and Compliance | Commercial Litigation Branch |
| U.S. Department of Commerce | P.O. Box 480 |
| Washington, D.C. | Ben Franklin Station |
|  | Washington, D.C. 20044 |
|  | Telephone: (202) 616-0465 |
|  | E-mail: Bret.R.Vallacher@usdoj.gov |
|  |  |
| May 3, 2023 | *Attorneys for Defendant United States* |

11

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the word-count limitation, in that it contains 3266 words according to the word-count function of the word-processing software used to prepare the response, including text, footnotes, and headings.

/s/ Bret R. Vallacher

May 3, 2023