IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| GREENFIRST FOREST PRODUCTS, INC. and GREENFIRST FOREST PRODUCTS (QC), INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Ct. No. 22-00097 |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant, the United States respectfully responds to plaintiffs', GreenFirst Forest Products Inc., and GreenForest Products (QC) Inc., (collectively, GreenFirst), notice of supplemental authority that the Department of Commerce (Commerce) has preliminarily concluded that plaintiffs are successors to Rayonier A.M. Canada G.P. (RYAM) in a changed circumstances review (CCR) in a parallel antidumping duty (AD) proceeding.  ECF No. 35 (Notice of Supplemental Authority).

In this case, GreenFirst challenges Commerce's determination not to initiate a CCR in the countervailing duty (CVD) proceeding covering certain softwood lumber from Canada. Commerce determined that GreenFirst was not a successor to RYAM for the purpose of the countervailing duty order.  GreenFirst filed its notice of supplemental authority to inform the Court that Commerce has now issued preliminary results in the changed circumstances review in the parallel antidumping proceeding.  GreenFirst acknowledges that Commerce "applies a different standard for initiating and reviewing an AD CCR [with respect to successorship] which

is distinct from the CVD standard at issue" here.  *Id*. at 2.  As described in detail below, Commerce promulgated its Court-approved countervailing duty successorship methodology to address the different purposes of the antidumping and countervailing duty statutes.  For antidumping duties, Commerce analyzes the pricing behavior of the proposed successor.  In contrast, for countervailing duties, Commerce determines whether subsidization of the predecessor carries over to the successor.  Because of the significant differences in these analyses, the antidumping duty proceeding is an inappropriate comparison here.

## DISCUSSION

By statute, Commerce "shall" initiate a CCR whenever it

> receives information concerning, or a request from an interested party for a review of – (A) a final affirmative determination that resulted in an antidumping duty order [or] a countervailing duty order. . . which shows changed circumstances sufficient to warrant a review of such determination . . .

19 U.S.C. § 1675(b)(1).  The statute is silent on the meaning of "changed circumstances" or "successor-in-interest."  *See Certain Pasta from Turkey: Preliminary Results Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 47,225, 47,227 (Dep't of Commerce Sept. 15, 2009) (*Pasta from Turkey Prelim.*) ("The statute does not define the term 'changed circumstances.'"); *East Sea Seafoods LLC v. United States*, 703 F. Supp 1336, 1352 (Ct. Int'l Trade 2010) ("The successor-in-interest analysis was not explicitly created by statute or by regulation.").

Previously, Commerce had applied the same successorship criteria in antidumping duty changed circumstances proceedings as in countervailing duty proceedings.  *Countervailing Duty Changed Circumstances Reviews*, 72 Fed. Reg. 3,107 (Dep't of Commerce Jan. 24, 2007) (*Request for Comment*).  Commerce recognized the differences between the two types of

2

proceedings and initiated a notice and comment proceeding to address whether to develop a separate successorship analysis for countervailing duty cases. *Id.* There, the agency explained that the different purposes of antidumping duties (pricing) and countervailing duties (subsidization) could warrant different successorship methodologies:

> {T}o the extent that this AD analysis is concerned with the pricing behavior of the successor company it might not be entirely relevant in the CVD context where price discrimination is not the analytical focus. Other factors or considerations (*e.g.*, factors that focus on whether subsidies to the predecessor are attributable to the successor, or on increased participation in or eligibility for new subsidy programs as a result of the changed circumstance) might be more relevant.

*Id.* at 3,108.

Under the antidumping criteria, Commerce examines whether the alleged predecessor and successor companies comprise the "same business entity" by comparing their (1) management, (2) production facilities, (3) supplier relationships, and (4) customer base before and after the changed circumstances. *Id.* at 3,108. The antidumping factors focus upon pricing behavior, the touchstone of Commerce's antidumping duty proceedings. *Id.*

In response to comments received, Commerce developed a new CCR methodology for countervailing duty cases. *Pasta from Turkey Prelim.*, 74 Fed. Reg. at 47,227. In promulgating its new methodology, Commerce explained that it interprets the term "changed circumstances" in countervailing duty cases based upon the purpose of the countervailing duty statute, and that the statute "{does not} require that the standards and analysis {Commerce} uses in finding changed circumstances in the {countervailing duty} context be identical to those used in the {antidumping} context." *Id.* at 47,227.

