Slip Op. 23-96

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **GREENFIRST FOREST PRODUCTS, and GREENFIRST FOREST PRODUCTS (QC) INC.,** | |
| **Plaintiffs,** | Before: Claire R. Kelly, Judge |
| **v.** | Court No. 22-00097 |
| **UNITED STATES** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

[Remanding the U.S. Department of Commerce's denial of plaintiffs' request for a changed circumstances review.]

Dated: July 6, 2023

<u>Yohai Baisburd</u>, <u>Sarah E. Shulman</u>, and <u>Jonathan Zielinski</u>, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for plaintiffs GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc.

<u>Bret R. Vallacher</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. On the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Claudia Burke</u>, Deputy Director. Of counsel was <u>Jesus N. Saenz</u>, Attorney, Office of the Chief Counsel for Trade, Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Kelly, Judge: Before the Court is the U.S. Department of Commerce's

("Commerce") remand redetermination pursuant to the Court's order in <u>GreenFirst</u>

<u>Forest Prods. v. United States</u>, 604 F. Supp. 3d 1368 (Ct. Int'l Trade 2022)

("<u>GreenFirst I</u>") remanding Commerce's refusal to conduct a changed circumstances

review for further explanation or reconsideration. Plaintiffs GreenFirst Forest Products Inc. and GreenFirst Forest Products (QC) Inc. (collectively, "GreenFirst") challenge the results of Commerce's remand redetermination. The Court again remands to Commerce for further explanation or reconsideration.

## BACKGROUND

The Court presumes familiarity with the facts of this case from this Court's previous opinion in GreenFirst I, 604 F. Supp. 3d 1368, and now recounts only the facts relevant to the Court's review of the Remand Results. On November 8, 2017, Commerce issued its final determination that the Canadian government provided countervailable subsidies for certain softwood lumber products from Canada. See Certain Softwood Lumber Products from Canada, 82 Fed. Reg. 51,814 (Dep't Commerce Nov. 8, 2017). Rayonier A.M. Canada G.P. ("RYAM") was a Canadian softwood lumber producer subject to the countervailing duty ("CVD") order, and GreenFirst acquired RYAM's entire lumber and newsprint business on August 28, 2021.[1] Compl. ¶¶ 2–3, Mar. 25, 2022, ECF No. 2. On October 4, 2021, GreenFirst requested that Commerce conduct a changed circumstances review ("CCR") to determine that it was RYAM's successor-in-interest. Id. ¶¶ 4, 13, Attach. A. On

---

[1] Specifically, Commerce determined that GreenFirst purchased six lumber mills and one newsprint mill from RYAM, and that the purchase involved a change in ownership structure such that RYAM continues to operate as a business and now partially owns GreenFirst's parent company. See Compl., Attach. A, Mar. 25, 2022, ECF No. 2.

November 16, 2021, Commerce denied GreenFirst's request to initiate a CCR.  Id. ¶¶ 5, 14, Attach. A.

On March 25, 2022, GreenFirst challenged Commerce's refusal to initiate a CCR as arbitrary and capricious, and moved for judgment on the agency record.  See Compl. ¶¶ 24, 27; Pl.'s Mot. J. Agency R., July 29, 2022, ECF No. 22.  This Court held that Commerce had not adequately explained its refusal to conduct a CCR, and remanded Commerce's determination for further explanation or consideration.  See GreenFirst I, 604 F. Supp. 3d at 1373.  On February 4, 2023, Commerce released the final results of its remand redetermination.  See Final Results of Remand Redeterm. Purs. Ct. Remand, Feb. 16, 2023, ECF No. 29-1 ("Remand Results").  In its remand results, Commerce again determined that it would not conduct a successor-in-interest CCR for GreenFirst.  Id. at 15–16.  GreenFirst submitted comments on the remand results, and Defendant replied to GreenFirst's comments.  See GreenFirst's Cmts. Final Results Redeterm Purs. Ct. Remand, April 3, 2023, ECF No. 32 ("Pl. Br."); Def.'s Resp. Pl.'s Mot. J. Agency R., May 3, 2023, ECF No. 33 ("Def. Br.").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(2), (4) (2018).  The Court reviews an action brought under 28 U.S.C. § 1581(i) under the same standards as provided under § 706 of the Administrative Procedure Act, as amended.  See 28 U.S.C. § 2640(e). Under the statute, the reviewing court shall:

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law

5 U.S.C. § 706(1)–(2)(A).

Under the arbitrary and capricious standard, courts consider whether the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

## DISCUSSION

GreenFirst argues that Commerce again arbitrarily denied its CCR request based on its inapposite Pasta from Turkey practice. Pl. Br. at 8. GreenFirst also argues that Commerce ignored the Court's instruction to further explain its practice on remand.[2] Id. at 3–4. Defendant counters that Commerce complied with the Court's remand order, and adequately explained why it would not be appropriate to

---

[2] GreenFirst also submitted supplemental authority showing that Commerce has preliminarily determined it to be RYAM's successor-in-interest in the context an antidumping CCR. See Pls.' Not. Supp. Authority, May 23, 2023, ECF No. 35. However, GreenFirst acknowledges that the legal standards for antidumping and CVD CCRs are different, and does not argue that Commerce must make an affirmative successorship determination for CVD purposes because of the results of its antidumping review. See id. Rather, GreenFirst has provided this information "simply to make the Court aware" of the parallel proceeding. Id. at 2.

grant GreenFirst a CCR, based on its <u>Pasta from Turkey</u> practice.  Def. Br. at 2, 10.

For the reasons that follow, the Court remands Commerce's determination for further

explanation or reconsideration.

Pursuant to § 751(b) of the Tariff Act of 1930, as amended, 19 U.S.C.

§ 1675(b)(1),[3] Commerce shall review an affirmative CVD determination whenever it

receives information from an interested party which shows "changed circumstances

sufficient to warrant a review of such determination."  <u>Id.</u>  The statute does not define

"changed circumstances."  <u>Id.</u>  Through practice, Commerce has established that

successor-in-interest companies may be entitled to a CCR.  <u>See, e.g.</u>, Heavy Walled

Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Turkey: Not.

of Initiation and Prelim. Results of [CVD CCR], 87 Fed. Reg. 10,772, 10,773 (Feb. 25,

2022) (finding a respondent was a successor-in-interest for CVD purposes).

Commerce has further established that it will not conduct a successor-in-interest

CCR when there is evidence of significant changes to a company.  <u>See Certain Pasta</u>

<u>from Turkey: Preliminary Results of [CVD CCR]</u>, 74 Fed. Reg. 47,225, 47,227 (Dep't

Commerce Sept. 15, 2009) (Prelim. Results of [CVD CCR]), unchanged in <u>Certain</u>

<u>Pasta from Turkey</u>, 74 Fed. Reg. 54,022 (Dep't Commerce Oct. 21, 2009) (Final

Results of [CVD CCR]) ("<u>Pasta from Turkey</u>").   The respondent in <u>Pasta from Turkey</u>

was individually examined in the prior administrative review.  <u>See Certain Pasta</u>

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant
provisions of Title 19 of the U.S. Code, 2018 edition.

from Turkey: Final Results of [CVD] Admin. Rev., 71 Fed. Reg. 52,774, 52,774 (Sept. 7, 2006) (final determination of CVD rate for respondent).

 Commerce explained the rationale for its significant changes practice, stating that it would generally find a successor company to be the same as a predecessor company for cash deposit purposes "where there is no evidence of significant changes in the respondent's operations, ownership, corporate or legal structure during the relevant period . . . that could have affected the nature and extent of the respondent's subsidy levels." Pasta from Turkey, 74 Fed. Reg. at 47,227. Thus, in Pasta from Turkey, Commerce concludes that a putative successor-in-interest company with significant changes should not acquire the cash deposit rate of a predecessor company, because the changes "could affect the nature and extent of the respondent's subsidization." Id. at 47,228. Therefore, Commerce's Pasta from Turkey practice dictates that it will not conduct a CCR where it has evidence of significant changes in the successor company.[4] Id. at 47,225, 47,227.