Commerce further explained that the antidumping successorship analysis focuses on matters of pricing behavior, meaning that such an analysis would not necessarily be relevant in

the countervailing duty context, where subsidization, not price discrimination, is the analytical focus. *Id*; *see also Request for Comment*, 72 Fed. Reg. at 3,108. Given the different focal points of these reviews, Commerce determined that the findings in antidumping reviews may be different from, and irrelevant to, the findings in countervailing duty reviews. *Id*. Accordingly, Commerce developed a new approach to countervailing duty changed circumstance reviews:

> As a general rule, in a CVD CCR, {Commerce} will make an affirmative CVD successorship finding (*i.e.,* that the respondent company is the same subsidized entity for CVD cash deposit purposes as the predecessor company) where there is no evidence of significant changes in the respondent's operations, ownership, corporate or legal structure during the relevant period . . . that could have affected the nature and extent of the respondent's subsidy levels.

*Id.*

      Commerce further explained that the changed circumstance review analysis is intended to serve as a screening mechanism. Commerce reasoned that "significant changes in the respondent's operations, ownership, corporate or legal structure that potentially could affect the nature and extent of the company's subsidization are a sufficient basis for reconsidering" the respondent's subsidies. *Id*. Thus, Commerce's countervailing duty changed circumstance methodology "simply evaluates the *changes* to a company to determine whether those changes would make it appropriate to treat the former and subsequent company as if they were the same entity and entitled to the same cash deposit rate." *Marsan Gisa Sanayi Ve Ticaret A.S. v. United States*, 35 C.I.T. 222, 231 (Ct. Int'l Trade 2011) (emphasis in original). Commerce also explained that such changes would normally make it "inappropriate for {Commerce} to affirm a cash deposit rate that had been calculated during a previous time period based on a significantly different factual pattern" by treating the alleged predecessor and successor companies as the same entity for cash deposit purposes. *Pasta from Turkey Prelim.*, 74 Fed Reg. at 47,227.

Commerce further identified a non-exhaustive list of the types of changes it will normally consider to be significant and would affect the nature and extent of a respondent's subsidization:

> (1) Changes in ownership, other than regular buying and selling of publicly owned shares held by a broad array of investors, (2) corporate mergers and acquisitions involving the respondent's consolidated or cross-owned corporate family and outside companies, and (3) purchases or sales of significant productive facilities during the relevant period of the CVD {changed circumstance review} . . . that could have affected the nature and extent of the countervailable subsidies attributed to the respondent.

*Id*.

At the same time, Commerce recognized that it would be infeasible and inappropriate for it to conduct a fact-intensive analysis of the extent to which significant changes affect a company's subsidization level, and that such an analysis is the province of a full administrative review. *Id*. at 47,227-28; *see also Certain Pasta From Turkey: Final Results of Countervailing Duty Changed Circumstances Review*, 74 Fed. Reg. 54,022 (Dep't of Commerce Oct. 21, 2009) (*Pasta from Turkey Final*) and accompanying Issues and Decision Memorandum (*Pasta from Turkey* IDM) at 4 (limiting affirmative successorship findings to cases where respondent has "not undergone certain types of fundamental changes that are not feasible or appropriate to analyze and evaluate in the context of a {changed circumstances review}"). Commerce explained and provided examples of how the types of changes it identified could affect subsidization in ways that were beyond the purview of what it analyzes in a changed circumstances review, as opposed to a full administrative review. *Pasta from Turkey* IDM at 4-5; *see also Pasta from Turkey Prelim.*, 74 Fed. Reg. at 47,228.

The Court approved Commerce's interpretation of the statute as "reasonable" and concluded that its new countervailing duty successorship methodology was "in accordance with law." *Marsan* 35 C.I.T. at 229-32. Moreover, GreenFirst acknowledges that Commerce "applies

a different standard for initiating and reviewing an AD CCR which is distinct from the CVD standard at issue in the case at bar." Notice of Supplemental Authority at 2. Accordingly, GreenFirst's Notice of Supplemental Authority provides no utility here.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

| OF COUNSEL: | /s/ Stephen C. Tosini |
|---|---|
| Jesus N. Saenz | STEPHEN C. TOSINI |
| Attorney | Senior Trial Counsel |
| U.S. Department of Commerce | Commercial Litigation Branch |
| Office of the Chief Counsel for Trade | Civil Division |
|   Enforcement and Compliance | Department of Justice |
| 1401 Constitution Avenue, NW | P.O. Box 480 |
| Washington, D.C. 20230 | Ben Franklin Station |
| Tel: (202) 482-1823 | Washington, D.C. 20044 |
| Email: Jesus.Saenz@trade.gov | Tel: (202) 616-5196 |
| | Fax: (202) 305-2062 |
| | Email: stephen.tosini@usdoj.gov |
| June 8, 2023 | *Attorneys for Defendant* |