---

[4] Under the statute, Commerce, may review a determination when it receives information showing sufficiently changed circumstances. 19 U.S.C. § 1675(b). One type of changed circumstance is a name change, which serves as the legal basis for Commerce to revise its instructions to the U.S. Department of Customs and Border Protection. See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Turkey: Not. of Initiation and Prelim. Results of [CVD CCR], 87 Fed. Reg. 10,772, 10,773 (Feb. 25, 2022) ("Where Commerce makes an affirmative CVD successorship finding, the successor's merchandise will be entitled to enter under the predecessor's cash deposit rate"). A party might be able to argue that it would be entitled to a different rate, i.e., circumstances had changed such that the

(footnote continued)

     In GreenFirst I, 604 F. Supp. 3d 1368, this Court held that Commerce had not adequately explained why its Pasta from Turkey practice applied when a predecessor company had not been individually examined. Id. at 1373. The Court explained that the purpose of a CVD CCR is to determine whether a successor company is the same entity as a predecessor company for subsidization purposes. Id. at 1372 (citing Marsan Gida Sanayi Ve Ticaret A.S. v. United States, 35 CIT 222, 225, Slip Op. 2011-20 (2011)). Therefore, if the company is the same, a CCR will allow it to obtain the same rate; however, if the successor is different from its predecessor, it could have different levels of subsidization, and inheriting a previously calculated rate would not be appropriate. See id. The Court specified that in Commerce's Pasta from Turkey practice, the predecessor company had been individually examined, and received an individual rate based on the actual level of that company's subsidization. Id. at 1373. Additionally, the Court was not persuaded by Defendant's explanation that a CCR

---

determination should be modified because it had become the successor in interest to a company that had a different rate assigned under the prior determination. See Pasta from Turkey 74 Fed. Reg. at 47,226 ("the function of CCRs is to address the effect of 'changed circumstances' on a final affirmative determination that resulted in a CVD order.") The changed circumstance would be that one company had become another company (and thus should be entitled to that other company's rate).

     In Pasta from Turkey, Commerce limited CCRs for successor-in-interest changes to those cases where the successor company was essentially the same as the predecessor because "if the company is not essentially the same, . . . the Department should normally assign the successor company the 'all others' rate until an administrative review is requested as the all others rate is the default rate for exports that have not been investigated or subject to an administrative review." Id. Thus, in a successor-in-interest analysis Commerce contends under Pasta from Turkey there can be no significant changes in the successor company as compared to the predecessor in order to obtain a "changed circumstances" review.

"does not examine *how* a 'significant change' impacted subsidization levels of the predecessor," because this explanation did not address whether the practice itself was reasonable.  See id. (emphasis in original).

On remand, Commerce again explains that its practice articulated in Pasta from Turkey is to decline a CCR review for a company seeking to be considered a successor-in-interest for cash deposit purposes if that company has "undergone significant changes that would require Commerce to fully assess the company's level of subsidization."  Remand Results at 6.  Commerce reiterates that purchase or sale of significant productive facilities is considered to be "significant" for the purposes of its practice, and that GreenFirst's purchase of newsprint and saw mills from RYAM therefore constituted a significant change.  Id. at 6–7, 9.[5]  Commerce further explains that:

> The crux of the CVD successor-in-interest methodology is not whether the predecessor company was individually examined but whether the successor company underwent significant changes in ownership, structure, and productive facilities, such that it is not the same entity as the predecessor company. In such circumstances where "significant changes" are present, it is not appropriate for the requesting company to inherit the cash deposit rate of essentially a different company. Rather, it is appropriate for the requesting company to be assigned the all-others rate from the investigation.

---

[5] As discussed, GreenFirst did not simply change its name, nor did it purchase the entirety of RYAM— instead it purchased RYAM's lumber and pulp mills, with RYAM emerging from the transaction as the partial owner of GreenFirst's parent company. See Compl. at Attach. A.

<u>Id.</u> at 7–8.  From this explanation, it is evident that Commerce focuses on whether a company is essentially the same as its alleged predecessor when considering whether to grant a CCR, and is not concerned with the company's actual level of subsidization. <u>See</u> Def. Br. at 6 ("Thus, the purpose of the rule is not to determine actual subsidy rates . . . .").  However, this explanation does not address the question that the Court posed in <u>GreenFirst I</u> concerning the reasoning behind Commerce's practice, namely why this practice is reasonable as applied to a non-examined company.  <u>See</u> <u>GreenFirst I</u>, 604 F. Supp. 3d at 1373.

Commerce offers no rationale explaining how its practice in <u>Pasta from Turkey</u> extends beyond individually-examined respondents.  First, Commerce offers no explanation as to why its determination is reasonable other than that its determination in <u>Pasta from Turkey</u> was reasonable.  <u>See</u> Remand Results at 7–9. The respondent in <u>Pasta from Turkey</u> had been individually examined in the prior administrative review, and Commerce relied upon that individual examination to justify its determination that it would be "inappropriate to affirm a cash deposit rate that had been calculated during a previous time." <u>Pasta from Turkey</u>, 74 Fed. Reg. at 47,227.  That an individual rate had been calculated rendered Commerce's decision to deny a potentially preferential rate to a different company reasonable.  <u>See</u> <u>Marsan</u>, 35 CIT at 232 (changed company not entitled to "a previously calculated CVD cash deposit rate").  In contrast, RYAM's rate was not "calculated" or based on a "fact pattern," such that the rate was unique to RYAM.  Rather, Commerce

determined RYAM's rate by averaging the rates of non-selected companies.  See Certain Softwood Lumber Products from Canada, 83 Fed. Reg. 347, 348 (Dep't Commerce Jan. 3, 2018).  Therefore, the reasoning behind Commerce's determination in Pasta from Turkey does not apply to GreenFirst's CCR request, because GreenFirst does not stand to inherit a "calculated" rate.

Second, Commerce seems to assert that because Pasta from Turkey did not expressly declare its rationale as limited only to situations where Commerce individually examined a company, that the Court should accept its rationale as reasonable under a different set of circumstances.  See Def. Br. at 8; Remand Results at 8 ("there is no language within Pasta from Turkey that expressly limits Commerce's successor-in-interest analysis").  Regardless of whether Commerce expressly articulated the limitations behind its Pasta from Turkey practice, Commerce must nevertheless explain the reasoning behind its decision under the present factual circumstances.  See State Farm, 463 U.S. at 43 ("the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'") (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).

If Commerce believes that it is inappropriate for a putative successor-in-interest company to inherit a non-selected rate from a non-individually examined company unless the successor-in-interest company is essentially the same as the non-individually examined company previously assigned that rate, it must explain why

this specific transfer of a rate is inappropriate.[6]   Commerce cannot justify its

determination with reasoning which is applicable to a different fact pattern without

explaining why the determination is nonetheless reasonable given the different fact

pattern.   On remand, Commerce must either reconsider or further explain its

determination that its <u>Pasta from Turkey</u> practice applies when a predecessor

company was not individually examined.

**CONCLUSION**

In accordance with the foregoing, it is

**ORDERED** that Commerce's determination is remanded for further

explanation or reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the

Court within 90 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on

the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the

comments on the remand redetermination; and it is further

---

[6] For example, if Commerce is concerned that highly-subsidized companies may be able to receive the non-selected deposit rate through a CCR without volunteering for individual review, or that allowing CCRs for companies with significant changes would be administratively impracticable, it must specify the harms it wishes to avoid in its redetermination.

Court No. 22-00097                                                    Page 12

**ORDERED** that the parties shall file the joint appendix within 14 days of the

date of filing of responses to the comments on the remand redetermination; and it is

further

**ORDERED** that Commerce shall file the administrative record within 14 days

of the date of filing of its remand redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:      July 6, 2023
            New York, New York